IAN C. BALLON (SBN 141819)
Ballon@gtlaw.com
LORI CHANG (SBN 228142)
ChangL@gtlaw.com
NINA D. BOYAJIAN (SBN 246415)
BoyajianN@gtlaw.com
MONICA A. HERNANDEZ (SBN 280195)
HernandezMo@gtlaw.com
GREENBERG TRAURIG, LLP
1900 University Avenue, 5th Floor
East Palo Alto, CA 94303
Telephone:     650-328-8500
Facsimile:     650-328-8508

Attorneys for defendant
THE POKÉMON COMPANY

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE POKÉMON GO NUISANCE LITIGATION | CASE NO.  3:16-cv-04300-JD |
| | **DEFENDANT THE POKÉMON COMPANY'S NOTICE OF MOTION, MOTION TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(2); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| | Date:          April 6, 2017 |
| | Time:          10:00 a.m. |
| | Courtroom:   11 |
| | Judge:        Hon. James Donato |

**TABLE OF CONTENTS**

Page

I.  INTRODUCTION ................................................................. 1

II.  RELEVANT FACTUAL BACKGROUND ......................................... 2

    A.  Pokémon Is A Japanese Company With No Significant Ties To California .................... 2

    B.  Plaintiffs Allege No Wrongdoing By Pokémon ................................. 3

III.  ARGUMENT ................................................................. 4

    A.  Pokémon Is Not Subject To General Jurisdiction In California ........................ 4

    B.  Pokémon Is Not Subject To Specific Jurisdiction In California ........................ 6

        1.  Minimum Contacts Analysis ...................................... 6

            a.  Because Plaintiffs' Unjust Enrichment Claim Against Pokémon Sounds In Tort, The Purposeful Direction Test Applies ........................... 7

            b.  Plaintiffs Cannot Satisfy Their Burden Under The Purposeful Direction Test To Establish That Pokémon (1) Committed An Intentional Act, (2) Expressly Aimed At The Forum State, (3) Causing Harm That Pokémon Knew Was Likely To Be Suffered In The Forum State ........................... 9

            c.  Even If The "Purposeful Availment" (Rather Than "Purposeful Direction") Test Is Applied, The Exercise Of Jurisdiction Over Pokémon Would Be Improper Because Plaintiffs Allege Tortious Conduct By Third Party Users In Michigan, New Jersey, And Florida ........................... 11

        2.  Plaintiffs' Unjust Enrichment Claim Against Pokémon Does Not Arise Out Of Pokémon's Limited Forum-Related Activity ........................... 11

        3.  Fair Play/Reasonableness ........................... 13

IV.  CONCLUSION ................................................................. 14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*AM Trust v. UBS AG*,
   78 F. Supp. 3d 977 (N.D. Cal. 2015) ............................................................................. 10

*Ambriz v. Coca Cola Co.*,
   No. 13-cv-03539-JST, 2014 WL 296159 (N.D. Cal. Jan. 27, 2014) ................................ 10

*Astiana v. Hain Celestial Grp.*,
   783 F.3d 753 (9th Cir. 2015) ....................................................................................... 1, 7

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*,
   223 F.3d 1082 (9th Cir. 2000) ................................................................................... 9, 13

*Buena Vista, LLC v. New Res. Bank*,
   No. C 10-01502 CW, 2011 WL 3794904 (N.D. Cal. Aug. 26, 2011) ............................... 7

*Burger King v. Rudzewicz*,
   471 U.S. 462 (1985) .................................................................................................. 11, 13

*Cahen v. Toyota Motor Corp.*,
   147 F. Supp. 3d 955, 964 (N.D. Cal. 2015) ..................................................................... 5

*Calder v. Jones*,
   465 U.S. 783 (1984) ..................................................................................................... 6, 9

*Callaway Golf Corp. v. Royal Canadian Golf Ass'n*,
   125 F. Supp. 2d 1194 (C.D. Cal. 2000) ......................................................................... 12

*Callum v. CVS Health Corp.*,
   137 F. Supp. 3d 817 (D.S.C. 2015) ............................................................................... 12

*Calphalon Corp. v. Rowlette*,
   228 F.3d 718 (6th Cir. 2000) ......................................................................................... 13

*CollegeSource, Inc. v. AcademyOne, Inc.*,
   653 F.3d 1066 (9th Cir. 2011) ................................................................................... 4, 13

*In re Conagra Foods, Inc.*,
   90 F. Supp. 3d 919 (C.D. Cal. 2015) ............................................................................... 1

*Corcoran v. CVS Health Corp.*,
   No. 15-CV-3504 YGR, 2016 WL 948880 (N.D. Cal. Mar. 14, 2016) ............................. 5

*Coto Settlement v. Eisenberg*,
   593 F.3d 1031 (9th Cir. 2010) ......................................................................................... 7

ii

*Daimler AG v. Bauman*,
    134 S. Ct. 746 (2014) ................................................................................. 4, 5

*Dynamic Software Servs. v. Cyberbest Tech., Inc.*,
    No. C-13-04217 DMR, 2014 WL 3373924 (N.D. Cal. July 9, 2014) ........................... 8, 11

*FormFactor, Inc. v. MarTek, Inc.*,
    No. 14-1122, 2015 WL 367653 (N.D. Cal. Jan. 28, 2015) (Donato, J.) .............................. 1

*Fresh Pac Int'l, Inc. v. Gowan Grp.*,
    No. 16cv539-GPC(BLM), 2016 WL 4563716 (S.D. Cal. Sep. 1, 2016) ............................... 5

*International Shoe Co. v. Washington*,
    326 U.S. 310 (1945) ....................................................................................... 4

*In re iPhone Application Litig.*,
    Case No. 11-MD-02250-LHK, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ..................... 8

*J. McIntyre Mach., Ltd. v. Nicastro*,
    564 U.S. 873 (2011) ................................................................................... 6, 10

*Joseph Saveri Law Firm, Inc. v. Michael Criden P.A.*,
    No. C -14-1740 (EDL), 2014 WL 3673313 (N.D. Cal. July 23, 2014) .............................. 8

*Kipp v. Ski Enter. Corp. of Wisconsin*,
    783 F.3d 695 (7th Cir. 2015) ............................................................................. 5

*Martinez v. Aero Caribbean*,
    764 F.3d 1062 (9th Cir. 2014) ............................................................................ 5

*Mattel, Inc. v. Greiner and Hausser GMBH*,
    354 F.3d 857 (9th Cir. 2003) ............................................................................ 12

*Mehr v. Féderation Internationale De Football Ass'n*,
    115 F. Supp. 3d 1035 (N.D. Cal. 2015) ................................................................ 12

*Panavision Int'l, L.P. v. Toeppen*,
    141 F.3d 1316 (9th Cir. 1998) .......................................................................... 12

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
    695 F.3d 946 (9th Cir. 2012) ............................................................................ 8

*Phillips v. Hernandez*,
    No. 12-CV-748-MMA (WMC), 2012 WL 5185848 (S.D. Cal. Oct. 18, 2012) .................. 12

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*,
    148 F.3d 1355 (Fed. Cir. 1998) .......................................................................... 9

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ..................................................................... 6, 7, 9

iii

*Senne v. Kan. City Royals Baseball Corp.,*
      105 F. Supp. 3d 981 (N.D. Cal. 2015) ........................................................................ 10

*United Tactical Sys. LLC v. Real Action Paintball, Inc.,*
      108 F. Supp. 3d 733 (N.D. Cal. 2015) ........................................................................ 11

*Walden v. Fiore,*
      134 S. Ct. 1115 (2014) ................................................................................................ 10

*World-Wide Volkswagen Corp. v. Woodson,*
      444 U.S. 286 (1980) ...................................................................................................... 6

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,*
      433 F.3d 1199 (9th Cir. 2006) ............................................................................... 6, 10

**State Cases**

*Hill v. Roll Int'l Corp.,*
      195 Cal. App. 4th 1295 (2011) ..................................................................................... 1

*Odello Bros. v. Cty. of Monterey,*
      63 Cal. App. 4th 778 (1998) .......................................................................................... 7

*Wal-Mart Stores, Inc. v. United Food & Commercial Workers Internat. Union,*
      248 Cal. App. 4th 908 (2016) ........................................................................................ 7

**Rules**

Federal Rules of Civil Procedure, Rule 4(k)(1)(A) ................................................................ 4

Federal Rules of Civil Procedure, Rule 12(b)(2) ............................................................ 1, 2

Federal Rules of Civil Procedure, Rule 12(b)(6) .................................................................. 1

iv

## NOTICE OF MOTION AND MOTION TO DISMISS

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 6, 2017 at 10:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable James Donato, Courtroom 11 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, 19th Floor, San Francisco, CA 94102, defendant The Pokémon Company ("Pokémon") will and hereby does respectfully move for an order dismissing plaintiffs Jeffrey Marder, Scott Dodich, Jayme Gotts-Dodich, and The Villas of Positano Condominium Association, Inc.'s (collectively, "plaintiffs") Consolidated Amended Class Action Complaint ("Complaint")[1] pursuant to Federal Rule of Civil Procedure 12(b)(2). This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, the Declaration of Takato Utsunomiya, all pleadings and papers on file in this action, and such other written or oral argument as may be properly presented to the Court at the hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

None of the four complaints collectively filed by plaintiffs make a single allegation regarding – no less supporting – the exercise of personal jurisdiction over Pokémon. This is because there simply are no facts that could be alleged that would justify the exercise of personal jurisdiction over Pokémon.

Plaintiffs – none of whom are residents of California – have alleged a single cause of action – unjust enrichment[2] – against Pokémon. As detailed below and in the supporting Declaration of Takato

---

[1]      Plaintiffs filed the Consolidated Amended Class Action Complaint on November 25, 2016 [Dkt. 46] with misnumbered paragraphs. An Errata and Corrected Consolidated Amended Class Action Complaint were filed on November 30, 2016 [Dkt. 48 and 48-1]. Any references to the Complaint refer to paragraph numbers assigned in the corrected version.

[2]      As set forth in Pokémon's concurrently filed motion to dismiss under Fed. R. Civ. P. 12(b)(6), the unjust enrichment claim against Pokémon fails because (a) it is not recognized as a standalone claim in California and is duplicative of plaintiffs' other claims, and (b) there are adequate remedies at law, i.e., actual damages are recoverable for trespass and nuisance. *See Astiana v. Hain Celestial Grp.*, 783 F.3d 753, 762 (9th Cir. 2015) ("[I]n California, there is not a standalone cause of action for unjust enrichment, which is synonymous with restitution.") (internal quotation marks omitted); *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1307 (2011) ("[u]njust enrichment is not a cause of action, just a restitution claim."); *In re Conagra Foods, Inc.*, 90 F. Supp. 3d 919, 1010 n.222 (C.D. Cal. 2015) ("Where, as here, an unjust enrichment claim merely duplicates a conventional contract or tort claim, courts routinely conclude that plaintiffs have an adequate remedy at law and find that an independent cause of action for unjust enrichment will not lie."); *FormFactor, Inc. v. MarTek, Inc.*, No. 14-1122, 2015 WL 367653, at *7 (N.D. Cal. Jan. 28, 2015) (Donato, J.) ("the Court finds that unjust enrichment is not an independent cause of action under California law.").

1

Utsunomiya, Pokémon is incorporated in Japan and does not have a principal place of business in California. Nor has it purposefully directed any activity into California that would give rise to personal jurisdiction over it in this case. Rather, Pokémon did nothing more than license its intellectual property to a California company, so that it could be used in software that would be used by millions of users around the world. Such passive conduct is a far cry from the intentional acts expressly aimed at California and California residents that would give rise to personal jurisdiction. Because plaintiffs cannot satisfy their burden of establishing minimum contacts, and the exercise of personal jurisdiction over Pokémon in this case would be unreasonable, Pokémon should, respectfully, be dismissed from this action.

## II.      RELEVANT FACTUAL BACKGROUND

### A.      Pokémon Is A Japanese Company With No Significant Ties To California

The Pokémon Company is a Japanese corporation with its principal place of business in Tokyo, Japan. Declaration of Takato Utsunomiya ("Utsunomiya Decl.") ¶ 2. Pokémon has no offices, no employees, and no agents or business representatives located in California and is not authorized or registered to carry on any business in California. *Id*. ¶ 3. Pokémon pays no taxes in California, owns no real or other property in California, nor leases any real property in California. *Id*. Pokémon does not have a mailing address, telephone number, or bank account in California. *Id*.

On December 22, 2014, Pokémon and Google Inc. ("Google") entered into a Game Development Agreement ("License Agreement") pursuant to which Google would use its proprietary, mobile, location-based, social gaming platform to develop a massive, multiplayer, worldwide, mobile, location-based, social game that incorporated Pokémon's intellectual property. *Id*. ¶ 4. In October 2015, the License Agreement was assigned to co-defendant Niantic, Inc. ("Niantic"). *Id*. The *Pokémon GO* game was created pursuant to the License Agreement, but Pokémon had no involvement in directing the placement of the Pokestops or the Pokémon gyms in the *Pokémon GO* game. *Id*. ¶ 5.

Pokémon frequently enters into agreements like the License Agreement whereby it licenses its intellectual property to companies throughout the world, including the United States. *Id*. ¶ 6. The *Pokémon GO* game was in no way specifically directed to California or California residents; rather, it was intended for – and has been used by – millions of users around the country and around the world.

2

1    *Id*. ¶ 7.

2

3    **B.**    <u>**Plaintiffs Allege No Wrongdoing By Pokémon**</u>

4    Plaintiffs' suit[3] against defendants Niantic, Nintendo Co. Ltd., and Pokémon (collectively,

5 "defendants") allegedly arises from users playing the *Pokémon GO* mobile game. Consolidated

6 Amended Class Action Complaint ("Compl.") ¶ 1. The harm alleged is plaintiffs' alleged interfered

7 use and enjoyment of their properties by virtue of users allegedly trespassing on or walking near their

8 properties, including public property. *Id.* ¶¶ 5, 7, 10-12, 24, 27, 29-35, 37, 39, 43, 51, 65, 68, 69, 74,

9 76, 77, 83.

10    Plaintiffs' sole allegation against Pokémon is that Pokémon receives a percentage of the

11 revenue generated by *Pokémon GO* pursuant to the License Agreement. *Id.* ¶¶ 14, 81-86.[4] Plaintiffs do

12 not allege that Pokémon is responsible for the allegedly wrongful acts complained of. *See generally id*.

13    Rather, plaintiffs state that co-defendant Niantic is the developer and publisher of *Pokémon*

14 *GO*. *Id.* ¶¶ 1, 5, 13, 17, 19-21, 24, 26-27. Plaintiffs also allege that Niantic designated GPS

15 coordinates as Pokestops and Pokémon gyms "on or near private property" "without the consent of the

16 properties' owners."[5] *Id.* ¶ 28; *see also id.* ¶ 5. In fact, plaintiffs allege that the acts complained of

17 were committed solely by Niantic and solely under Niantic's control. *Id.* ¶¶ 7 (alleging that the harm

18 to plaintiffs was "committed by Niantic"), 10 (plaintiff Jeffrey Marder was harmed by "Niantic's

19

20    [3]    On July 29, 2016, plaintiffs' counsel filed a putative class action suit on behalf of a single

21 individual, Jeffrey Marder, alleging a nuisance claim against Niantic and an unjust enrichment claim against Niantic, Pokémon, and Nintendo. *Marder v. Niantic, Inc. et al.*, 3:16-cv-04300 (N.D. Cal. July 29, 2016) ("*Marder*"). On August 10 and September 2, 2016, plaintiffs' counsel filed similar putative

22 class action suits against the same defendants, on behalf of three additional plaintiffs. *Dodich et al. v. Niantic, Inc. et al.*, 3:16-cv-04556 (N.D. Cal. Aug. 10, 2016) ("*Dodich*") and *Villas of Positano*

23 *Condominium Association, Inc. v. Niantic, Inc. et al.*, 3:16-cv-05091 (N.D. Cal. Sept. 2, 2016) ("*Villas*"). The facts underlying each plaintiff's nuisance allegations – including specifics of the

24 interference with the enjoyment of their property – vary, but they all stem from *Pokémon GO* players' alleged activities on or near their real property while playing the game. On September 14, 2016, Niantic

25 filed an unopposed administrative motion requesting that the *Marder*, *Dodich*, and *Villas* actions be related and consolidated [Dkt. 30], and on September 23, the Court found the *Marder*, *Dodich*, and

26 *Villas* actions to be related and allowed plaintiffs to file a consolidated amended complaint. Dkt. 34.
   [4]    Plaintiffs allege that Pokémon "is responsible for marketing and licensing the Pokémon franchise."

27 Compl. ¶ 14.
   [5]    While at times, plaintiffs allege that "Defendants" designated Pokestops and/or Pokémon gyms on

28 or near plaintiffs' properties, this allegation is directly contradicted by the numerous allegations specifically identifying Niantic as a sole actor. Compl. ¶¶ 10-12, 30-34, 36, 43, 44, 51, 66-72, 75-80.

3

1  placement of Pokémon, Pokestops and/or Pokémon gyms on or near Mr. Marder's property"), 11
2  (plaintiffs Scott Dodich and Jayme Gotts-Dodich were harmed by "Niantic's placement of Pokémon,
3  Pokestops and/or Pokémon gyms on or near the Dodich's property"), 12 (plaintiff The Villas of
4  Positano Condominium Association, Inc. was harmed by "Niantic's placement of Pokémon, Pokestops
5  and/or Pokémon gyms on or near the Villas of Positano"), 51 ("Niantic made unauthorized use of
6  Plaintiff's and other Class members' property by placing Pokestops and Pokémon gyms thereupon or
7  nearby."), 66 and 75 ("Niantic intentionally placed Pokémon, Pokestops and/or Pokémon gyms on or
8  near the properties of Plaintiffs and other members of the proposed class."); *see also id.* ¶¶ 2, 3, 5, 6,
9  24, 27, 30-34, 36, 43, 44, 47-49, 66-72, 75-80. Indeed, plaintiffs' nuisance and trespass claims are
10  alleged only against Niantic. *Id.* ¶¶ 64-80.

11  ## III.    ARGUMENT

12  Where, as here, personal jurisdiction is not authorized by a federal statute, the long arm statute of
13  the state in which the district court sits is applied. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d
14  1066, 1073 (9th Cir. 2011) (citing Fed. R. Civ. P. 4(k)(1)(A)). In California, the state long-arm statute
15  reaches the limits of due process. *College Source,* 653 F.3d at 1073. For a court to exercise personal
16  jurisdiction over an alien defendant such as Pokémon, a corporation based in Japan, that defendant must
17  have "certain minimum contacts" with the relevant forum. *Id.* at 1073-74 (citing *International Shoe Co.*
18  *v. Washington*, 326 U.S. 310, 316 (1945)).

19  Personal jurisdiction may be based on general or specific jurisdiction. General jurisdiction may
20  be found where the defendant's contacts with the forum state are so continuous and substantial as to
21  justify any lawsuits in the forum state, even those that do not relate to the defendant's activities there.
22  *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014). Specific jurisdiction, on the other hand, requires
23  that the suit be related to the defendant's activities in the forum state. *Id*. In this case, there is no basis
24  for either general or specific jurisdiction.

25  ### A.    Pokémon Is Not Subject To General Jurisdiction In California

26  In *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), the U.S. Supreme Court limited the grounds
27  on which general jurisdiction could be applied to corporate entities. In that case, the Court reaffirmed
28  that "[w]ith respect to a corporation, the place of incorporation and principal place of business are

4

paradigm bases for general jurisdiction." *Daimler*, 134 S. Ct. at 760 (internal citations and quotation marks omitted). Aside from these "paradigms," general jurisdiction over a corporation is *only* proper in the "exceptional case" in which "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 761 n.19. That is not the case here.

Courts have noted that *Daimler* "raised the bar" to establish general personal jurisdiction. *E.g., Kipp v. Ski Enter. Corp. of Wisconsin*, 783 F.3d 695, 698 (7th Cir. 2015); *see also Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014), *cert. denied*, 135 S. Ct. 2310 (2015) (affirming district court's finding of no general jurisdiction over a corporate defendant that had contracts with California companies worth between $225 and $450 million, sent employees to California, and advertised in trade publications distributed in California, because the "Supreme Court's recent decision in *Daimler* makes clear the demanding nature of the standard for general personal jurisdiction over a corporation"); *Corcoran v. CVS Health Corp.*, No. 15-CV-3504 YGR, 2016 WL 948880, at *5 (N.D. Cal. Mar. 14, 2016) (concluding there was no general jurisdiction even though CVS Health had a substantial number of pharmacies, maintained two distribution centers, and solicited employees in California); *Cahen v. Toyota Motor Corp.*, 147 F. Supp. 3d 955, 964 (N.D. Cal. 2015) (finding no general jurisdiction over a defendant-car manufacturer that had 302 employees in California and registered over one hundred thousand cars in California in the past year); *Fresh Pac Int'l, Inc. v. Gowan Grp.*, No. 16cv539-GPC(BLM), 2016 WL 4563716, at *4 (S.D. Cal. Sep. 1, 2016) (holding that, even where defendants' representatives attended multiple meetings in California and resided or were domiciled in California, general jurisdiction could not be found because "Defendants are incorporated in Mexico, not California, and therefore, their contacts with California are not 'continuous and systematic.'").

As in these cases, Pokémon is not subject to general jurisdiction in California. The Pokémon Company is a Japanese corporation with its principal place of business in Tokyo, Japan. Utsunomiya Decl. ¶ 1. Pokémon has no offices, no employees, and no agents or business representatives located in California and is not authorized or registered to carry on any business in California. *Id.* ¶2. Pokémon pays no taxes in California, owns no real or other property in California, nor leases any real property in California. *Id.* Pokémon does not have a mailing address, telephone number, or bank account in

5

California. *Id*. That Pokémon entered into the License Agreement with a California company, Google (subsequently assigned to defendant Niantic), to license certain intellectual property (*id*. ¶ 4) does not constitute longstanding or substantial contacts with California that are so exceptional as to confer general jurisdiction.

**B.  Pokémon Is Not Subject To Specific Jurisdiction In California**

Pokémon is likewise not amenable to specific jurisdiction in California based on the single claim of unjust enrichment made by three out-of-state plaintiffs who chose to bring this suit against Pokémon in California, but who cannot claim any nexus between California and the unjust enrichment they allege.

The Ninth Circuit analyzes specific jurisdiction under a three-prong test: "(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). In short, the contacts with the forum state that are relevant are those underlying plaintiffs' unjust enrichment claim. Plaintiffs bear the burden of satisfying the first two prongs. If, and only if, they are able to do so, the burden then shifts to the defendant "to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.*

1.  Minimum Contacts Analysis

The Ninth Circuit uses two related (but distinct) tests to evaluate the first prong of its test for minimum contacts for special jurisdiction: "purposeful availment" and "purposeful direction." *Schwarzenegger*, 374 F.3d at 802; *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006). Purposeful availment is the "minimum contacts" test of *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980) (no personal jurisdiction where defendants did not "avail themselves of…the privileges and benefits of Oklahoma law"), while "purposeful direction" is based on the "effects test" of *Calder v. Jones*, 465 U.S. 783, 789 (1984) ("Jurisdiction over petitioners is therefore proper in California based on the 'effects' of their Florida conduct in California"); *see also*

6

1    *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 882 (2011) (even where a defendant's product ends

2    up in the forum state, "[t]he principal inquiry…is whether the defendant's activities manifest an

3    intention to submit to the power of a sovereign.").

4           "A purposeful availment analysis is most often used in suits sounding in contract. A purposeful

5    direction analysis, on the other hand, is most often used in suits sounding in tort." *Schwarzenegger*, 374

6    F.3d at 802 (citations omitted).

7                a.    Because Plaintiffs' Unjust Enrichment Claim Against Pokémon Sounds In Tort,

8                     The Purposeful Direction Test Applies

9           Plaintiffs' sole claim against Pokémon, for alleged unjust enrichment, sounds in tort. *See Coto*

10   *Settlement v. Eisenberg*, 593 F.3d 1031, 1041 (9th Cir. 2010) ("[u]njust enrichment is essentially

11   another way of stating a tort claim and, consequently, once the underlying tort claim is dismissed, so is

12   the unjust enrichment claim. . . . ); *see also Buena Vista, LLC v. New Res. Bank*, No. C 10-01502 CW,

13   2011 WL 3794904, at *3 (N.D. Cal. Aug. 26, 2011) ("Plaintiff's claims for intentional

14   misrepresentation, unjust enrichment, intentional interference with prospective economic advantage, and

15   negligence all sound in tort.").

16          Plaintiffs' unjust enrichment claim, directed against all of the defendants, must be viewed in the

17   context of the entire Complaint and is predicated on their nuisance claim against Niantic. And because

18   nuisance is a strict liability tort, the alleged unjust enrichment claim against Pokémon sounds in tort. *See*

19   *Wal-Mart Stores, Inc. v. United Food & Commercial Workers Internat. Union*, 248 Cal. App. 4th 908,

20   936 (2016) ("[T]respass and nuisance are . . . torts."); *Odello Bros. v. Cty. of Monterey*, 63 Cal. App. 4th

21   778, 793 (1998) ("trespass cause of action is a tort claim"). Moreover, plaintiffs' unjust enrichment

22   claim expressly incorporates by reference the tort nuisance and trespass allegations (Compl. ¶ 83), and

23   in their unjust enrichment claim, plaintiffs allege, among other things, that defendants "encourag[e]

24   millions of *Pokémon Go* players to make incursions onto the properties of Plaintiffs and other members

25   of the proposed Class." *Id*. In short, plaintiffs allege tortious conduct by third parties – users of *Pokémon*

26   *GO* – not Pokémon, in Michigan, New Jersey and Florida, not California.

27          While under some circumstances, an unjust enrichment claim may be considered a quasi-

28   contract claim (*see, e.g.*, *Astiana*, 783 F.3d at 762 (holding that while California does not recognize a

7

standalone cause of action for "unjust enrichment," the plaintiff's claim that defendants had mislabeled their products which enticed consumers to purchase the products can be construed as a "quasi-contract" claim seeking restitution)), in cases involving potentially both "tort and contract claims, courts in the Ninth Circuit generally ask whether the case sounds *primarily* in contract law or tort law." *Dynamic Software Servs. v. Cyberbest Tech., Inc.*, No. C-13-04217 DMR, 2014 WL 3373924, at *6 (N.D. Cal. July 9, 2014) (emphasis added); *see also Joseph Saveri Law Firm, Inc. v. Michael Criden P.A.*, No. C -14-1740 (EDL), 2014 WL 3673313, at *3 (N.D. Cal. July 23, 2014) (stating, in applying purposeful direction analysis to equitable claims, that "the Court is unaware of . . . any precedent which suggests applying a 'purposeful availment' analysis to all cases even tangentially related to a contract. . . . Plaintiffs frame this action as one sounding more in tort than in contract") (citations omitted).[6] The Complaint in this case (generally) and the unjust enrichment allegations (specifically) raise more tort issues than contract issues, and plaintiffs cannot credibly argue that some contract exists between them and Pokémon.

Plaintiffs' unjust enrichment claim is not, however, an intentional tort; rather, it is merely an equitable remedy. *See Petrella v. Metro-Goldwyn-Mayer, Inc.*, 695 F.3d 946, 956 (9th Cir. 2012) ("Recovery of an unjust enrichment is an equitable remedy."); *see also In re iPhone Application Litig.*, Case No. 11-MD-02250-LHK, 2011 WL 4403963, at *15 (N.D. Cal. Sept. 20, 2011) ("Plaintiffs concede that unjust enrichment is merely an equitable remedy…"). Indeed, plaintiffs' claim is limited to Pokémon's passive earning of royalties – the sole alleged "enrichment" – and to the extent any royalties might even be attributable to plaintiffs (something that plaintiffs have not alleged), they would not even be forum-related. Moreover, plaintiffs cannot allege any actionable misconduct targeted at them in California. Rather, they allege passive conduct, which depends on the actions of a third party, in Michigan, New Jersey, and Florida. This type of passive conduct falls far short of satisfying the

---

[6]    Analyzing the unjust enrichment claim as quasi-contractual would further be inappropriate because there is absolutely no relationship – contractual or otherwise – between plaintiffs and Pokémon. The Complaint itself concedes that "Niantic [rather than Pokémon] selected and programmed into *Pokémon GO* the GPS coordinates of certain real world locations, designating them as Pokestops and Pokemon gyms." Compl. ¶ 21. The sole alleged basis for liability against Pokémon is that it "receives a percentage of all revenues generated by *Pokémon Go*." *Id.* at ¶¶ 14, 50, 84. Because Pokémon did not develop the game or choose the Pokestop and Pokémon gym locations, there is no quasi-contractual relationship between plaintiffs and Pokémon giving rise to plaintiffs' claims.

1    minimum contacts analysis under either test.

2         Because plaintiffs' unjust enrichment claim must be viewed as a tort in this case, the purposeful

3    direction test must be applied.

4              b.    Plaintiffs Cannot Satisfy Their Burden Under The Purposeful Direction Test To

5                    Establish That Pokémon (1) Committed An Intentional Act, (2) Expressly Aimed

6                    At The Forum State, (3) Causing Harm That Pokémon Knew Was Likely To Be

7                    Suffered In The Forum State

8         The Ninth Circuit employs a three-part test for assessing "purposeful direction" (also known as

9    the "effects test"). *Schwarzenegger*, 374 F.3d at 805. "The three-part test requires that the defendant

10   have '(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the

11   defendant knows is likely to be suffered in the forum state.'  All three parts of the test must be satisfied."

12   *Id.*

13        The effects test cannot be met in this case. First, plaintiffs have not sued for an intentional tort by

14   Pokémon, which merely licensed its intellectual property to Niantic. The only allegation even

15   potentially applicable to Pokémon is that it "received and retained a benefit from Plaintiffs and . . . the

16   proposed Class, resulting in inequity." Compl. ¶ 82. But that kind of passive, attenuated relationship

17   between a licensor and a licensee (who is not plaintiff) is not enough to establish jurisdiction. *See, e.g.,*

18   *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998) (personal

19   jurisdiction over a licensor cannot be based on its third party licensees' unilateral acts). Indeed, not only

20   is there no claim against Pokémon for an intentional tort, but plaintiffs' claim for an equitable remedy

21   (unjust enrichment) is not even predicted on any targeted or intentional act. On this basis alone,

22   plaintiffs cannot assert jurisdiction over Pokémon.

23        Second, there was no act "expressly aimed" at the forum state, or any "wrongful conduct

24   individually targeting a known forum resident." *Schwarzenegger*, 374 F.3d at 805, 807 (no "express

25   aiming" even where defendant knew that his "intentional act [would] eventually cause[] harm to

26   [plaintiff] in California, and [defendant] may have known that [plaintiff] lived in California"). Specific

27   jurisdiction under the effects test cannot be found merely because the alleged forum-related activity had

28   foreseeable effects in the forum state. *See Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d

1082, 1087 (9th Cir. 2000) ("[*Calder*] cannot stand for the broad proposition that a foreign act with foreseeable effects in the forum state always gives rise to specific jurisdiction. We have said that there must be 'something more… 'express aiming' at the forum state'"); *see also Nicastro*, 564 U.S. at 882 ("The defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State."); *Walden v. Fiore*, 134 S. Ct. 1115, 1125 (2014) (loss of money by forum resident could not support jurisdiction where "none of petitioner's challenged conduct had anything to do with [the forum] itself"); *Yahoo! Inc.*, 433 F.3d at 1207 (noting requirement that "a jurisdictionally sufficient amount of harm [be] suffered in the forum state").

Here, the alleged misconduct, if any, occurred exclusively in other states, not California. The *Pokémon GO* game was in no way specifically directed to California or California residents; rather, it was intended for – and has been used by – millions of users around the country and around the world. Utsunomiya Decl. ¶ 7. Nor is any California resident alleged to have suffered any harm; indeed, the Complaint concedes that ***no named plaintiff suffered any harm in California***: Marder resides in New Jersey; the Dodichs reside in Michigan; and The Villas of Positano Condominium Association is in Florida.[7]

Plaintiffs vaguely allege wrongful acts by "Defendants" and claim unjust enrichment against Pokémon, but include no allegations that Pokémon itself participated in any of the wrongful acts. And notably, plaintiffs include no allegation whatsoever regarding personal jurisdiction over Pokémon, implicitly conceding what is evident through this motion – that plaintiffs cannot meet the "purposeful direction" test for specific jurisdiction. Plaintiffs merely allege entitlement to an equitable remedy – not any intentional misconduct by Pokémon – based on harm caused and revenues earned in Michigan, New

---

[7]    Any alleged harm suffered by unnamed putative plaintiffs is irrelevant to the jurisdiction analysis. *Ambriz v. Coca Cola Co.*, No. 13-cv-03539-JST, 2014 WL 296159, at *6 (N.D. Cal. Jan. 27, 2014) (rejecting the argument that the potential claims of hypothetical putative class members could be considered in evaluating personal jurisdiction because "it is the named plaintiff's claim that 'must arise out of or result from the defendant's forum-related activities,' not the claims of the unnamed members of the proposed class, who are not party to the litigation absent class certification."); *Senne v. Kan. City Royals Baseball Corp.*, 105 F. Supp. 3d 981, 1022 (N.D. Cal. 2015) ("In a purported class action, specific jurisdiction must be demonstrated by the named Plaintiffs.") (citing *AM Trust v. UBS AG*, 78 F. Supp. 3d 977, 987 (N.D. Cal. 2015) ("[C]laims of unnamed class members are irrelevant to the question of specific jurisdiction.")).

1  Jersey and Florida, not California. Because plaintiffs cannot satisfy the effects test, Pokémon must be

2  dismissed from this suit.

3          c.      Even If The "Purposeful Availment" (Rather Than "Purposeful Direction") Test

4                  Is Applied, The Exercise Of Jurisdiction Over Pokémon Would Be Improper

5                  Because Plaintiffs Allege Tortious Conduct By Third Party Users In Michigan,

6                  New Jersey, And Florida

7          As set forth above, because plaintiffs' Complaint sounds in tort, the purposeful direction test

8  must apply. Even if, however, the "purposeful availment" test for minimum contacts were instead

9  applied (and it should not), the exercise of personal jurisdiction over Pokémon would still be improper

10  because Pokémon's only plausible connection to California is that it entered into an intellectual property

11  license agreement with a California company.

12         The existence of a single intellectual property license with a California company that is only – at

13  best – tangentially related to plaintiffs' claims – does not establish minimum contacts with the state of

14  California. *See Burger King v. Rudzewicz*, 471 U.S. 462, 475, 479 (1985) (establishing: (1) a contract,

15  alone, cannot itself create minimum contacts in a forum; and (2) the proper analysis lies in the "prior

16  negotiations and contemplated future consequences, along with the terms of the contract and the parties'

17  actual course of dealing."); *Dynamic Software Servs. v. Cyberbest Tech., Inc.*, No. C–13–04217 DMR,

18  2014 WL 3373924, at *9 (N.D. Cal. July 9, 2014) (no purposeful availment where defendant knew that

19  plaintiff's – the contract party's – principal place of business was in California).

20         Because Pokémon lacks minimum contacts with California, plaintiffs' claims do not arise out of

21  any relevant forum-related activity (including the License Agreement between Pokémon and Niantic),

22  and plaintiffs themselves have no connection to California, Pokémon has not purposefully availed itself

23  to this Court's jurisdiction in this case.

24         2.      Plaintiffs' Unjust Enrichment Claim Against Pokémon Does Not Arise Out Of

25                 Pokémon's Limited Forum-Related Activity

26         If plaintiffs satisfy their burden on minimum contacts (which, as noted above, they cannot under

27  either test), they must next satisfy the second prong of the "minimum contacts" analysis: the "but for"

28  test. "This prong is satisfied if the plaintiff would not have been injured 'but for' the defendant's

11

1   conduct directed toward the forum state." *United Tactical Sys. LLC v. Real Action Paintball, Inc.*, 108 F.

2   Supp. 3d 733, 749 (N.D. Cal. 2015) (citing *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th

3   Cir. 1998)) (considering whether plaintiff would have been injured but for defendant's conduct directed

4   toward plaintiff in California); *Mattel, Inc. v. Greiner and Hausser GMBH*, 354 F.3d 857, 864 (9th Cir.

5   2003) (asking but for defendant's contacts with California, would plaintiff's claims against defendant

6   have arisen)).

7          Pokémon's sole relevant forum-related activity is the licensing of its intellectual property to a

8   company that happened to be located in California, which allegedly caused harm in Michigan, Florida

9   and New Jersey. Because plaintiffs are not parties to that agreement, their claims do not arise out of

10  Pokémon's forum-related activities. *See Phillips v. Hernandez*, No. 12-CV-748-MMA (WMC), 2012

11  WL 5185848, (S.D. Cal. Oct. 18, 2012),  at *5 ("As Plaintiffs are not a party to the contract entered into

12  in San Diego, their cause of action cannot have arisen out of the circumstances surrounding that

13  contract."); *see also Callaway Golf Corp. v. Royal Canadian Golf Ass'n*, 125 F. Supp. 2d 1194, 1204

14  (C.D. Cal. 2000) (exercise of specific jurisdiction improper, despite defendant's conduct of commerce in

15  California through its website, because plaintiff's business tort claims unrelated to the web site); *Callum

16  v. CVS Health Corp.*, 137 F. Supp. 3d 817, 837 (D.S.C. 2015) (finding that CVS Health was not subject

17  to jurisdiction in South Carolina where its contact with the state was not shown to be related to the

18  plaintiffs' causes of action).

19         Even where a defendant has entered into numerous and various commercial agreements in a

20  forum, those contacts are not relevant for jurisdictional purposes where the plaintiff's claim was based

21  on misconduct that allegedly occurred elsewhere. *See Mehr v. Féderation Internationale De Football

22  Ass'n*, 115 F. Supp. 3d 1035, 1051-52 (N.D. Cal. 2015). In *Mehr*, plaintiffs made negligence claims

23  against FIFA regarding FIFA's failure to enact rules following the best practices for protecting youth

24  soccer players from concussions. 115 F. Supp. 3d at 1045-1046. FIFA had entered into some agreements

25  in California, but had no direct contacts with California that related to the concussion allegations/claims.

26  *Id*. at 1051. The court determined that the plaintiffs had not and could not establish that their claims

27  would not have arisen "but for" these activities because plaintiffs' allegations were "limited to

28  allegations relating to contacts of a commercial nature that are unrelated to claims based on FIFA's

12

1  alleged failure to implement concussion-related protocols." 115 F. Supp. 3d at 1052.

2      Similarly, Pokémon's licensing of its intellectual property – a type of transaction it enters into

3  frequently (*see* Utsunomiya Decl. ¶ 6) – has nothing to do with the alleged conduct underlying

4  plaintiffs' claims, i.e., the placement of Pokestops and Pokémon gyms. Moreover, the fact that the

5  agreement was executed in California was "random" and "fortuitous" (*Burger King Corp.*, 471 U.S. at

6  475) – plaintiffs' claims would have arisen no matter where the License Agreement was executed; it just

7  happened that Google/Niantic were in California. *See Bancroft & Masters, Inc.*, 223 F.3d at 1087

8  (foreseeable effects in the forum state not sufficient to give rise to specific jurisdiction); *see also*

9  *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 723 (6th Cir. 2000) (the out of state defendant "would have

10  served as [the plaintiff's] representative in the designated states, regardless of [the plaintiff's] base of

11  operation."). Plaintiffs' unjust enrichment claim cannot reasonably be found to have arisen from

12  Pokémon's limited forum activities.

13          3.      Fair Play/Reasonableness

14      Even if a defendant is found to have the requisite minimum contacts and the plaintiff's claims

15  arise from those contacts, those findings must still "be considered in light of other factors to determine

16  whether the assertion of personal jurisdiction would comport with fair play and substantial justice."

17  *Burger King*, 471 U.S. at 476. In determining whether the exercise of jurisdiction comports with "fair

18  play and substantial justice" and is therefore reasonable, courts consider seven factors: (1) the extent of

19  the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of

20  defending in the forum; (3) the extent of the conflict with the sovereignty of the defendant's state; (4)

21  the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the

22  controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief;

23  and (7) the existence of an alternative forum." *CollegeSource*, 653 F.3d at 1079.

24      The exercise of personal jurisdiction over Pokémon in California would not comport with fair

25  play and substantial justice. As set forth in the Utsunomiya Declaration, The Pokémon Company is a

26  Japanese corporation with its principal place of business in Tokyo, Japan. Utsunomiya Decl. ¶ 2.

27  Pokémon has no offices, no employees, and no agents or business representatives located in California

28  and is not authorized or registered to carry on any business in California. *Id.* ¶ 3. Pokémon pays no taxes

in California, owns no real or other property in California, nor leases any real property in California. *Id*. Pokémon does not have a mailing address, telephone number, or bank account in California. *Id*.

Pokémon further did not "inject" itself into California affairs – it simply licensed its intellectual property to a California company, which then created a game, the users of which allegedly injured plaintiffs in Michigan, Florida and New Jersey. *Id*. ¶ 4. Indeed, the only relationship California appears to have with the claims alleged in this suit is that co-defendant Niantic is located in California: none of the plaintiffs are residents of California, and all of the alleged injuries occurred outside of California. Pokémon's lack of contacts with California and the burden on Pokémon to defend this suit from over 5,000 miles away and in a foreign language (*see id*. ¶ 8) further weigh strongly against the exercise of personal jurisdiction over Pokémon.

## IV.   CONCLUSION

Pokémon lacks the requisite minimum contacts that allow the exercise of personal jurisdiction over it to comport with due process. Pokémon should therefore be dismissed from this lawsuit.

DATED:  January 27, 2017                    GREENBERG TRAURIG, LLP


                                  By:     */s/  Ian C. Ballon*
                                          Ian C. Ballon
                                          Lori Chang
                                          Nina D. Boyajian
                                          Monica A. Hernandez
                                          Attorneys for defendant
                                          THE POKÉMON COMPANY