1    COOLEY LLP
     MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
2    JEFFREY M. GUTKIN (216083) (jgutkin@cooley.com)
     BENJAMIN H. KLEINE (257225) (bkleine@cooley.com)
3    BETHANY C. LOBO (248109) (blobo@cooley.com)
     KRISTINE A. FORDERER (278745) (kforderer@cooley.com)
4    101 California Street, 5th Floor
     San Francisco, CA  94111-5800
5    Telephone:   (415) 693-2000
     Facsimile:    (415) 693-2222
6

7    Attorneys for Defendant
     NIANTIC, INC.
8

9                    UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11                      SAN FRANCISCO DIVISION

12

13   In Re Pokémon Go Nuisance Litigation        Case No.  3:16-cv-04300 JD

14                                               **DEFENDANT NIANTIC, INC.'S MOTION
15                                               TO DISMISS PLAINTIFFS'
                                                 CONSOLIDATED CLASS ACTION
16                                               COMPLAINT**

17                                               Date:         April 6, 2017
                                                 Time:         10:00 a.m.
18                                               Courtroom:    11, 19th Floor
                                                 Judge:        Hon. James Donato
19                                               Trial Date:   Not Yet Set

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS ...................................................... 1

STATEMENT OF RELIEF SOUGHT ............................................................................ 1

STATEMENT OF ISSUES TO BE DECIDED ............................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 1

I.    Introduction ...................................................................................................... 1

II.    Relevant Allegations ........................................................................................ 3

    A.    Niantic and Pokémon GO. ................................................................... 3

    B.    Niantic's Standards for Player Behavior ............................................. 3

        1.    Pokémon GO Terms of Service ("Terms"). .......................... 3

        2.    Pokémon GO Trainer Guidelines ("Trainer Guidelines"). ................. 4

    C.    Summary of Plaintiffs' Claims. ........................................................... 4

III.    Legal Standards ................................................................................................ 5

IV.    Argument .......................................................................................................... 5

    A.    The Law of Each Plaintiff's Home State Applies to Their Claims ................. 5

    B.    Plaintiffs Have Failed to State a Trespass Claim (Count II). ........................... 6

        1.    Plaintiffs' virtual trespass theory fails to allege the required entry. ....................................................................................... 6

        2.    Plaintiffs' induced trespass theory also fails to state a claim............. 8

            a.    The Villas and Dodichs do not allege Niantic acted intentionally. ...................................................... 8

            b.    Marder has not alleged that he suffered any harm. ............... 10

    C.    Plaintiffs Have Failed to State a Nuisance Claim (Count I). ....................... 11

        1.    Marder's claim under New Jersey law fails............................... 12

            a.    Failure to allege significant harm. ...................................... 12

            b.    Failure to allege legal/proximate cause................................ 13

        2.    The Dodichs' claim under Michigan law fails................................ 14

        3.    The Villas' claim under Florida law fails. ................................... 15

    D.    Plaintiffs Have Failed to State an Unjust Enrichment Claim (Count III). .......................................................................................... 15

        1.    Marder's claim under New Jersey law fails............................... 15

        2.    The Villas' claim under Florida law fails. ................................... 16

        3.    The Dodichs' claim under Michigan law fails............................... 17

V.    Conclusion ..................................................................................................... 18

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i.

**DEFENDANT NIANTIC'S MOTION TO DISMISS
PLAINTIFFS' CONSOLIDATED CLASS ACTION
COMPLAINT (CASE NO. 3:16-CV-04300-JD)**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A&M Supply v. Microsoft Corp.*,
No. 274164, 2008 WL 540883 (Mich. Ct. App. Feb. 28, 2008).....................................17

*Abogados v. AT&T, Inc.*,
223 F.3d 932 (9th Cir. 2000) .........................................................................................5

*Adams v. Cleveland-Cliffs Iron Co.*,
602 N.W.2d 215 (Mich. Ct. App. 1999) ..................................................................7, 8, 9

*Adkins v. Thomas Solvent Co.*,
487 N.W.2d 715 (Mich. 1992)......................................................................................14

*Allen v. City of Beverly Hills*,
911 F.2d 367 (9th Cir. 1990) .......................................................................................18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).......................................................................................................5

*In re Auto. Parts Antitrust Litig.*,
No. 12-2311, 2014 WL 2993753 (E.D. Mich. July 3, 2014) .........................................18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).......................................................................................................5

*Borneisen v. Capital One Fin. Corp.*,
No. 09-2539, 2011 WL 2730972 (M.D. Fla. July 13, 2011) ...........................................6

*Boteach v. Socialist People's Libyan Arab Jamahiriya*,
759 F. Supp. 2d 548 (D.N.J. 2010) .........................................................................12, 13

*Bouyer v. Countrywide Bank*,
No. 08-5583, 2009 WL 799398 (N.D. Cal. Mar. 24, 2009) ..........................................10

*Bower v. Weisman*,
639 F. Supp. 532 (S.D.N.Y. 1986) ...............................................................................12

*Cafaro v. HMC*,
No. 07-2793, 2008 WL 4224801 (D.N.J. Sept. 8, 2008) ...............................................16

*Camden Cnty. Bd. v. Beretta U.S.A. Corp.*,
123 F. Supp. 2d 245 (D.N.J. 2000) .........................................................................13, 14

*Castro v. Budget Rent-a-Car Sys., Inc.*,
154 Cal. App. 4th 1162 (2007) .......................................................................................6

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii.

**DEFENDANT NIANTIC'S MOTION TO DISMISS
PLAINTIFFS' CONSOLIDATED CLASS ACTION
COMPLAINT (CASE NO. 3:16-CV-04300-JD)**

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Castro v. NYT Television*,
   851 A.2d 88 (N.J. App. Div. 2004)..........................................................................15, 16

*Century Sr. Servs. v. Consumer Health Benefit Ass'n*,
   770 F. Supp. 2d 1261 (S.D. Fla. 2011) ...............................................................17

*City of Bloomington v. Westinghouse Elec. Corp.*,
   891 F.2d 611 (7th Cir. 1989) ........................................................................9, 10, 13

*Cloverleaf Car Co. v. Phillips Petroleum Co.*,
   540 N.W.2d 297 (Mich. Ct. App. 1995) .........................................................8, 10, 14

*Consul Ltd. v. Solide Enters., Inc.*,
   802 F.2d 1143 (9th Cir. 1986) .................................................................................5

*Cooper v. Samsung Elecs. Am., Inc.*,
   No. 07-3853, 2008 WL 4513924 (D.N.J. Sept. 30, 2008) .........................................16

*Daniel v. Morris*,
   181 So. 3d 1195 (Fla. Dist. Ct. App. 2015) ...............................................................8, 9

*Daniels-Hall v. Nat'l Educ. Ass'n*,
   629 F.3d 992 (9th Cir. 2010) .................................................................................5

*Dial v. City of O'Fallon*,
   81 Ill. 2d 548 (1980) .............................................................................................9

*Dietz v. Ill. Bell Tel. Co.*,
   507 N.E.2d 24 (Ill. Ct. App. 1987) .......................................................................9, 10

*FormFactor, Inc. v. MarTek, Inc.*,
   No. 14-1122, 2015 WL 367653 (N.D. Cal. Jan. 28, 2015).........................................15

*Gates v. W.R. Grace & Co.*,
   No. 08-2560, 2009 WL 1455316 (M.D. Fla. May 21, 2009).......................................15

*Heim v. Heim*,
   No. 10-3816, 2014 WL 1340063 (N.D. Cal. Apr. 2, 2014)........................................13

*Helber v. City of Ann Arbor*,
   No. 247700, 2004 Mich. App. LEXIS 2884 (Mich. Ct. App. Oct. 26, 2004) ..............14

*Helsel v. Morcom*,
   555 N.W.2d 852 (Mich. Ct. App. 1996) ..................................................................8, 10

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Hernandez v. Burger*,
102 Cal. App. 3d 795 (1980) ...................................................................................6

*Hill v. Nationstar Mortg., LLC*,
No. 15-60106, 2015 WL 4478061 (S.D. Fla. July 2, 2015)..................................17

*Hogan Lovells US LLP v. Howrey LLP*,
531 B.R. 814 (N.D. Cal. 2015) ............................................................................17

*Hrycenko v. Bd. of Adjustment*,
99 A.2d 430 (N.J. Super. Ct. App. Div. 1953).....................................................13

*Jacobini v. JP Morgan Chase*,
No. 11-231, 2012 WL 252437 (M.D. Fla. Jan. 26, 2012).....................................8

*Jones v. Trawick*,
75 So. 2d 785, 787 (Fla. 1954).............................................................................15

*Kammer Asphalt v. E. China Twp. Sch.*,
504 N.W.2d 635 (Mich. 1993)..............................................................................18

*Karpiak v. Russo*,
676 A.2d 270 (Pa. Super. Ct. 1996) .....................................................................11

*Lewis v. Ceralvo Holdings, LLC*,
No. 11-0055, 2012 WL 32607 (W.D. Ky. Jan. 6, 2012)......................................11

*Lipov v. Louisiana-Pacific Corp.*,
No. 12-439, 2013 WL 3805673 (W.D. Mich. July 22, 2013).........................15, 17

*Martin v. City of Struthers*,
319 U.S. 141 (1943)..............................................................................................11

*McCann v. Foster Wheeler LLC*,
48 Cal. 4th 68 (2010) .............................................................................................6

*MCI Worldcom Network Servs. v. Mastec*,
No. 01-2059, 2003 WL 25729927 (S.D. Fla. Mar. 17, 2003)................................8

*Moher v. United States*,
875 F. Supp. 2d 739 (W.D. Mich. 2012) .............................................................6, 7

*Mourad v. Marathon Petroleum Co., LP*,
129 F. Supp. 3d 517 (E.D. Mich. 2015)...............................................................12

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv.

**DEFENDANT NIANTIC'S MOTION TO DISMISS
PLAINTIFFS' CONSOLIDATED CLASS ACTION
COMPLAINT (CASE NO. 3:16-CV-04300-JD)**

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*New Jersey v. Exxon*,
  376 A.2d 1339 (N.J. Ch. Div. 1977) ...........................................................................14

*Ocean Club Condo Ass'n v. D'Amato*,
  No. A-0175-04T3, 2006 WL 2335073 (N.J. Super. Ct. App. Div. Aug. 14, 2006) ......................13

*P&A Constr. v. Hackensack Water Co.*,
  280 A.2d 497 (N.J. Super. Ct. 1971) ...........................................................................6

*In re Paulsboro Derailment Cases*,
  No. 12-7586, 2013 WL 5530046 (D.N.J. Oct. 4, 2013) ...........................................................7, 8

*Pearson v. Ford Motor Co.*,
  694 So. 2d 61 (Fla. Dist. Ct. App. 1997) ...........................................................................7

*Penelas v. Arms Tech., Inc.*,
  No. 99-1941, 1999 WL 1204353 (Fla. Cir. Ct. Dec. 13, 1999) ...................................................15

*People's Nat'l Bank of Commerce v. First Union Nat'l Bank*,
  667 So. 2d 876 (Fla. Dist. Ct. App. 1996) ...........................................................................17

*Player v. Motiva Enters., LLC*,
  No. 02-3216, 2006 WL 166452 (D.N.J. Jan. 20, 2006) ...........................................................11

*Redevelopment Agency v. BNSF Ry.*,
  643 F.3d 668 (9th Cir. 2011) ...........................................................................14, 15

*In re Refrigerant Compressors Antitrust Litig.*,
  No. 09-2042, 2013 WL 1431756 (E.D. Mich. Apr. 9, 2013) ...................................................17

*In re Rigel Pharms., Inc. Sec. Litig.*,
  697 F.3d 869 (9th Cir. 2012) ...........................................................................5

*Ross v. Lowitz*,
  120 A.3d 178 (N.J. 2015) ........................................................................... *passim*

*Russo Farms, Inc. v. Vineland Bd. of Educ.*,
  675 A.2d 1077 (N.J. 1996) ...........................................................................12

*Smith v. Glenmark Generics*,
  No. 315898, 2014 WL 4087968 (Mich. Ct. App. Aug. 19, 2014) ...................................................17

*Sofka v. Thal*,
  662 S.W.2d 502 (Mo. 1983) ...........................................................................12, 13

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v.

**DEFENDANT NIANTIC'S MOTION TO DISMISS
PLAINTIFFS' CONSOLIDATED CLASS ACTION
COMPLAINT (CASE NO. 3:16-CV-04300-JD)**

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Starego v. Soboliski*,
　93 A.2d 169 (N.J. 1952)...........................................................................10

*State of Fla. v. Tenet Healthcare Corp.*,
　420 F. Supp. 2d 1288 (S.D. Fla. 2005) ...............................................15, 16

*Swiss Watch Int'l. Inc. v. Movado Grp., Inc.*,
　No. 00-7703, 2001 WL 36270979 (S.D. Fla. Sept. 5, 2001) ......................16

*Tilton v. Playboy Entm't*,
　No. 05-692, 2007 WL 80858 (M.D. Fla. Jan. 8, 2007)...............................17

*Torres-Hernandez v. CVT Prepaid Sols.*,
　No. 08-1057, 2008 WL 5381227 (D.N.J. Dec. 17, 2008)......................15, 16

*Union Trust Co. v. Wakefern Food Corp.*,
　No. 86-728, 1989 WL 120756 (D.N.J. Sept. 8, 1989) .................................16

*Wilson v. Interlake Steel Co.*,
　32 Cal. 3d 229 (1982) .....................................................................................8

*Wong v. Tenneco*,
　39 Cal. 3d 126 (1985) .....................................................................................6

**Other Authorities**

75 Am. Jur. 2d Trespass
　§ 1......................................................................................................................6

Dan B. Dobbs, The Law of Torts
　§ 53 (2d ed. 2016)............................................................................................7

Fed. R. Civ. P.
　12(b)(6) .......................................................................................................1, 5

Restatement (Second) of Torts
　§ 158....................................................................................................8, 9, 13
　§ 165.................................................................................................................11
　§ 821D..............................................................................................................12
　§ 821F...............................................................................................................12
　§ 822.........................................................................................................12, 14
　§ 834.................................................................................................................13

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

vi.

**DEFENDANT NIANTIC'S MOTION TO DISMISS
PLAINTIFFS' CONSOLIDATED CLASS ACTION
COMPLAINT (CASE NO. 3:16-CV-04300-JD)**

**NOTICE OF MOTION AND MOTION TO DISMISS**

**PLEASE TAKE NOTICE** that on April 6, 2017 at 10:00 a.m., or as soon thereafter as this motion may be heard, defendant Niantic, Inc. ("Niantic") will and hereby does move to dismiss the Consolidated Class Action Complaint ("CAC") filed by plaintiffs Jeffrey Marder ("Marder"), Scott Dodich and Jayme Gotts-Dodich (together, "Dodichs"), and The Villas of Positano Condominium Association ("Villas"; with Marder and the Dodichs, "Plaintiffs") (Dkt. 46, 48 (corrected)). This motion is based on the accompanying Memorandum of Points and Authorities, Niantic's Request for Judicial Notice, the supporting Declaration of Kei Kawai ("Kawai Decl."), the papers on file in this matter, and such other matters as may be presented to the Court at the hearing on this motion.

**STATEMENT OF RELIEF SOUGHT**

Niantic seeks dismissal of the CAC under Rule 12(b)(6) for failure to state a claim.

**STATEMENT OF ISSUES TO BE DECIDED**

Whether the CAC states a claim for trespass, nuisance, or unjust enrichment, upon which relief can be granted.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

In this putative class action, Plaintiffs contort real property torts in an attempt to hold mobile app developer Niantic liable for the allegedly actionable conduct of third parties—people who may or may not be players of Niantic's mobile game "Pokémon GO." Plaintiffs claim that people allegedly playing Pokémon GO disturbed or intruded on their properties. Rather than pursue those people, however, Plaintiffs bring claims against Niantic, which not only did not commit these alleged acts, but required its players to promise *not* to trespass or create a nuisance. Plaintiffs' CAC is not an ill-fitting legal "square peg" due to inartful pleading, but because their claims are defective.

Pokémon GO is a game played on mobile phones, in which players (called "Trainers") move about the real world to find virtual creatures called "Pokémon" and interact with virtual locations called "PokéStops" and "Gyms." Players use simple on-screen gestures to "catch" Pokémon, "train" them at Gyms, and obtain helpful in-game supplies from PokéStops. Plaintiffs allege that Niantic designated GPS coordinates on or near their properties as locations where Pokémon, PokéStops, or

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1.

DEFENDANT NIANTIC'S MOTION TO DISMISS
PLAINTIFFS' CONSOLIDATED CLASS ACTION
COMPLAINT (CASE NO. 3:16-CV-04300-JD)

Gyms (collectively, "Game Items") would display in the application, incentivizing players to visit their properties uninvited.  They claim that Niantic is liable for the alleged misconduct of some players.  They also advance the novel theory that *Niantic itself* trespassed by "placing" virtual items on the virtual map at locations relating to their properties.  None of these claims are viable.

Plaintiffs' virtual trespass claims fail because trespass requires unauthorized entry of a *tangible* object onto real property.  Niantic is also not liable for players' trespasses because applicable Michigan and Florida law only recognizes claims for intentional trespass, but Niantic— far from intending for players to enter Plaintiffs' properties—required them to agree that they would not trespass as a condition of playing.  Additionally, New Jersey recognizes claims for reckless or negligent (i.e., non-intentional) trespass only where the trespass causes a significant harm, but the New Jersey plaintiff merely alleges that five players *knocked on his door*.

Similarly, Plaintiffs have not stated nuisance claims, among other reasons, because they have not alleged that Niantic is the legal or proximate cause of the supposed player-created nuisances. Niantic does not control millions of players' real-world movements.  Again, far from causing any alleged nuisance, Niantic requires players to agree not to engage in these behaviors before playing.

Finally, Plaintiffs' unjust enrichment claims—based on the same conduct as their trespass and nuisance claims—also fail.  New Jersey and Florida do not even recognize tort claims for unjust enrichment.  Further, under the law of each state currently relevant to this case, Plaintiffs' claims fail for lack of a connection with Niantic, such as a quasi-contractual relationship in which they confer benefits on Niantic.  And while Plaintiffs allege that Niantic benefited from displaying virtual Game Items near their properties, any such benefit—which depends on speculation that players visited and *then* made in-app purchases on or near their properties—is too indirect to recover.

Plaintiffs have sued Niantic because some Pokémon GO players allegedly disregarded Niantic's rules.  But *Niantic* is not liable for player conduct it did not cause and indeed forbade. Plaintiffs' theory of liability would implicate innumerable online services that help users find specific locations—for example, by listing real estate open houses in desirable areas, listing public parks good for children, sharing locations where rare birds may be seen, or directing drivers to shortcuts through city streets—all of which can attract visitors and impact nearby residents.  The

Cooley LLP
Attorneys At Law
San Francisco

2.

Defendant Niantic's Motion to Dismiss
Plaintiffs' Consolidated Class Action
Complaint (Case No. 3:16-cv-04300-JD)

1    claims in the CAC are misdirected, are legally unsupported, and should be dismissed.

2    **II.    RELEVANT ALLEGATIONS**

3         **A.    Niantic and Pokémon GO.**

4         Niantic is a California-based developer of innovative mobile software games that help people

5    explore the world around them.  (CAC ¶¶ 2, 13, 17.)  Niantic, which began as a Google Inc. internal

6    startup, spun out as an independent company in October 2015.  (*Id.* ¶ 13.)  On July 6, 2016, Niantic

7    released its first post-spin out application, Pokémon GO, a free, location-based "augmented reality"

8    mobile game that was an instant hit with audiences worldwide.[1]  (*Id.* ¶¶ 1-2, 4, 13, 17.)

9         As a Trainer moves in the real world, the game uses her mobile device's sensors to locate her

10   and display her avatar on a map interface.  (*Id.* ¶ 19.)  Virtual Pokémon then appear near the user.

11   (*Id.* ¶ 20.)  A Trainer can choose to use the "AR" (for "augmented reality") setting and the phone's

12   camera viewer to show the virtual creature on-screen projected on top of the player's real-world

13   surroundings.   (*Id.* ¶¶ 2, 20.)   Whether or not the AR setting is used, a Trainer "catch[es]" a

14   Pokémon by swiping her screen to "throw" Pokéballs at it.  (*Id.* ¶¶ 20, 25.)  The map shows virtual

15   PokéStops and Gyms near real-world locations such as museums and parks.  (*Id.* ¶¶ 3, 21, 25, 49.)

16   Players near a PokéStop can tap its icon on their screens to receive helpful in-game supplies and

17   players near a Gym can tap it to virtually "battle" their Pokémon with other Trainers'.   (*Id.*)

18   Pokémon, PokéStops, and Gyms exist only on players' mobile phone screens.  (*See id.* ¶¶ 2-3.)

19        **B.    Niantic's Standards for Player Behavior.**

20        Niantic requires Trainers to agree to a high standard of behavior while playing the game,

21   including not trespassing and respecting their surroundings and community members while playing.

22            **1.    Pokémon GO Terms of Service ("Terms").**

23        Niantic requires players to accept the Terms before first playing Pokémon GO.  (*See* Kawai

24   Decl. ¶ 4, Ex. 1 at 1; CAC ¶ 49 n.1 (citing Terms, *at* https://www.nianticlabs.com/terms/pokemongo/

25   en).)[2]  The Terms incorporate by reference and require players to accept the "Pokémon GO Trainer

26

27   _____

     [1] Because Niantic offers Pokémon GO for free, it generates revenue by offering for sale optional, in-
     game virtual goods to improve players' gaming experiences.  (*Id.* ¶ 22.)

28   [2] The  CAC's  citation  to  the  Terms  is  correct  but  for  a  capitalization  error,  linking  to

Guidelines" ("Trainer Guidelines").  (*See* Niantic's Request for Judicial Notice ("RJN") at 6-8; Kawai Decl., Ex. 1 at 1, 3, 5, 7-8.)  Players also agree in the Terms that they are responsible for their own conduct while playing and will not (among other things): (1) trespass, access, or attempt to access others' property without permission; (2) harass, abuse, harm, or threaten others; (3) engage in conduct that could result in injury or property damage; or (4) violate any other law.  (Kawai Decl., Ex. 1 at 3, 8-9.)

### 2.    Pokémon GO Trainer Guidelines ("Trainer Guidelines").

In accepting the Trainer Guidelines, players agree to abide by key conduct rules, including:

- **"Respect the community.**  We want Pokémon GO to be a fun and safe experience for all players and for everyone out in the real world where the game is played.  Following these common sense guidelines will help ensure you and other players have a great experience and that others are not affected by your gameplay . . . .  Treat other players and bystanders with respect and courtesy, and conduct yourself in an appropriate manner while playing[.]"

- "**Be respectful** . . . .  It's in everyone's best interest to keep things courteous and fun for all . . . .  Never defame, abuse, harass, harm, stalk, threaten, or otherwise violate [others'] legal rights[.]"

- "**Adhere to the rules of the human world** . . . . [D]o not trespass, or . . . . gain or attempt to gain access to any property . . . . where you do not have the right or permission to be."

(Kawai Decl., Ex. 2 at 1-2.)

### C.    Summary of Plaintiffs' Claims.

The CAC alleges that players acted improperly on or near Plaintiffs' properties shortly after the game's release.  Marder, a New Jersey resident, alleges that in July 2016: (1) five players knocked on his door, asking to visit his backyard to catch a Pokémon; and (2) some strangers with mobile phones "gather[ed] outside of his home[.]"  (CAC ¶ 29.)  He does not allege that players went to his backyard without permission, damaged his home, or refused to leave.  Nor does he allege the other strangers were *even* players, let alone that they entered his property or misbehaved.  (*Id.*)

The Dodichs, Michigan residents, allege that in early July, they noticed an increase in visitors to Wahby Park (a public park across the street from their home) that they attribute to players' ability to access virtual Game Items from the park.  (*Id.* ¶ 34, Fig. 5.)  They admit, "We don't know who

---

https://www.nianticlabs.com/terms/**P**okemongo/en (which is not a functioning link) rather than https://www.nianticlabs.com/terms/**p**okemongo/en, where the Terms are posted.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4.

**DEFENDANT NIANTIC'S MOTION TO DISMISS
PLAINTIFFS' CONSOLIDATED CLASS ACTION
COMPLAINT (CASE NO. 3:16-CV-04300-JD)**

1  [among the visitors] is playing the game," but infer that some visitors "focused on their mobile

2  phones" were players.  (*Id.* ¶¶ 34, 39.)  The visitor influx allegedly generated noise, traffic, and

3  illegal parking.  (*Id.* ¶¶ 35, 37.)  Alleged players walked on their property, and one person parked in

4  front of their home allegedly threatened Ms. Gotts-Dodich when asked to leave.  (*Id.* ¶¶ 35, 37, 39.)

5      The Villas is a non-profit Florida corporation whose members own each of the 62 Villas of

6  Positano condominiums in Hollywood, Florida.  (*Id.* ¶¶ 12, 30.)  The Villas alleges that in early July

7  2016, numerous alleged players visited the condominium complex to access a PokéStop or catch a

8  Pokémon, often at early hours of the morning.  (*Id.* ¶¶ 30-31.)  Some of these players allegedly

9  parked illegally, made noise or played music, littered, and relieved themselves on the premises.  (*Id.*)

10  **III.  LEGAL STANDARDS**

11      A complaint must be dismissed if it does not allege facts sufficient to state a cognizable

12  claim.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); Fed. R. Civ. P. 12(b)(6).  To avoid

13  dismissal, the complaint must provide more than "labels and conclusions" or a "formulaic recitation"

14  of a claim's elements.  *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 875 (9th Cir. 2012)

15  (quoting *Twombly*, 550 U.S. at 555).  A claim must be "plausible," not merely possible or

16  conceivable.  *Twombly*, 550 U.S. at 557, 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In

17  determining whether a complaint states a plausible claim, the Court need not accept conclusory

18  factual allegations or unreasonable inferences.  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998

19  (9th Cir. 2010); *see also Iqbal*, 556 U.S. at 678-79 (conclusory allegations not taken as true).

20  **IV.  ARGUMENT**

21      **A.    The Law of Each Plaintiff's Home State Applies to Their Claims.**

22      This case poses a threshold choice-of-law issue because the parties are diverse.  (CAC ¶¶ 10-

23  15.)  California federal courts apply California's choice-of-law rules.  *See Consul Ltd. v. Solide*

24  *Enters., Inc.*, 802 F.2d 1143, 1146-47 (9th Cir. 1986).  California uses a three-step governmental

25  interest analysis: courts (1) determine whether there are relevant differences between the substantive

26  laws of each state connected to the claims; (2) determine whether each state has an interest in having

27  its law applied; and (3) apply the law of the state whose interest would be more impaired if its law

28  were not applied.  *See, e.g., Abogados v. AT&T, Inc.*, 223 F.3d 932, 934 (9th Cir. 2000).

The laws of Plaintiffs' states—which are substantively different from California's, as shown in footnotes below—govern their claims under California choice-of-law rules.    Under a governmental interest analysis, the state where the alleged torts occurred has the "predominant interest" in applying its law.  *See, e.g.*, *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 97-98 (2010) (applying Oklahoma rather than California law to tort claims based on asbestos exposure in Oklahoma).  That state's law controls unless California has a "compelling interest" in applying its law, and a party's California residence does not suffice.  *Castro v. Budget Rent-a-Car Sys., Inc.*, 154 Cal. App. 4th 1162, 1180-82 (2007) (Alabama's "presumptive interest" in applying its law to in-state tort outweighed California's interest based on a party's California residence); *see also Hernandez v. Burger*, 102 Cal. App. 3d 795, 800-02 (1980) (California "ha[d] no interest at all in applying its law" to Mexico-based torts where California's ties were defendant's residence and the lawsuit's forum).

For each Plaintiff, both their state and California (where Niantic is based) have a potential interest in their claims.  (CAC ¶¶ 10-13.)  The alleged torts—Niantic's alleged "placement" of Game Items and players' alleged misconduct—occurred in Plaintiffs' states.  (*Id.* ¶¶ 5, 7, 27-40.) California's only ties are Niantic's headquarters and this lawsuit's venue.  Plaintiffs' states thus have the predominant interest in applying their law, *see McCann*, 48 Cal. 4th at 97-98, and California lacks a compelling contrary interest, particularly as Plaintiffs allege real property torts.  *See Castro*, 154 Cal. App. 4th at 1180; *Hernandez*, 102 Cal. App. 3d at 800-02; *cf. Wong v. Tenneco*, 39 Cal. 3d 126, 136 (1985) ("fundamental" choice-of-law principle that law of location of property governs questions relating to control of property).  The laws of Plaintiffs' states apply to their claims.

## B.    Plaintiffs Have Failed to State a Trespass Claim (Count II).

### 1.    Plaintiffs' virtual trespass theory fails to allege the required entry.

Plaintiffs' claim that Niantic trespassed by virtually placing Game Items on or near their properties (the "virtual trespass theory") (CAC ¶¶ 75-76) is counter to trespass law.  Trespass requires an interference with Plaintiffs' exclusive possession of real property.  *See Moher v. United States*, 875 F. Supp. 2d 739, 755 (W.D. Mich. 2012); *P&A Constr. v. Hackensack Water Co.*, 280 A.2d 497, 498 (N.J. Super. Ct. 1971); *Borneisen v. Capital One Fin. Corp.*, No. 09-2539, 2011 WL 2730972, at *6 (M.D. Fla. July 13, 2011); *see also* 75 Am. Jur. 2d Trespass § 1.  The key element is

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6.

**DEFENDANT NIANTIC'S MOTION TO DISMISS
PLAINTIFFS' CONSOLIDATED CLASS ACTION
COMPLAINT (CASE NO. 3:16-CV-04300-JD)**

an unauthorized **entry** on the property.  *See, e.g., Moher*, 875 F. Supp. 2d at 755; *Ross v. Lowitz*, 120 A.3d 178, 188 (N.J. 2015); *Pearson v. Ford Motor Co.*, 694 So. 2d 61, 69 (Fla. Dist. Ct. App. 1997).

Michigan and New Jersey require a **physical** intrusion to meet the requirement of an unauthorized entry onto the property.  In Michigan, an **object** must enter the property and "occupy the land . . . . in [a] meaningful sense," without "becom[ing] a part of the ambient circumstances[.]" *Adams v. Cleveland-Cliffs Iron Co.*, 602 N.W.2d 215, 223 (Mich. Ct. App. 1999) (rejecting trespass claim based on noise, vibrations, and dust; each was intangible and thus not a "significant physical intrusion").  Similarly, in New Jersey, allegations that a vinyl chloride "cloud" entered the air above plaintiff's land did not state a trespass claim because the cloud was not a "tangible object."  *In re Paulsboro Derailment Cases*, No. 12-7586, 2013 WL 5530046, at *7 (D.N.J. Oct. 4, 2013).

Niantic has not located Florida authority addressing whether trespass requires a physical intrusion.  But since Florida mirrors Michigan and New Jersey in requiring an "unauthorized entry," *Pearson*, 694 So. 2d at 69, it should be understood to require entry of a physical object.  *Cf.* Dan B. Dobbs, The Law of Torts § 53 (2d ed. 2016) (to show "unauthorized entry" for trespass, "a tangible entry upon the land has been traditionally required"; "[a]nything less . . . . such as penetration of the land by smoke, noise, or light," is not trespass because it does "not affect possession").

Plaintiffs allege an invasion due to Niantic's "designat[ion]" of their properties as locations containing or near virtual Game Items.  (CAC ¶¶ 24, 75-76.)  This "designation" **only** causes Game Items to display **on players' phones**, as the figures in the CAC show:



CAC, Figs. 1, 2.  Thus, Plaintiffs would **never even see** the allegedly intruding Game Items unless they played the game at home.  This virtual "invasion" does not "meaningful[ly] . . . . occupy the[ir] land": it is less invasive than noise, vibrations, dust, or a chemical cloud, all insufficient for trespass.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7.

DEFENDANT NIANTIC'S MOTION TO DISMISS
PLAINTIFFS' CONSOLIDATED CLASS ACTION
COMPLAINT (CASE NO. 3:16-CV-04300-JD)

1    *See Adams*, 602 N.W.2d at 223; *Paulsboro*, 2013 WL 5530046, at *7. Plaintiffs' virtual trespass

2    theory fails under all three states' laws. They do not (and cannot) allege **any** unauthorized entry or

3    tangible invasion of their properties by Game Items, let alone a significant one. The Court should

4    reject their "endeavor to torture old remedies to fit factual patterns not contemplated when those

5    remedies were fashioned."[3] *See Paulsboro*, 2013 WL 5530046, at *8.

6                    **2.    Plaintiffs' induced trespass theory also fails to state a claim.**

7            Plaintiffs' claim that Niantic caused players to enter their properties by inducing them to

8    pursue Game Items (the "induced trespass theory") (CAC ¶ 77) fails in Florida and Michigan, as

9    Plaintiffs do not allege Niantic ***intentionally*** caused players to trespass. Although New Jersey

10   recognizes a claim for negligent trespass that causes significant harm, *Ross*, 120 A.3d at 188, Marder

11   has alleged ***no*** harm in connection with the players' alleged actions, let alone significant harm.

12                   **a.    The Villas and Dodichs do not allege Niantic acted intentionally.**

13           Florida and Michigan require Plaintiffs to plead intentional conduct to state a trespass claim.[4]

14   *See, e.g.*, *Cloverleaf Car Co. v. Phillips Petroleum Co.*, 540 N.W.2d 297, 302 (Mich. Ct. App.

15   1995); *Jacobini v. JP Morgan Chase*, No. 11-231, 2012 WL 252437, at *3 (M.D. Fla. Jan. 26,

16   2012); *MCI Worldcom Network Servs. v. Mastec*, No. 01-2059, 2003 WL 25729927, at *13 (S.D.

17   Fla. Mar. 17, 2003); *cf. Daniel v. Morris*, 181 So. 3d 1195, 1199 (Fla. Dist. Ct. App. 2015) (applying

18   Restatement (Second) of Torts ("Restatement") § 158, which requires an intentional trespass). But

19   Plaintiffs have not alleged that Niantic intentionally caused players to enter their properties.

20           In Michigan, to plead intentional conduct, Plaintiffs must allege that Niantic encouraged,

21   advised, or suggested the third party's trespass. *See Helsel v. Morcom*, 555 N.W.2d 852, 856 (Mich.

22   Ct. App. 1996) (granting summary disposition where defendant did none of these things). Niantic

23   has not located Florida decisions elaborating on this "intentional" element; however, two highly

24   analogous cases from other jurisdictions, dismissing claims for failure to allege that the defendant

---

25

26   [3] Plaintiffs' novel theory would improperly hold companies liable for providing all manner of useful information—e.g., a bird watching app with virtual markers for rare bird sightings or even a real

27   estate market app that hovers a last sale price and other public record information over a property.

28   [4] California law conflicts with Florida and Michigan by allowing intentional, reckless, ***and*** negligent trespass claims. *See Wilson v. Interlake Steel Co.*, 32 Cal. 3d 229, 233 (1982).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8.

**DEFENDANT NIANTIC'S MOTION TO DISMISS
PLAINTIFFS' CONSOLIDATED CLASS ACTION
COMPLAINT (CASE NO. 3:16-CV-04300-JD)**

acted intentionally, are instructive.  *See Dietz v. Ill. Bell Tel. Co.*, 507 N.E.2d 24, 25-28 (Ill. Ct. App. 1987) (no liability where defendant did not know its conduct was substantially certain to result in third party's trespass); *City of Bloomington v. Westinghouse Elec. Corp.*, 891 F.2d 611, 614-15 (7th Cir. 1989) (Indiana law) (no liability where defendant "did not know" third party would trespass).

In *Dietz*, a telephone company licensed a cable company to use its telephone poles located on plaintiff's property.  507 N.E.2d at 25.  The cable company breached the license's requirement to obtain the plaintiff's permission to enter, and the plaintiff sued the telephone company for trespass, alleging that it knew the cable company would trespass.  *Id*.  The court affirmed the dismissal of the trespass claim for failure to allege "intentional" conduct—i.e., that the telephone company had "substantial certainty" that its conduct would result in the cable company's trespass—because the license agreement required the company to obtain authorization to enter.  *Id*. at 25-28.

*Westinghouse* also dismissed a trespass claim against a company whose customer dumped chemicals into the municipal plaintiff's water system.  891 F.2d at 614-15.  The company's contracts required customers to use best efforts to keep the chemicals from entering the environment, and the company provided instructions to ensure proper disposal.  *Id*. at 613.  Plaintiff did not allege that the company intentionally caused the customer's "entry" (chemical dumping) onto its property—i.e., that the company (1) knew the customer would trespass or (2) requested or directed the trespass, given its contracts and instructions.  *Id*.  Thus, only the customer was liable for trespass.[5]  *Id*.

Plaintiffs did not and cannot allege that Niantic acted intentionally for several reasons.  **First**, that Game Items are visible when the app is used on private property does not show to a "substantial certainty" that Niantic knew players would trespass.  If these Game Items were inaccessible from private property, people could not play on their own (or friends') properties.  For instance, the Game Items allegedly accessible from the Villas benefit any of the 62-unit Villas' dozens of residents (and their guests) who play the game.  (*See* CAC ¶ 30, Fig. 3.)  Thus, like the telephone company in *Dietz* (which contemplated that the cable company would obtain authorization to access the underlying

---

[5] These cases are particularly informative because Indiana (*Westinghouse*) and Illinois (*Dietz*), like Michigan and Florida, rely on the Restatement § 158 ("Liability for Intentional Intrusions on Land"). *Westinghouse*, 891 F.2d at 615; *Adams*, 602 N.W.2d at 224; *Daniel*, 181 So. 3d at 1199; *Dial v. City of O'Fallon*, 81 Ill. 2d 548, 553-54 (1980).

private property), Niantic makes the challenged in-game features visible for the benefit of individuals **authorized to access** the relevant properties.  *See* 507 N.E.2d at 25.

**Second**, Niantic's contracts with the alleged trespassers required them not to trespass, as in *Dietz*, 507 N.E.2d at 26-27, and *Westinghouse*, 891 F.2d at 613-15.  That is, Niantic required players to agree to its Terms and Trainer Guidelines, including multiple provisions against trespass and other legal violations.  (*See* RJN at 6-8; Kawai Decl., Ex. 1 at 1, 3, 5, 7-9, Ex. 2 at 1-2.)  Plaintiffs do not (and, again, cannot) allege Niantic knew with "substantial certainty" that players would trespass in breach of their contracts.  *See Dietz*, 507 N.E.2d at 27; *Westinghouse*, 891 F.2d at 613-15.  And the Terms and Trainer Guidelines foreclose any allegation that Niantic encouraged, advised, or suggested trespass to players, as Michigan requires to state a claim.  *See Helsel*, 555 N.W.2d at 856.

Thus, the Villas and Dodichs have not stated a Michigan or Florida trespass claim against Niantic, because they did not allege that Niantic directed players to enter their properties or that Niantic knew players would do so without authorization.  *See Westinghouse*, 891 F.2d at 615 (dismissing trespass claim that did not allege defendant directed trespass or knew it would occur); *Dietz*, 507 N.E.2d at 26-28 (dismissing trespass claim that did not allege defendant knew with "substantial certainty" its conduct would result in trespass).  Accordingly, the Villas and the Dodichs have not stated trespass claims under Florida or Michigan law.  *See, e.g.*, *Cloverleaf*, 540 N.W.2d at 302 (dismissing Michigan trespass claim for failure to allege that defendant intended to intrude).

### b. Marder has not alleged that he suffered any harm.

New Jersey recognizes claims based on a defendant's (1) intended trespass, regardless of harm or (2) reckless or negligent trespass that **causes cognizable harm**.[6]  *Ross*, 120 A.3d at 188.  Like the other Plaintiffs, Marder has not stated an intentional trespass claim.  *See* Section IV.B.2.a, *supra*; *see also Starego v. Soboliski*, 93 A.2d 169, 170 (N.J. 1952) (no trespass where defendants asked city to install new water line but did not ask city to trespass on plaintiff's property to do so).

Nor has Marder stated a claim for reckless or negligent trespass: he has not alleged harm

---

[6] California conflicts with New Jersey, requiring all trespass plaintiffs (not just those alleging reckless/negligent trespass) to show defendant's entry was a "substantial factor" in causing the harm.  *See Bouyer v. Countrywide Bank*, No. 08-5583, 2009 WL 799398, at *4 (N.D. Cal. Mar. 24, 2009).

1    under the governing Restatement standard.  *See Ross*, 120 A.3d at 188 (adopting Restatement § 165

2    standard); *Player v. Motiva Enters., LLC*, No. 02-3216, 2006 WL 166452, at *11 n.25 (D.N.J. Jan.

3    20, 2006) (applying Restatement § 165).  To do so, he must allege a significant harm, such as

4    damage to his land or personal property, or harm to a family member.  *See* Restatement § 165 cmt. c,

5    illus. 1-5.  But he fails to allege any harm at all.  He alleges that in July 2016, five players knocked

6    on his door requesting access to his backyard, but does not allege that they went to his backyard

7    without permission, damaged his property, refused to leave, or otherwise harmed him.  (*See* CAC

8    ¶ 29.)  He also alleges that some strangers "gather[ed] outside of his home," holding mobile phones.

9    (*Id.*)  He does not allege that they were players, however, so this is irrelevant.  Even if they were

10   players, he also does not allege that they entered his property or acted disruptively.  (*See id.*)  And in

11   the CAC filed in November 2016, he alleges ***no*** interactions with players after July 2016.  (*See id.*)

12          Marder's failure to allege actual harm warrants dismissal under the Restatement standard.

13   *See, e.g.*, *Lewis v. Ceralvo Holdings, LLC*, No. 11-0055, 2012 WL 32607, at *4 (W.D. Ky. Jan. 6,

14   2012) (dismissing negligent trespass claim with conclusory harm allegations under Restatement

15   § 165); *cf. Player*, 2006 WL 166452, at *11 n.25 (New Jersey negligent trespass claim failed under

16   Restatement § 165 where plaintiffs did not show injury to persons or property); *Karpiak v. Russo*,

17   676 A.2d 270, 275 (Pa. Super. Ct. 1996) (dismissing trespass claim under Restatement § 165 for

18   failure to show harm from complained-of dust); *see generally Martin v. City of Struthers*, 319 U.S.

19   141, 147-48 (1943) (unconstitutional to ban as trespass knocking on doors to provide literature; U.S.

20   law punishes those who enter property "after having been warned by the owner to keep off," not

21   those who innocently enter another's property "without an explicit command . . . . to stay away").

22          **C.     Plaintiffs Have Failed to State a Nuisance Claim (Count I).**

23          Plaintiffs allege that Niantic is liable for private nuisance because it "intentionally placed"

24   Game Items "on or near the[ir] properties" without authorization, causing players' "foreseeable

25   incursions [] onto the[ir] propert[ies]" and "invading their use and enjoyment of their properties."

26   (CAC ¶ 68.)  Plaintiffs have not stated a viable nuisance claim because they do not allege that

27   Niantic was the legal or proximate cause of a nuisance.  Moreover, Marder has not stated a New

28   Jersey nuisance claim because he has not alleged significant harm.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11.

**DEFENDANT NIANTIC'S MOTION TO DISMISS
PLAINTIFFS' CONSOLIDATED CLASS ACTION
COMPLAINT (CASE NO. 3:16-CV-04300-JD)**

1      **1.   Marder's claim under New Jersey law fails.**

New Jersey follows the Restatement's private nuisance standard, under which a defendant is liable if (1) their conduct is a "legal cause" (i.e., proximate cause) of an invasion in the plaintiff's interest in the private use and enjoyment of their land; (2) the invasion is (a) intentional and unreasonable, or (b) unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities; and (3) the plaintiff suffers resulting "significant harm."  *See Ross*, 120 A.3d at 185; Restatement §§ 821F, 822; *Boteach v. Socialist People's Libyan Arab Jamahiriya*, 759 F. Supp. 2d 548, 552 (D.N.J. 2010). Marder's claim fails: he has neither alleged significant harm nor that Niantic's conduct is the legal cause of any invasion on his property.

**a.   Failure to allege significant harm.**

Marder has not alleged the "significant harm" required to state a New Jersey nuisance claim. *See Boteach*, 759 F. Supp. 2d at 552 (dismissing for failure to allege significant harm where plaintiffs provided only vague allegations about dust and noise).  "Significant harm" requires "harm of importance, involving more than slight inconvenience or petty annoyance."  Restatement § 821F, cmt. c.  Thus, a brief or temporary property invasion causes (at most) incidental harm that is not a nuisance; a physical invasion must be "repeated or of long duration" to cause the needed significant harm.  *See id*. § 821D, cmt. e; *cf. Russo Farms, Inc. v. Vineland Bd. of Educ.*, 675 A.2d 1077, 1084 (N.J. 1996) (flooding of plaintiff's land is nuisance "if it is repeated or of long duration").

Courts dismiss nuisance claims for failure to allege "significant harm" where plaintiffs claim only minor annoyances or fail to explain how they were badly harmed.  *See, e.g.*, *Boteach*, 759 F. Supp. 2d at 552; *Sofka v. Thal*, 662 S.W.2d 502, 508-09 (Mo. 1983) (dismissing nuisance claim based on frequent daytime calls for failure to allege "significant harm" under Restatement); *Mourad v. Marathon Petroleum Co., LP*, 129 F. Supp. 3d 517 (E.D. Mich. 2015) (dismissing nuisance claim for failure to allege elements of private nuisance including "significant harm" under Restatement where plaintiffs did not explain how defendant oil refinery's emissions harmed them); *cf. Bower v. Weisman*, 639 F. Supp. 532, 542 (S.D.N.Y. 1986) (citing Restatement and dismissing nuisance claim because alleging that ex-spouse removed artwork from and changed locks of plaintiff's townhome

Cooley LLP
Attorneys At Law
San Francisco

12.

Defendant Niantic's Motion to Dismiss
Plaintiffs' Consolidated Class Action
Complaint (Case No. 3:16-cv-04300-JD)

did not show significant interference with plaintiffs' land).[7]

As set forth above, Marder has not met this requirement.  His allegations that five players knocked on his door in July 2006, without any description of how they harmed his property or him, are exactly the type of allegations—describing (at most) fleeting annoyance—that courts hold insufficient to satisfy the "significant harm" requirement of a nuisance claim at the pleading stage. *See, e.g.*, *Boteach*, 759 F. Supp. 2d at 552 (so dismissing); *Sofka*, 662 S.W.2d at 508 (same).

### b.    Failure to allege legal/proximate cause.

Marder's claim also fails because he does not allege that Niantic is the legal/proximate cause of an invasion impacting his private use and enjoyment of land.  *See Ross*, 120 A.3d at 185 (legal cause is required element of nuisance claim); Restatement § 822.  Under the controlling Restatement § 834 standard, only actors participating to a "substantial extent" in creating the nuisance are liable. *See Camden Cnty. Bd. v. Beretta U.S.A. Corp.*, 123 F. Supp. 2d 245, 266-67 (D.N.J. 2000).

*Westinghouse* applied Section 834's "substantial extent" standard to affirm dismissal of a nuisance claim against a chemical company based on its customer's dumping of toxic chemicals in disregard of the company's product use instructions.  891 F.2d at 614.  Since the company provided proper disposal instructions and contractually required the customer to use best efforts to dispose of chemicals properly, it did not participate to a "substantial extent" in the nuisance under Section 834 and thus was not liable.  *Id.* at 614 & n.5; *see generally Heim v. Heim*, No. 10-3816, 2014 WL 1340063, at *10 (N.D. Cal. Apr. 2, 2014) (rejecting nuisance claim against dry cleaning equipment manufacturer based on customer's dumping of polluted materials; manufacturer did not participate in nuisance because it provided customers user manual directing them to comply with all regulations).

Here, Marder has not alleged that Niantic is the "legal cause" of players' alleged invasion. As in *Westinghouse*, 891 F.2d at 614, Niantic's Terms required players to agree that they would not trespass or violate any other law.  *See Section II.A.1, supra.*  Similarly to *Heim*, 2014 WL 1340063,

---

[7] *See generally Ocean Club Condo Ass'n v. D'Amato*, No. A-0175-04T3, 2006 WL 2335073, at *4 (N.J. Super. Ct. App. Div. Aug. 14, 2006) (rejecting nuisance claims where the complained-of "noise was a mere annoyance rather than a nuisance"); *Hrycenko v. Bd. of Adjustment*, 99 A.2d 430, 433 (N.J. Super. Ct. App. Div. 1953) (welding shop was not nuisance where noise, fumes, and glare did not "exceed the bounds to which [nearby residence] must adjust themselves").

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13.

DEFENDANT NIANTIC'S MOTION TO DISMISS
PLAINTIFFS' CONSOLIDATED CLASS ACTION
COMPLAINT (CASE NO. 3:16-CV-04300-JD)

at *10, Niantic provided players with plain-language Trainer Guidelines also directing them not to trespass.  *See* Section II.A.2, *supra*.  Moreover, like numerous socially beneficial online services that direct users to specific locations, Niantic could not control the real-world movements of its users who allegedly visited Marder's property.  If accepted, Plaintiffs' theory of liability could implicate apps directing potential homebuyers to open houses in hot neighborhoods, listing the "top parks for children" in each city, or even the now-ubiquitous GPS apps that identify time-saving shortcuts that reduce traffic.  All of these beneficial apps could be said to play a role in irresponsible third parties creating nuisances, yet Niantic has located no precedent squarely addressing claims like Plaintiffs'.

Nuisance law recognizes that defendants are not liable for such alleged nuisances caused by third parties they do not control.  *See New Jersey v. Exxon*, 376 A.2d 1339, 1349 (N.J. Ch. Div. 1977) (defendant not liable for public nuisance based on third party's pollution: "[a] person is not civilly liable for a nuisance caused or promoted by others over whom he has no control"); *Camden*, 123 F. Supp. 2d at 266-67 (because a defendant "ha[s] no duty to control" third-party misconduct, a defendant who "ha[s] neither controlled nor created the [third-party] public nuisance should not be held responsible.").[8]  Thus, even if players had created a legally cognizable nuisance affecting Marder's property (which they did not), Marder has a claim against those players, not Niantic.

### 2. The Dodichs' claim under Michigan law fails.

Under Restatement § 822's private nuisance standard, which controls in Michigan, the Dodichs' nuisance claim must also be dismissed for failure to allege that Niantic's conduct was the "legal cause" of their claimed invasion in the private use and enjoyment of their land.  *See Adkins v. Thomas Solvent Co.*, 487 N.W.2d 715, 720 (Mich. 1992); Restatement § 822; Section IV.C.1, *supra*; *Cloverleaf*, 540 N.W.2d at 301 (dismissing nuisance claim where defendant lacked "control of the nuisance at the time of the injury"); *Helber v. City of Ann Arbor*, No. 247700, 2004 Mich. App. LEXIS 2884, at *11 (Mich. Ct. App. Oct. 26, 2004) (dismissing nuisance claim against city based on sewer backups into basement where plaintiffs alleged city negligently maintained sewer, but described no city conduct that was the legal cause of the basement flooding).

---

[8] Unlike New Jersey, California does not require that defendant controlled the nuisance.  *See Redevelopment Agency v. BNSF Ry.*, 643 F.3d 668, 673 (9th Cir. 2011) (applying California law).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14.

DEFENDANT NIANTIC'S MOTION TO DISMISS
PLAINTIFFS' CONSOLIDATED CLASS ACTION
COMPLAINT (CASE NO. 3:16-CV-04300-JD)

**3.     The Villas' claim under Florida law fails.**

A defendant is liable for nuisance in Florida if (1) it proximately causes (2) an invasion that disturbs the plaintiff's "free use, possession, or enjoyment of [their] property, or which renders its ordinary use or occupation physically uncomfortable." *See Gates v. W.R. Grace & Co.*, No. 08-2560, 2009 WL 1455316, at *3 (M.D. Fla. May 21, 2009) (quoting *Jones v. Trawick*, 75 So. 2d 785, 787 (Fla. 1954); dismissing for failure to state nuisance claim). Like the other Plaintiffs, the Villas' nuisance claim must also be dismissed for failure to allege that Niantic proximately caused players' claimed invasions on its property. *See Penelas v. Arms Tech., Inc.*, No. 99-1941, 1999 WL 1204353, at *4 (Fla. Cir. Ct. Dec. 13, 1999) (dismissing public nuisance claim against gun manufacturers because nuisance liability requires "control of the activity which creates the nuisance").[9]

**D.     Plaintiffs Have Failed to State an Unjust Enrichment Claim (Count III).**

Plaintiffs allege that Niantic is liable for unjust enrichment based on the same alleged conduct supporting their other claims: because it "designat[ed] GPS coordinates on or near the[ir] properties . . . . as Pokéstops and [Gyms]," thus incentivizing players to "make incursions onto [their] properties[.]" (CAC ¶¶ 66-70, 75-78, 83.) All three states permit certain unjust enrichment claims, *Torres-Hernandez v. CVT Prepaid Sols.*, No. 08-1057, 2008 WL 5381227, at *9 (D.N.J. Dec. 17, 2008); *State of Fla. v. Tenet Healthcare Corp.*, 420 F. Supp. 2d 1288, 1308-09 (S.D. Fla. 2005); *Lipov v. Louisiana-Pacific Corp.*, No. 12-439, 2013 WL 3805673, at *6 (W.D. Mich. July 22, 2013), but not in the circumstance alleged here.[10]

**1.     Marder's claim under New Jersey law fails.**

*First*, New Jersey permits unjust enrichment claims where the plaintiff conferred a benefit on the defendant under circumstances that make retention of that benefit inequitable, but does not allow an independent tort claim for unjust enrichment. *See, e.g.*, *Torres-Hernandez*, 2008 WL 5381227, at *9; *Castro v. NYT Television*, 851 A.2d 88, 98 (N.J. App. Div. 2004). This is because unjust

---

[9] Thus, California nuisance law also conflicts with Florida and Michigan by not requiring an allegation that the defendant controlled the nuisance. *See Redevelopment Agency*, 643 F.3d at 673.

[10] In contrast, California does not recognize a claim for unjust enrichment. *See, e.g.*, *FormFactor, Inc. v. MarTek, Inc.*, No. 14-1122, 2015 WL 367653, at *7 (N.D. Cal. Jan. 28, 2015) (Donato, J.).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15.

DEFENDANT NIANTIC'S MOTION TO DISMISS
PLAINTIFFS' CONSOLIDATED CLASS ACTION
COMPLAINT (CASE NO. 3:16-CV-04300-JD)

enrichment requires that the plaintiff "expect remuneration" when conferring the benefit on defendant, which is not true when the plaintiff is the alleged victim of the defendant's tort. *Cafaro v. HMC*, No. 07-2793, 2008 WL 4224801, at *12 (D.N.J. Sept. 8, 2008) (dismissing claim alleging that defendant was unjustly enriched through conversion of investment funds, a tort); *cf. Castro*, 851 A.2d at 99 (no reasonable expectation of payment where member of public is videotaped for TV). Marder's claim should be dismissed because it is based on Niantic's alleged tortious conduct (*see* CAC ¶¶ 66-70, 75-78, 83), not a quasi-contractual or other relationship supporting a reasonable expectation of payment. *See Torres-Hernandez*, 2008 WL 5381227, at *9; *see also Cafaro*, 2008 WL 4224801, at *12; *Castro*, 851 A.2d at 98.

**Second**, New Jersey unjust enrichment claims require a "direct relationship between the parties[.]" *See Cooper v. Samsung Elecs. Am., Inc.*, No. 07-3853, 2008 WL 4513924, at *10 (D.N.J. Sept. 30, 2008) (plaintiff who purchased Samsung TV through third-party retailer could not state unjust enrichment claim against Samsung).[11] Here, Marder's claim fails because he alleges only that Niantic benefited by designating nearby GPS coordinates to display virtual items in the game app (CAC ¶ 83), but does not allege that he has a quasi-contractual relationship with Niantic.

### 2. The Villas' claim under Florida law fails.

**First**, Florida permits unjust enrichment claims where (1) plaintiffs conferred a benefit on the defendant (2) who knowingly and voluntarily retained it (3) under circumstances making that retention inequitable, but (like New Jersey) bars claims based on allegedly ***tortious*** conduct, because "the right on which [the plaintiff] relies arises from that [tort], not from unjust enrichment." *Tenet*, 420 F. Supp. 2d at 1308-09 (applying Florida law to dismiss tort-based unjust enrichment claim because "unjust enrichment is concerned solely with enrichments that are unjust independently of [alleged] wrongs"). Thus, the Villas' unjust enrichment claim fails for the same reason as Marder's.

**Second**, Florida requires an unjust enrichment plaintiff to "allege that it directly conferred a benefit on defendant; an indirect benefit is insufficient." *Swiss Watch Int'l. Inc. v. Movado Grp.*,

---

[11] *See also Union Trust Co. v. Wakefern Food Corp.*, No. 86-728, 1989 WL 120756, at *21 (D.N.J. Sept. 8, 1989) (dismissing unjust enrichment claim where parties lacked commercial relationship, because claim "requires a relationship or course of dealings").

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16.

**DEFENDANT NIANTIC'S MOTION TO DISMISS
PLAINTIFFS' CONSOLIDATED CLASS ACTION
COMPLAINT (CASE NO. 3:16-CV-04300-JD)**

*Inc.*, No. 00-7703, 2001 WL 36270979, at *4 (S.D. Fla. Sept. 5, 2001) (dismissing for lack of direct benefit where plaintiff allegedly curbed secondary market for defendant's watches by reducing its purchases in that market).[12]  A "direct benefit" flows directly from a plaintiff to a defendant, while a defendant receives an indirect benefit from a source other than the plaintiff, with only indirect contribution from the plaintiff.  *Hill v. Nationstar Mortg., LLC*, No. 15-60106, 2015 WL 4478061, at *4 (S.D. Fla. July 2, 2015); *Century Sr. Servs. v. Consumer Health Benefit Ass'n*, 770 F. Supp. 2d 1261, 1267 (S.D. Fla. 2011).  Thus, a plaintiff shown in an adult entertainment film distributed by defendants did not state an unjust enrichment claim because she did not directly benefit the defendants.  *Tilton v. Playboy Entm't*, No. 05-692, 2007 WL 80858, at *3 (M.D. Fla. Jan. 8, 2007).

Here, Niantic allegedly designated GPS coordinates on or near the Villas' property as locations where players would see virtual Game Items, which encouraged players to "make incursions" onto the Villas' property, which allegedly increased the game's "profitability"—but only if those players made in-game purchases.  (CAC ¶¶ 22, 83.)  At most, the CAC supports an inference that the Villas indirectly benefited Niantic by increasing game play; Niantic only directly benefited from players who made in-game purchases.  (*Id.*)  The benefit that the Villas supposedly conferred on Niantic is far more remote even than that held insufficient in *Tilton*.  *See* 2007 WL 80858, at *3.

### 3.     The Dodichs' claim under Michigan law fails.

Michigan permits unjust enrichment claims where (1) plaintiffs conferred a benefit on the defendant (2) where retention of that benefit is inequitable, but disallows claims where plaintiffs allege they indirectly benefited defendant—e.g., by buying defendant's product from a third party. *See Lipov*, 2013 WL 3805673, at *6; *A&M Supply v. Microsoft Corp.*, No. 274164, 2008 WL 540883, at *2 (Mich. Ct. App. Feb. 28, 2008) (same); *In re Refrigerant Compressors Antitrust Litig.*, No. 09-2042, 2013 WL 1431756, at *25-26 (E.D. Mich. Apr. 9, 2013) (dismissing indirect purchasers' unjust enrichment claim with prejudice because they only directly benefited those from whom they purchased); *Smith v. Glenmark Generics*, No. 315898, 2014 WL 4087968, at *1 (Mich.

---

[12] *See also People's Nat'l Bank of Commerce v. First Union Nat'l Bank*, 667 So. 2d 876, 879 (Fla. Dist. Ct. App. 1996) (similar); *Hogan Lovells US LLP v. Howrey LLP*, 531 B.R. 814, 827 (N.D. Cal. 2015) (Donato, J.) (dismissing unjust enrichment claim under D.C. law (same elements as Florida) because any benefit defendants received was from third parties, not plaintiffs).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17.

DEFENDANT NIANTIC'S MOTION TO DISMISS
PLAINTIFFS' CONSOLIDATED CLASS ACTION
COMPLAINT (CASE NO. 3:16-CV-04300-JD)

Ct. App. Aug. 19, 2014) (discussing *Kammer Asphalt v. E. China Twp. Sch.*, 504 N.W.2d 635, 641 (Mich. 1993); holding that a defendant must receive a benefit directly from a plaintiff).[13]  As discussed, the Dodichs' claim also fails because, at most, they allege an indirect benefit to Niantic.

## V.  CONCLUSION

The Court should grant Niantic's motion to dismiss with prejudice because Plaintiffs have failed to state trespass, nuisance, or unjust enrichment claims under applicable Michigan, New Jersey, and Florida law.  Plaintiffs have already amended their pleading, and, tellingly, the CAC— filed on November 25, 2016, nearly four months after Marder's initial Complaint (Dkt. 1)—contains *no* allegations that players behaved improperly after mid-August 2016.  Accordingly, further amendment will not permit the inclusion of additional relevant facts.  The Court should deny leave to amend as futile.  *See Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (discretion to deny leave to amend is "particularly broad" where plaintiff has previously amended).

Dated:  January 27, 2017  COOLEY LLP

/s/ Jeffrey M. Gutkin
Jeffrey M. Gutkin

Attorneys for Defendant
NIANTIC, INC.

140291060

---

[13] *But see In re Auto. Parts Antitrust Litig.*, No. 12-2311, 2014 WL 2993753, at *31 (E.D. Mich. July 3, 2014) (stating minority view that Michigan unjust enrichment claims do not need direct benefit).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18.

DEFENDANT NIANTIC'S MOTION TO DISMISS
PLAINTIFFS' CONSOLIDATED CLASS ACTION
COMPLAINT (CASE NO. 3:16-CV-04300-JD)