COOLEY LLP
MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
JEFFREY M. GUTKIN (216083) (jgutkin@cooley.com)
BENJAMIN H. KLEINE (257225) (bkleine@cooley.com)
BETHANY C. LOBO (248109) (blobo@cooley.com)
DEVON HANLEY COOK (262626) (dhanleycook@cooley.com)
101 California Street, 5th Floor
San Francisco, CA  94111-5800
Telephone:     (415) 693-2000
Facsimile:      (415) 693-2222

Attorneys for Defendant
NIANTIC, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In Re Pokémon Go Nuisance Litigation | Case No. 3:16-cv-04300 JD |
| | **DEFENDANT NIANTIC, INC.'S MOTION TO DISMISS PLAINTIFFS' SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT** |
| | Date:          March 29, 2018 |
| | Time:         10:00 a.m. |
| | Courtroom:  11, 19th Floor |
| | Judge:        Hon. James Donato |
| | Trial Date:  Not Yet Set |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF CONTENTS

PAGE(S)

Notice of Motion and Motion to Dismiss .............................................................................. 1

Statement of Relief Sought ................................................................................................... 1

Statement of Issues To Be Decided ..................................................................................... 1

Memorandum of Points and Authorities .............................................................................. 1

I.  Introduction .............................................................................................................. 1

II.  Statement of Facts ................................................................................................... 3

    A.  Pokémon GO and Niantic .............................................................................. 3

    B.  Niantic's Standards for Player Behavior ....................................................... 3

        1.  Pokémon GO Terms of Service ("Terms") ....................................... 3

        2.  Pokémon GO Trainer Guidelines ("Guidelines") ............................. 3

    C.  Summary of Plaintiffs' Claims ..................................................................... 4

III.  Legal Standards ....................................................................................................... 5

IV.  Choice of Law ......................................................................................................... 5

V.  Argument ................................................................................................................. 6

    A.  Some Plaintiffs Lack Standing to Assert Claims for Injunctive Relief ....................... 6

    B.  Plaintiffs' Virtual Trespass Theory Fails to State a Viable Trespass Claim ................ 7

        1.  Plaintiffs' claim that virtually placing Game Items on their properties constitutes trespass (the "virtual trespass theory") fails as a matter of law ..................................................................................... 7

    C.  Plaintiffs' Induced Trespass Theory Fails to State a Claim ............................... 9

        1.  Plaintiffs cannot allege that Niantic intentionally encouraged trespass ......... 10

        2.  Even in states that recognize negligent trespass, Plaintiffs' claims fail ........ 12

    D.  Plaintiffs Have Failed to State a Nuisance Claim ..................................... 13

        1.  Perez fails to state a nuisance claim under California law ............................. 13

        2.  Plaintiffs fail to state a nuisance claim in the states adopting the Restatement (Second) of Torts ........................................................ 14

        3.  The remaining Plaintiffs' nuisance claims also fail ..................................... 15

VI.  Conclusion .............................................................................................................. 15

# TABLE OF AUTHORITIES

PAGE(S)

## Cases

*Abogados v. AT&T, Inc.*,
223 F.3d 932 (9th Cir. 2000) ................................................................................5

*Abrams v. Nucor Steel Marion, Inc.*,
694 F. App'x 974 (6th Cir. 2017) ..........................................................................9

*Adams v. Cleveland-Cliffs Iron Co.*,
602 N.W.2d 215 (Mich. Ct. App. 1999) ...........................................................8, 10

*Adkins v. Thomas Solvent Co.*,
487 N.W.2d 715 (Mich. 1992) .............................................................................14

*Albuquerque Bernalillo Cty. Water Util. Auth. v. CalMat Co.*,
No. 06-CV-00754-BB, 2008 WL 11322216 (D.N.M. Mar. 13, 2008) ..................14

*Allen v. City of Beverly Hills*,
911 F.2d 367 (9th Cir. 1990) ..............................................................................15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..............................................................................................5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..............................................................................................5

*Borneisen v. Capital One Fin. Corp.*,
No. 09-2539, 2011 WL 2730972 (M.D. Fla. July 13, 2011) ..................................7

*Brown v. Whirlpool Corp.*,
996 F. Supp. 2d 623 (N.D. Ohio 2014) ................................................................7

*Burke v. Briggs*,
571 A.2d 296 (N.J. Super. Ct. App. Div. 1990) ..................................................10

*Camden Cnty. Bd. v. Beretta U.S.A. Corp.*,
123 F. Supp. 2d 245 (D.N.J. 2000) ................................................................14, 15

*Carter v. Done*,
276 P.3d 1127 (Utah Ct. App. 2012) ..................................................................10

*Castro v. Budget Rent-a-Car Sys., Inc.*,
154 Cal. App. 4th 1162 (2007) .............................................................................6

*Celebrity Studios, Inc. v. Civetta Excavating Inc.*,
340 N.Y.S.2d 694 (N.Y. Sup. Ct. 1973) ..............................................................8

TABLE OF AUTHORITIES
(continued)

PAGE(S)

*City of Bloomington v. Westinghouse Elec. Corp.*,
    891 F.2d 611 (7th Cir. 1989) ................................................................ *passim*

*City of Jackson v. Walker-Hall, Inc.*,
    No. W2004-01612-COA-R3CV, 2005 WL 1834114 (Tenn. Ct. App. Aug. 3,
    2005) ........................................................................................................10

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983)..................................................................................6, 7

*Cloverleaf Car Co. v. Phillips Petrol. Co.*,
    540 N.W.2d 297 (Mich. Ct. App. 1995) ......................................................11

*Coddington v. Staab*,
    716 So. 2d 850 (Fla. Dist. Ct. App. 1998) .................................................7, 8

*Congregation B'nai Jehuda v. Hiyee Realty Corp.*,
    35 A.D.3d 311 (N.Y. App. Div. 2006) ..........................................................7

*Consul Ltd. v. Solide Enters., Inc.*,
    802 F.2d 1143 (9th Cir. 1986) .....................................................................5

*Copart Indus., Inc. v. Consol. Edison Co. of N.Y.*,
    362 N.E.2d 968 (N.Y. 1977)......................................................................14

*Crawford v. Nat'l Lead Co.*,
    784 F. Supp. 439 (S.D. Ohio 1989) ............................................................14

*Daniel v. Morris*,
    181 So. 3d 1195 (Fla. Dist. Ct. App. 2015) .................................................10

*Dapeer v. Neutrogena Corp.*,
    95 F. Supp. 3d 1366 (S.D. Fla. 2015) ..........................................................6

*De Gonzalez v. City of Richmond*,
    No. C-14-00386 DMR, 2014 WL 2194816 (N.D. Cal. May 23, 2014)..............6

*Dietz v. Ill. Bell Tel. Co.*,
    507 N.E.2d 24 (Ill. Ct. App. 1987) ..................................................10, 11, 12

*Duer v. Henderson*,
    No. 2009 CA 15, 2009 WL 4985475 (Ohio Ct. App. Dec. 23, 2009) ....10, 11, 12

*Girard v. Ball*,
    125 Cal. App. 3d 772 (Ct. App. 1981) ..........................................................7

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii.

DEF. NIANTIC'S MOT. TO DISMISS PLS.' SECOND
CONSOLIDATED AM. COMPL. (NO. 3:16-CV04300-JD)

**TABLE OF AUTHORITIES**
(continued)

PAGE(S)

*Hayes v. Carrigan,*
  C-160554, 2017 WL 3049989 (Ohio Ct. App. July 19, 2017) ......................................10

*Heim v. Heim,*
  No. 5:10-CV-03816-EJD, 2014 WL 1340063 (N.D. Cal. Apr. 2, 2014)......................13

*Helsel v. Morcom,*
  555 N.W.2d 852 (Mich. Ct. App. 1996) ....................................................................11

*Ivory v. Int'l Bus. Machines Corp.,*
  983 N.Y.S.2d 110 (N.Y. App. Div. 2014) ...................................................................8

*John Price Assocs., Inc. v. Utah State Conference, Bricklayers Locals Nos. 1,2 & 6,*
  615 P.2d 1210 (Utah 1980)........................................................................................7

*In re Martinez,*
  476 B.R. 627 (Bankr. D.N.M. 2012) ..........................................................................7

*McCann v. Foster Wheeler LLC,*
  48 Cal. 4th 68 (2010) .............................................................................................5, 6

*Moher v. United States,*
  875 F. Supp. 2d 739 (W.D. Mich. 2012) ...................................................................7

*Morrison v. Smith,*
  757 S.W.2d 678 (Tenn. Ct. App. 1988) .....................................................................7

*Nat'l Acad. of Recording Arts & Scis., Inc. v. On Point Events LP,*
  No. CV 08-0856 DSF, 2009 WL 10671400 (C.D. Cal. Aug. 12, 2009)......................10

*P&A Constr. v. Hackensack Water Co.,*
  280 A.2d 497 (N.J. Super. Ct. 1971) .........................................................................7

*Padilla v. Lawrence,*
  685 P.2d 964 (N.M. Ct. App. 1984)...........................................................................9

*In re Paulsboro Derailment Cases,*
  No. 12-7586, 2013 WL 5530046 (D.N.J. Oct. 4, 2013) ...........................................8, 9

*Penelas v. Arms Tech., Inc.,*
  No. 99-1941, 1999 WL 1204353 (Fla. Cir. Ct. Dec. 13, 1999)..................................15

*Perez v. Nidek Co.,*
  711 F.3d 1109 (9th Cir. 2013) ..................................................................................6

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv.

DEF. NIANTIC'S MOT. TO DISMISS PLS.' SECOND
CONSOLIDATED AM. COMPL. (NO. 3:16-CV04300-JD)

1

**TABLE OF AUTHORITIES**
(continued)

2

PAGE(S)

3

*Phillips v. Sun Oil Co.*,
  121 N.E.2d 249 (N.Y. 1954)..................................................................................10

4

*Redevelopment Agency v. BNSF Ry. Co.*,
  643 F.3d 668 (9th Cir. 2011) ...............................................................................13

5

6

*Ross v. Lowitz*,
  120 A.3d 178 (N.J. 2015).................................................................7, 10, 12, 14

7

8

*Ryan v. Tennessee Valley Auth.*,
  No. 3:14-CV-356-TAV-HBG, 2015 WL 1962173 (E.D. Tenn. Apr. 30, 2015) ...........................9

9

*Schwartzman, Inc. v. Atchison, Topeka & Santa Fe Ry. Co.*,
  857 F. Supp. 838 (D.N.M. 1994) .........................................................................10

10

11

*Shaw v. Cty. of Santa Cruz*,
  170 Cal. App. 4th 229 (2008) ..............................................................................12

12

13

*Sofka v. Thal*,
  662 S.W.2d 502 (Mo. 1983) .................................................................................14

14

*Southern Ry. Co. v. State*,
  169 S.W. 1173 (Tenn. 1914)................................................................................15

15

16

*State v. Fermenta ASC Corp.*,
  616 N.Y.S.2d 702 (N.Y. Sup. Ct. 1994) ..............................................................11

17

18

*Team Enters. LLC v. W. Inv. Real Estate Tr.*,
  647 F.3d 901 (9th Cir. 2011) ..........................................................................13, 14

19

*Thackery v. Union Portland Cement Co.*,
  231 P. 813 (Utah 1924).........................................................................................8

20

21

*Walker Drug Co. v. La Sal Oil Co.*,
  972 P.2d 1238 (Utah 1998) ...................................................................................7

22

23

*Whaley v. Park City Mun. Corp.*,
  2008 UT App 234, 190 P.3d 1 ............................................................................14

24

*Williams v. Santander Bank*,
  No. CV 15-4188 SJO, 2015 WL 4484202 (C.D. Cal. July 22, 2015) ...........................7

25

26

*Wilson v. Interlake Steel Co.*,
  32 Cal. 3d 229 (1982) .......................................................................................9, 10

27

28

**TABLE OF AUTHORITIES**
**(continued)**

**PAGE(S)**

*Wong v. Tenneco*,
   39 Cal. 3d 126 (1985) ...................................................................................................6

**Other Authorities**

75 American Jurisprudence 2d Trespass
   § 1 ...................................................................................................................................7

California Civil Jury Instructions
   § 2000 ...........................................................................................................................12

Dan B. Dobbs, The Law of Torts
   § 53 (2d ed. 2016) .........................................................................................................8

Restatement (Second) of Conflict of Laws
   § 147 ...............................................................................................................................6

Restatement (Second) of Torts
   § 158.............................................................................................................................10
   § 821F...........................................................................................................................14
   § 822.............................................................................................................................14
   § 834.............................................................................................................................14

Federal Rules of Civil Procedure
   Rule 12 ......................................................................................................................1, 5

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

vi.

DEF. NIANTIC'S MOT. TO DISMISS PLS.' SECOND
CONSOLIDATED AM. COMPL. (NO. 3:16-CV04300-JD)

### NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that on March 29, 2018 at 10:00 a.m., or as soon thereafter as this motion may be heard, defendant Niantic, Inc. ("Niantic") will and hereby does move to dismiss the Second Consolidated Amended Complaint ("SAC") filed by plaintiffs Jeffrey Marder, Scott Dodich and Jayme Gotts-Dodich, The Villas of Positano Condominium Association, Jill M. Barbarise, Jason Sarkis, Melissa Perez, "Sam" Congshan Hao, Bruce Garton, Sally Rogers, Deborah J. Pimentel, and Loren Morgan (collectively, "Plaintiffs"). This motion is based on the accompanying Memorandum of Points and Authorities, Niantic's Request for Judicial Notice, the supporting Declaration of Kei Kawai ("Kawai Decl."), the papers on file in this matter, and such other matters as may be presented to the Court at the hearing on this motion.

### STATEMENT OF RELIEF SOUGHT

Dismissal of the SAC with prejudice under Rule 12(b)(6) for failure to state a claim.

### STATEMENT OF ISSUES TO BE DECIDED

First, whether certain Plaintiffs have standing to seek injunctive relief. Second, whether the SAC states a claim for trespass or nuisance upon which relief can be granted.

### MEMORANDUM OF POINTS AND AUTHORITIES

**I.      INTRODUCTION**

In this lawsuit, Plaintiffs attempt to transform the alleged misconduct of third parties who may or may not be players of the mobile game "Pokémon GO" into real property torts against the game's developer, Niantic. Plaintiffs claim that these supposed Pokémon GO players disturbed or intruded on their properties. But rather than seeking redress from the people who allegedly harmed them, Plaintiffs sued Niantic. Plaintiffs ask this Court to hold Niantic responsible, even though Niantic requires players to promise ***not*** to trespass or create a nuisance as a condition of playing the game.

Pokémon GO is a game played on mobile phones, in which players (called "Trainers") move around in the real world to find virtual creatures called "Pokémon" and interact with virtual locations called "PokéStops" and "Gyms" (collectively "Game Items"). Players use simple on-screen gestures to "catch" Pokémon, "train" them at Gyms, and obtain helpful in-game supplies from PokéStops. Game Items are readily accessible from public spaces, and players do not have to enter private property

1  to fully enjoy the game. Plaintiffs, however, allege that Niantic designated GPS coordinates on or near

2  their properties as locations where players could find Game Items, incentivizing players to visit their

3  properties uninvited. They claim Niantic itself trespassed by "placing" such virtual items at these

4  locations, that Niantic is liable for inducing the alleged trespass or the creation of a nuisance by third

5  parties, and that the Court should order Niantic to remove all Pokéstops and Gyms from within 100

6  meters of every piece of private property in the nation. None of these claims is viable.

7  The bulk of Plaintiffs allege no facts suggesting any threat of ongoing or future harm, and as

8  such those Plaintiffs have no standing to obtain injunctive relief. Plaintiffs' virtual trespass claims fail

9  because trespass requires unauthorized entry of an object, matter, or energy onto real property, and

10  Pokémon GO Game Items are none of those things. Plaintiffs' induced trespass theory also has a fatal

11  flaw—there is no allegation Niantic intended any player to trespass (in fact, Niantic required players

12  to promise they would not trespass before they could play, and the game is enjoyed by millions of

13  users who do not enter private property to play), or that Niantic's conduct was a substantial factor in

14  causing any harm that allegedly resulted from the trespass Niantic purportedly induced. Similarly,

15  Plaintiffs have not stated nuisance claims, among other reasons, because they have not alleged that

16  Niantic is the legal or proximate cause of the supposed player-created nuisances. Niantic does not

17  control millions of players' real-world movements. Again, far from causing any alleged nuisance,

18  Niantic requires players to agree *not* to engage in these behaviors before playing.

19  In short, Plaintiffs have sued Niantic because some possible Pokémon GO players allegedly

20  disregarded Niantic's rules. But Niantic is not liable for player conduct it did not cause and indeed

21  forbade. Plaintiffs' theory of liability would implicate innumerable online services that help people

22  find specific locations—listing real estate open houses in desirable areas, listing public parks good for

23  children, sharing locations where rare birds may be seen, or directing drivers to streets with less traffic.

24  All these applications, and many more like them, attract visitors and can impact property owners. The

25  Court should reject Plaintiffs' attempt to make app developers responsible for third party behavior.

26  The claims in the SAC are misdirected, are legally unsupported, and should be dismissed.

27

28

Cooley LLP
Attorneys At Law
San Francisco

2.

Def. Niantic's Mot. to Dismiss Pls.' Second
Consolidated Am. Compl. (No. 3:16-cv04300-JD)

## II.   STATEMENT OF FACTS

### A.   Pokémon GO and Niantic.

Pokémon GO is an inventive mobile game application that inspires players to explore outside. Released July 6, 2016, Pokémon GO captured the imagination of millions of players, or "Trainers," that summer. SAC ¶¶ 2, 4, 25.[1] As a Trainer moves in the real world, her mobile device locates her avatar on a map interface. ¶ 27. She can then see Pokéstops and Gyms to visit and use the game's "AR" ("augmented reality") setting with her device's camera viewer to see Pokémon integrated in her surroundings. ¶¶ 2, 3. She may "catch" Pokémon by swiping to "throw" Pokéballs or virtually "battle" other Trainers and receive in-game supplies by tapping icons on her screen. *Id*. Players can interact with a limitless number of Game Items from public spaces (*see* ¶¶ 28-32, 34, 36, 134) and need not enter private property to play the game. Game Items exist only on mobile device screens. They do not exist in the real world.

### B.   Niantic's Standards for Player Behavior.

#### 1.   Pokémon GO Terms of Service ("Terms").

Niantic imposes a mandatory code of conduct on players, including not trespassing and obligating players to respect their communities. Before ever playing Pokémon GO, players must accept the Terms, which provide that players are responsible for their own conduct and will not: (1) trespass, access, or attempt to access others' property without permission; (2) harass, abuse, harm, or threaten others; (3) engage in conduct that could result in injury or property damage; or (4) violate any other law. Kawai Decl. ¶ 4; Ex. 1 at 3, 7-8.

#### 2.   Pokémon GO Trainer Guidelines ("Guidelines").

The Terms incorporate by reference and require players to accept the Guidelines. *See* Niantic's RJN at 4; Kawai Decl., Ex. 1 at 1, 3, 5, 7-8. Players agree to abide by key conduct rules:

- "**Respect the community**. We want Pokémon GO to be a fun and safe experience for all players and for everyone out in the real world where the game is played. Following these common sense guidelines will help ensure you and other players have a great experience and that others are not affected by your gameplay.... Treat other players and bystanders with respect and courtesy, and conduct yourself in an appropriate manner while playing[.]"

---

[1] All cites hereafter to "¶ X" reference Plaintiffs' Second Consolidated Amended Complaint.

- "**Be respectful**.... It's in everyone's best interest to keep things courteous and fun for all.... Never defame, abuse, harass, harm, stalk, threaten, or otherwise violate [others'] legal rights[.]"

- "**Adhere to the rules of the human world**.... [D]o not trespass, or.... gain or attempt to gain access to any property... where you do not have the right or permission to be."

Kawai Decl., Ex. 2 at 1-2.

### C.    Summary of Plaintiffs' Claims.

The eleven named Plaintiffs allege players acted improperly "on or near" their properties located in nine states, primarily in the weeks after the game's July 2016 release. ¶¶ 11-21.

- **California**: Melissa Perez alleges she saw people "gathering in the intersection near her house," because her pool was "either a Pokéstop or a Pokémon Gym." She alleges players trampled her lawn and broke planks in her fence, and that it cost $3,100 to repair the fence. ¶¶ 86-87, 90.

- **Florida**: Condominium complex the Villas alleges Niantic designated it as a Pokéstop where rare Pokémon spawned at night, drawing disruptive crowds and forcing it to hire a guard. ¶¶ 52-55.

- **Michigan**: The Dodichs allege an influx of visitors to the public park near their house and onto their private street; these visitors allegedly blocked driveways, "trampl[ed] their landscaping and peer[ed] into their windows," and called the Dodichs names when asked to leave. ¶ 58.

- **New Jersey**: Jeffrey Marder alleges that five players knocked on his door, asking to access his backyard. ¶ 51. Jill M. Barbarise declined a similar request when four boys asked to enter her yard. ¶ 71. At other times in July 2016, Barbarise noticed small groups of people in the parking lot adjacent to her property or in front of her driveway, and two days after one of these incidents, she noticed a bent metal stake in her fence, which cost $150 to replace. ¶¶ 68-73.

- **New Mexico**: Sally Rogers, whose property contains a public sculpture garden, alleges players wandered into the portion of the property designated private, looking for a sculpture. ¶¶ 103-13.

- **New York**: Jason Sarkis alleges Niantic placed a Pokémon Gym at the end of his driveway, and that players congregated in the park and pathway adjacent to his property, preventing his family from enjoying his yard and causing him to clean up. ¶¶ 74-77. "Sam" Congshan Hao alleges that drunken players congregated at a "Pokéstop at the intersection near his house" and that the noise and secondhand cigarette smoke disturbed "his family's sleep and also their health." ¶¶ 92-95.

- **Ohio**: Loren Morgan alleges Game Items at historical attractions near his house attracted littering players to the area, and that he suffered sleep deprivation due to the players' activities. ¶¶ 124-25.
- **Tennessee**: For one month in 2016, Bruce Garton claims he saw "3 to 4" trespassers on his property and "40-50 cars passing" his house every day, making his family feel unsafe. ¶¶ 97-100.
- **Utah**: Deborah Pimentel allegedly noticed cars parked near her home, sometimes blocking her driveway, which she attributed to a Game Item in front of her house. ¶¶ 118-23. The cars sometimes woke her, and due to a prior burglary, the traffic scared Pimentel. *Id.*

Some plaintiffs allege they got into verbal confrontations with, and were cursed at, by players. The SAC alleges some players acted drunk and disruptive, sometimes at night. Several Plaintiffs also allege that Niantic's response to their telephone and email complaints was insufficient.

## III.   LEGAL STANDARDS

A complaint must be dismissed if it does not allege facts sufficient to state a cognizable claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); Fed. R. Civ. P. 12(b)(6). A claim must be "plausible," not merely possible or conceivable. *Twombly*, 550 U.S. at 557, 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In determining whether a complaint states a plausible claim, the Court need not accept conclusory factual allegations or draw unreasonable inferences. *Iqbal*, 556 U.S. at 678-79.

## IV.   CHOICE OF LAW

This case poses a threshold choice-of-law issue. California federal courts apply California's choice-of-law rules. *Consul Ltd. v. Solide Enters., Inc.*, 802 F.2d 1143, 1146-47 (9th Cir. 1986). California uses a three-step governmental interest analysis: courts (1) determine whether there are relevant differences between the laws of each state connected to the claims; (2) determine whether each state has an interest in having its law applied; and (3) apply the law of the state whose interest would be more impaired if its law were not applied. *See, e.g.*, *Abogados v. AT&T, Inc.*, 223 F.3d 932, 934 (9th Cir. 2000).

Under this test, the laws of the nine states where Plaintiffs live govern their claims. The laws are substantively different from each other and from California law, and under the governmental interest test, the state where the alleged torts occurred has a "predominant interest" in applying its law. *See, e.g.*, *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 97-98 (2010). That state's law controls

unless California has a "compelling interest" in applying its law, and Niantic's California residence does not suffice. *See Castro v. Budget Rent-a-car Sys., Inc.*, 154 Cal. App. 4th 1162, 1180-82 (2007). Here, the alleged torts all occurred on or near Plaintiffs' properties in their home states. ¶¶ 5, 8, 50-125. California's only ties are Niantic's headquarters and this lawsuit's venue. Plaintiffs' states thus have the predominant interest in applying their law.[2] *See McCann*, 48 Cal. 4th at 97-98.

## V.    ARGUMENT

### A.    Some Plaintiffs Lack Standing to Assert Claims for Injunctive Relief.

"The Supreme Court has long held that to seek prospective or injunctive relief, plaintiffs (including named plaintiffs purporting to represent a class) must be able to demonstrate more than mere injury from past wrongs." *Dapeer v. Neutrogena Corp.*, 95 F. Supp. 3d 1366, 1373–74 (S.D. Fla. 2015); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). Rather, plaintiffs must demonstrate a threat of future harm that is "sufficiently real and immediate[.]" *Lyons*, 461 U.S. at 103.

Many of the Plaintiffs' allegations are insufficient to state a claim for injunctive relief as they fail to allege a threat of future harm. Notably, over a year has passed since Plaintiffs filed their initial class action complaints, and while both Marder and the Villas allege past injuries, the SAC fails to allege any additional injuries to these two Plaintiffs. Further, Plaintiffs conspicuously deleted from the SAC the Villas' prior allegation that "*Pokemon Go* continues to designate the Villas as a Pokestop" (CAC at ¶ 32), suggesting there is no factual support for a real or immediate threat of future harm. Likewise, Marder's allegations remain confined to five knocks on his door *over a year* ago. Plaintiffs have had ample opportunity to amend their complaint to allege recent harm and have failed to do so. As a result, Plaintiffs' claims for injunctive relief as to Marder and the Villas should be dismissed. *De Gonzalez v. City of Richmond*, No. C-14-00386 DMR, 2014 WL 2194816, at *4 (N.D. Cal. May 23, 2014) (granting motion to dismiss claim for injunctive relief where threat was neither real nor immediate); *Perez v. Nidek Co.*, 711 F.3d 1109, 1114 (9th Cir. 2013) (affirming motion to dismiss on

---

[2] Indeed, "the local law of the state where the injury occurred [generally] determines the rights and liabilities of the parties," particularly "when the injury is done to land ... in the state[.]" Restatement (Second) of Conflict of Laws § 147 & cmt. e. (1971). Thus, the Restatement also recognizes the general rule that local law applies to real property torts. *See also Wong v. Tenneco*, 39 Cal. 3d 126, 136 (1985) ("fundamental" that law of property's location governs questions of control of property).

standing grounds where threat was neither real nor immediate).

The claims of the new-found named Plaintiffs are similarly insufficient to state a claim for injunctive relief. Both Sarkis and Garton plainly fail to allege future harm. Sarkis notes that his complaints were resolved in October 2016 (¶ 84), while Garton states his alleged disturbance began in 2016 and lasted one month (¶ 98). Similarly, Rogers, Barbarise, and Hao only allege specific harm from summer and fall of 2016, without any indication that the harm is continuing to present day. *See* ¶¶ 93, 69-72, 113. Morgan's allegations, all phrased in the past tense, likewise contain no implication of present or future harm. ¶ 125. As such, these Plaintiffs' injunctive relief claims must be dismissed because they have not pled a "real and immediate" threat of ongoing or future harm that an injunction could plausibly redress. *See Lyons*, 461 U.S. at 102.

### B.   Plaintiffs' Virtual Trespass Theory Fails to State a Viable Trespass Claim.

#### 1.   Plaintiffs' claim that virtually placing Game Items on their properties constitutes trespass (the "virtual trespass theory") fails as a matter of law.

Niantic's alleged placement of virtual Game Items at game locations corresponding to real world coordinates on or near Plaintiffs' properties (*see* ¶¶ 182-83) does not constitute a trespass. Trespass requires an interference with Plaintiffs' exclusive possession of real property.[3] The key element is an unauthorized entry onto the property[4] and each of Plaintiffs' states requires a physical, material intrusion of matter or energy to plead trespass.  Simulated Game Items that exist only on a phone screen are incapable of satisfying this requirement.

Several states go even further, rejecting trespass claims based on intrusion by noise, vibrations,

---

[3] *See Moher v. United States*, 875 F. Supp. 2d 739, 755 (W.D. Mich. 2012); *P&A Constr. v. Hackensack Water Co.*, 280 A.2d 497, 498 (N.J. Super. Ct. 1971); *Borneisen v. Capital One Fin. Corp.*, No. 09-2539, 2011 WL 2730972, at *6 (M.D. Fla. July 13, 2011); *Congregation B'nai Jehuda v. Hiyee Realty Corp.*, 35 A.D.3d 311, 312 (N.Y. App. Div. 2006); *Brown v. Whirlpool Corp.*, 996 F. Supp. 2d 623, 640 (N.D. Ohio 2014); *John Price Assocs., Inc. v. Utah State Conference, Bricklayers Locals Nos. 1,2 & 6*, 615 P.2d 1210, 1214 (Utah 1980); *In re Martinez*, 476 B.R. 627, 634-35 (Bankr. D.N.M. 2012); *Girard v. Ball*, 125 Cal. App. 3d 772, 788 (Ct. App. 1981); *Morrison v. Smith*, 757 S.W.2d 678, 681 (Tenn. Ct. App. 1988); *see also* 75 Am. Jur. 2d Trespass § 1.

[4] *See, e.g., Moher*, 875 F. Supp. 2d at 755; *Ross v. Lowitz*, 120 A.3d 178, 188 (N.J. 2015); *Coddington v. Staab*, 716 So. 2d 850, 851 (Fla. Dist. Ct. App. 1998); *Congregation B'nai*; 35 A.D. 3d at 312; *Brown*, 996 F. Supp. 2d at 640; *In re Martinez*, 476 B.R. 627 at 634-35; *Williams v. Santander Bank*, No. CV 15-4188 SJO (RAOx), 2015 WL 4484202, at *3 (C.D. Cal. July 22, 2015); *Morrison*, 757 S.W.2d at 681; *Walker Drug Co. v. La Sal Oil Co.*, 972 P.2d 1238, 1243 (Utah 1998).

dust, or gas. Indeed, in rejecting such trespass claims, New York gave a prescient warning regarding the dangers of adapting an old cause of action to new technology:

> If responsibility is to be imposed for the consequences of invading sound, it should not be twisted to conform to the confining straitjacket of the venerable cause of action in trespass, with the inevitable aberrations which arise from anachronisms. We can be sophisticated enough to recognize that the transmission of physical bodies, sight, sound, odor or shock are all forms of the transfer of energy involving comparable activities of protons, electrons and molecules, without having to make the naive assumption that because there is a similarity in principle there can be no distinction in kind.

*Celebrity Studios, Inc. v. Civetta Excavating Inc.*, 340 N.Y.S.2d 694, 704 (N.Y. Sup. Ct. 1973).[5] Similar claims are impermissible in Michigan, (*Adams v. Cleveland-Cliffs Iron Co.*, 602 N.W.2d 215, 223 (Mich. Ct. App. 1999) (noise, vibrations, and dust are not a "significant physical intrusion")), New Jersey (*In re Paulsboro Derailment Cases*, No. 12-7586, 2013 WL 5530046, at *7 (D.N.J. Oct. 4, 2013) (vinyl chloride "cloud" was not a "tangible object")), and Utah (*Thackery v. Union Portland Cement Co.*, 231 P. 813, 814 (Utah 1924) ("smoke and dust" insufficient to state a trespass claim)). Niantic has not located Florida authority addressing trespass claims based on entry by something other than a physical object. But because Florida mirrors Michigan, New Jersey, Utah, and New York in requiring an "unauthorized entry," *Coddington*, 716 So. 2d at 851, and has not plainly allowed claims for trespass by particles or energy waves, it should be understood to require entry of a *physical, tangible* object. *Cf.* Dan B. Dobbs, The Law of Torts § 53 (2d ed. 2016) (to show "unauthorized entry" for trespass, "a tangible entry upon the land has been traditionally required"; "[a]nything less... such as penetration of the land by smoke, noise, or light," is not trespass).

Virtual game items that appear on a screen do not meet this physical and material entry requirement. Put simply, no Game Item entered Plaintiffs' properties, so no trespass by such items is possible. Plaintiffs allege an invasion merely based on Niantic's "designat[ion]" of their properties as locations containing or near virtual Game Items. ¶¶ 5, 30, 182-83. This "designation" causes Game Items to display only on players' phones, as the figures in the SAC show. Figs. 1, 2. This virtual "invasion" does not "meaningful[ly]"... "occupy the[ir] land." *Adams*, 602 N.W.2d at 223.

---

[5] *See also Ivory v. Int'l Bus. Machines Corp.*, 983 N.Y.S.2d 110, 117 (N.Y. App. Div. 2014) ("vibrations, shading of a plaintiff's property, or a permeating odor or vapors of gasoline" all failed to establish claims to trespass as they were "intangible" (citations omitted)).

Cooley LLP
Attorneys At Law
San Francisco

8.

Def. Niantic's Mot. to Dismiss Pls.' Second
Consolidated Am. Compl. (No. 3:16-cv04300-JD)

1    Plaintiffs' allegations are also insufficient in states (California, New Mexico, Ohio, and

2  Tennessee) that allow trespass claims based on invasions of particles, noise, or vibrations. States

3  recognizing such claims require a physical invasion of matter or energy, and most require that invasion

4  to cause damage. *See Padilla v. Lawrence*, 685 P.2d 964, 971 (N.M. Ct. App. 1984) (rejecting trespass

5  by "noise and odor" because a "physical invasion" is required, and noting that entry by "blowing

6  particulate matter" may be actionable only if the matter settles on and damages the property); *see also*

7  *Abrams v. Nucor Steel Marion, Inc.*, 694 F. App'x 974, 979 (6th Cir. 2017) (claim for "indirect

8  trespass…must show that a substance invaded the land due to defendant's intentional act" and that "the

9  damage or interference [is] substantial") (Ohio law; quotations and citations omitted); *see also Ryan*

10  *v. Tennessee Valley Auth.*, No. 3:14-CV-356-TAV-HBG, 2015 WL 1962173, at *6 (E.D. Tenn. Apr.

11  30, 2015*)* (rejecting trespass claims where there is no "basis for concluding that any [] particles in fact

12  entered the" relevant property). Similarly, in California, where trespass claims premised on particulate

13  matter, noise, or vibrations are permitted, recovery for trespass must be "predicated upon … the

14  deposit of particulate matter upon the plaintiffs' property or on actual physical damage thereto."

15  *Wilson v. Interlake Steel Co.*, 32 Cal. 3d 229, 232 (1982). A virtual Game Item cannot physically enter

16  land and cannot create physical damage.

17    Predictably, none of these jurisdictions extend trespass to virtual intrusions. In fact, Niantic

18  has not located a single case in any jurisdiction—not one, anywhere in the United States—recognizing

19  trespass by virtual objects. This is not surprising since trespass law aims to protect *possession*. A

20  virtual object can only be seen on a device screen, cannot be felt, and does not interfere with possession

21  in any way. It is not only invisible, but non-existent, outside of a device screen. Ultimately, under any

22  view of trespass, Plaintiffs' allegations are insufficient to state a claim. The Court should reject their

23  "endeavor to torture old remedies to fit factual patterns not contemplated when those remedies were

24  fashioned." *See Paulsboro*, 2013 WL 5530046, at *8.

25    **C.    Plaintiffs' Induced Trespass Theory Fails to State a Claim.**

26    Plaintiffs' claim that Niantic caused players to enter their properties by the placement of Game

27  Items fails because Plaintiffs cannot plead intent, as required. Even those Plaintiffs residing in

28  jurisdictions that recognize negligent trespass cannot state an induced trespass claim because they have

not alleged that Niantic's conduct was a substantial factor in causing harm.

## 1. Plaintiffs cannot allege that Niantic intentionally encouraged trespass.

The trespass laws of seven states (all of those at issue other than California and New Jersey), which are home to eight of the Plaintiffs, require "intentional[] caus[ation]." *See* Restatement (Second) of Torts § 158, cmt. i-j (1965).[6] Those Plaintiffs must plead Niantic had knowledge that its acts would "to a substantial certainty result in the entry" of players onto Plaintiffs' property, a standard met, for example, "if the actor has *commanded or requested* a third person to enter land in the possession of another[.]" *Id.* By contrast, where a defendant instructs a third person not to trespass, that defendant is not liable for the trespasses of third parties.  To illustrate, the court rejected an induced trespass claim against the authors and publisher of a guidebook, in part, because the book's title page advised readers that "many of the sites described in *Weird Ohio* are located on private property and should not be visited, or you may face prosecution for trespassing."  *Duer v. Henderson*, No. 2009 CA 15, 2009 WL 4985475, at *1, *6-7 (Ohio Ct. App. Dec. 23, 2009) (applying Restatement section 158); *see also Dietz v. Ill. Bell Tel. Co.*, 507 N.E.2d 24, 25-28 (Ill. Ct. App. 1987) (affirming dismissal of trespass claim in Restatement section 158 jurisdiction where complaint did not allege that defendant "intended or knew with a high degree of certainty that [third persons] would fail to seek permission before entering onto plaintiff class' lands"); *City of Bloomington v. Westinghouse Elec. Corp.*, 891 F.2d 611, 614-15 (7th Cir. 1989) (in Restatement jurisdiction, no liability where defendant "did not know" third party would trespass). Moreover, the Plaintiffs from New York and Michigan (Hao, Sarkis, and Dodich) must meet a heightened standard for pleading intentional conduct. They must—but cannot—

---

[6] Each of Plaintiffs' states either follows Restatement section 158 or expressly adopts the "substantial certainty" standard for intentional third-party trespass. *See, e.g.*, *Nat'l Acad. of Recording Arts & Scis., Inc. v. On Point Events LP*, No. CV 08-0856 DSF (RCx), 2009 WL 10671400, at *5 (C.D. Cal. Aug. 12, 2009) (California); *Daniel v. Morris*, 181 So. 3d 1195, 1199 (Fla. Dist. Ct. App. 2015) (Florida); *Adams*, 602 N.W.2d at 224 (Michigan); *Burke v. Briggs*, 571 A.2d 296, 298 (N.J. Super. Ct. App. Div. 1990) (New Jersey); *Schwartzman, Inc. v. Atchison, Topeka & Santa Fe Ry. Co.*, 857 F. Supp. 838, 844 (D.N.M. 1994) (New Mexico); *Phillips v. Sun Oil Co.*, 121 N.E.2d 249, 250–51 (N.Y. 1954) (New York); *Hayes v. Carrigan*, C-160554, 2017 WL 3049989, at *2-3 (Ohio Ct. App. July 19, 2017) (Ohio); *City of Jackson v. Walker-Hall, Inc.*, No. W2004-01612-COA-R3CV, 2005 WL 1834114, at *5-8 (Tenn. Ct. App. Aug. 3, 2005) (Tennessee); *Carter v. Done*, 276 P.3d 1127, 1132 (Utah Ct. App. 2012) (Utah). However, California and New Jersey also recognize negligent trespass. *Wilson*, 32 Cal. 3d at 233; *Ross*, 120 A.3d at 188.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10.

DEF. NIANTIC'S MOT. TO DISMISS PLS.' SECOND
CONSOLIDATED AM. COMPL. (NO. 3:16-CV-04300-JD)

allege Niantic encouraged, advised, directed, or suggested players' trespasses. *Helsel v. Morcom*, 555 N.W.2d 852, 856 (Mich. Ct. App. 1996);[7]  *State v. Fermenta ASC Corp.*, 616 N.Y.S.2d 702, 705-06 (N.Y. Sup. Ct. 1994).

Plaintiffs have neither alleged that Niantic knew its acts were substantially certain to result in players' entry onto Plaintiffs' property, nor that Niantic "encouraged" players to trespass. The allegation that Niantic placed Game Items on or near coordinates corresponding to private property does not plausibly allege that Niantic knew to a "substantial certainty" that players would trespass; rather, it simply means that Niantic sought to allow players with permission to enter private property to play the game there. If Game Items were not accessible from private property, people could not play on their own (or friends') properties. For instance, the Game Items allegedly located at the Villas benefitted the residents and guests who may play the game. ¶¶ 52-55. And, just as the defendant in *Dietz* contemplated that the cable company licensee would obtain permission to access private property, Niantic makes Game Items visible for the benefit of individuals authorized to access the relevant properties. Moreover, players do not have to enter private property to play. Players can capture a limitless supply of Pokémon in and from public spaces. Plaintiffs essentially concede this point by alleging that Niantic placed Game Items "on *or near*" private property, and that players must travel to the "vicinity" of Pokéstops and Gyms to play the game. ¶¶ 5, 8, 11-21, 31, 50 (emphasis added); *see also* Figs. 1, 2, 4 (images of public streets and sidewalks).

Significantly, Niantic's Terms and Guidelines require players to agree not to trespass, just as the title page instructed in *Duer* and the contracts commanded in *Dietz* and *Westinghouse*. *See* Kawai Decl., Ex. 1 at 1, 3, 5, 7-9, Ex. 2 at 1-2. Thus, Plaintiffs cannot allege Niantic knew with "substantial certainty" that players would trespass because it "commanded" or "requested" they do so.  Rather, Niantic affirmatively forbids players to trespass. Further, the Terms and Guidelines foreclose the possibility that Plaintiffs could amend the SAC to make any allegation that Niantic encouraged, advised, suggested, or directed players to trespass, as Michigan and New York require to state a third-party trespass claim.

---

[7] *See also Cloverleaf Car Co. v. Phillips Petrol. Co.*, 540 N.W.2d 297, 302 (Mich. Ct. App. 1995).

Cooley LLP
Attorneys At Law
San Francisco

11.

Def. Niantic's Mot. to Dismiss Pls.' Second
Consolidated Am. Compl. (No. 3:16-cv04300-JD)

1    Niantic has not located a single decision in which a court concluded that a defendant is or could

2    be liable for the trespass of a third person where the defendant instructed or contracted with the third

3    person not to trespass. *Cf. Duer*, 2009 WL 4985475 at *6-7 (affirming summary judgment on trespass

4    claim); *Westinghouse*, 891 F.2d at 614-15 (affirming dismissal of a trespass claim, where Monsanto's

5    customer dumped chemicals in violation of contract requiring best efforts to contain chemicals); *Dietz*,

6    507 N.E.2d at 25-28 (affirming dismissal of class action complaint—despite allegations that defendant

7    knew about the trespasses and did not intervene—because the complaint did not allege facts that

8    defendant "knew with a high degree of certainty" that third persons would not ask to enter plaintiffs'

9    land, "as they were required to do under the terms of the license agreements").

10                **2.    Even in states that recognize negligent trespass, Plaintiffs' claims fail.**

11    The claims of Plaintiffs from New Jersey and California (Marder, Barbarise, and Perez)—

12    states that recognize negligent trespass—cannot survive because they do not allege that Niantic was a

13    "substantial factor" in causing harm. *See, e.g.*, Cal. Civil Jury Instructions (CACI), § 2000,

14    "Trespass—Essential Factual Elements" (2017) (defendant's conduct must be "a substantial factor" in

15    causing plaintiff's harm); *Shaw v. Cty. of Santa Cruz*, 170 Cal. App. 4th 229, 279 (2008) (citing the

16    "substantial factor" standard and finding there was "no evidence…of a direct and probable link

17    between the County's dumping practice and the presence of the unwanted grasses on the property");

18    *Ross*, 120 A.3d at 188 (explaining that "a defendant is [] liable if he 'recklessly or negligently...enters'

19    onto another's land, *and the entry causes harm*") (emphasis added) (citation omitted). The allegation

20    that "[a]t least five individuals knocked on Mr. Marder's door" is not sufficient to survive because it

21    does not plead any harm, or that Niantic caused or any cognizable harm at all. ¶ 51. Similarly,

22    Barbarise alleges that her fence was damaged two days after she "saw a group of four boys in front of

23    her driveway, huddled around their smartphones[.]" ¶¶ 71-72. She does not allege any entry and her

24    allegation of harm is unconnected to any alleged player conduct. *Id*. Finally, Perez's claim fails

25    because Niantic's Terms and Guidelines, which require players to agree not to trespass so that others

26    are not affected by players' gameplay, break any "direct or probable link" between Niantic's conduct

27    and the harm alleged. *See Shaw,* 170 Cal. App. 4th at 279.

28

**D.     Plaintiffs Have Failed to State a Nuisance Claim.**

Plaintiffs' nuisance claims suffer from a fundamental flaw: they improperly attempt to hold Niantic liable for the conduct of Pokémon GO players. Those players, however, allegedly invaded private property or caused nuisances after agreeing to Niantic's *explicit instructions* not to do so. Under these circumstances, the Pokémon GO players, and not Niantic, caused any alleged nuisance.

### 1.     Perez fails to state a nuisance claim under California law.

To state a nuisance claim, Perez must allege that Niantic created or assisted in the creation of a nuisance. *Redevelopment Agency v. BNSF Ry. Co.*, 643 F.3d 668, 673-74 (9th Cir. 2011). Perez's allegation that Pokémon GO "incentivizes" players to invade private property (¶¶ 39, 48) does not satisfy this standard. Only defendants who "active[ly], affirmative[ly] or knowing[ly]" create a "specific nuisance condition" assist in the creation of a nuisance. *BNSF Ry. Co.*, 643 F.3d at 674. Consequently, a company is not responsible for a nuisance when third parties beyond its control misuse its product—even if the product is susceptible to misuse. *Team Enters. LLC v. W. Inv. Real Estate Tr.*, 647 F.3d 901, 912 (9th Cir. 2011) (manufacturer of filtration system did not assist in the creation of a nuisance, even though the system left customers "no alternative but to pour [hazardous chemicals] down the drain"). "Affirmative acts or instructions," such as (1) specifically designing a product to create a nuisance or (2) explicitly instructing customers to act in a manner that creates a nuisance, are necessary for liability. *Id.*; *see also Heim v. Heim*, No. 5:10-CV-03816-EJD, 2014 WL 1340063, at *10-11 (N.D. Cal. Apr. 2, 2014) (manufacturer not liable where customers disregarded users' manual).

Niantic did not engage in "affirmative acts or instructions" here. Perez does not—and cannot—allege that Niantic designed Pokémon GO in order to create a nuisance. Players do not have to trespass to play Pokémon GO.  *See* Section II.A., *supra*. Nor can Perez allege that Niantic instructed players to make nuisances of themselves. Niantic did the opposite—it instructed players to respect private property in the Terms and Guidelines.  *See id.*

Instead, Perez alleges only that Pokémon GO gave players a reason to trespass. ¶¶ 39, 48. That is not enough. *See Team Enters.*, 647 F.3d at 912. Many beneficial apps, such as those that direct homebuyers to open houses, list "top parks for children," or identify options for traffic avoidance, could similarly be accused of playing a role in irresponsible third-party behavior. However, like

Cooley LLP
Attorneys At Law
San Francisco

13.

Def. Niantic's Mot. to Dismiss Pls.' Second
Consolidated Am. Compl. (No. 3:16-CV04300-JD)

Pokémon GO, none of those apps "assist[] in the creation of a nuisance" because they are not designed to create a nuisance and do not instruct players to behave irresponsibly. *See id.* In the absence of such allegations, Perez cannot state a nuisance claim against Niantic.

### 2. Plaintiffs fail to state a nuisance claim in the states adopting the Restatement (Second) of Torts.

Michigan, New Jersey, New Mexico, New York, Ohio, and Utah have adopted the Restatement,[8] which provides defendants are liable for private nuisance only if their conduct is a "legal cause" of an invasion of the plaintiff's private use and enjoyment of her land. Restatement (Second) of Torts § 822 (1965). And, only actors participating to a "substantial extent" in creating a nuisance legally cause the nuisance. *Id.* at § 834. Thus, a company is not liable for a nuisance created by third parties who misuse its products if (for instance) the company (1) did not "endorse[] or condone[]" the disputed conduct, *Camden Cty. Bd. v. Beretta U.S.A. Corp.*, 123 F. Supp. 2d 245, 267 (D.N.J. 2000), or (2) instructed the tortfeasor not to commit the nuisance. *Westinghouse*, 891 F.2d at 613-14.

None of the Plaintiffs from Restatement jurisdictions state a nuisance claim under this standard: Niantic did not encourage or condone players' alleged creations of nuisances but rather specifically instructed players *not to* violate laws protecting private property.[9] In *Westinghouse*, for instance, the Seventh Circuit applied section 834's "substantial extent" standard to affirm dismissal of a nuisance claim against a chemical company based on its customer dumping chemicals in disregard of the company's instructions. 891 F.2d at 614. Because the company provided proper disposal instructions and contractually required customers to use best efforts to dispose of chemicals properly, it did not participate to a "substantial extent" in the nuisance. *Id.* at 614 & n.5.

---

[8] *See, e.g.*, *Ross*, 120 A.3d at 185; *Adkins v. Thomas Solvent Co.*, 487 N.W.2d 715, 720 (Mich. 1992); *Whaley v. Park City Mun. Corp.*, 2008 UT App 234, ¶ 21, 190 P.3d 1, 9; *Copart Indus., Inc. v. Consol. Edison Co. of N.Y.*, 362 N.E.2d 968, 971 (N.Y. 1977); *Albuquerque Bernalillo Cty. Water Util. Auth. v. CalMat Co.*, No. 06-CV-00754-BB, 2008 WL 11322216, at *4 (D.N.M. Mar. 13, 2008) (applying New Mexico law); *Crawford v. Nat'l Lead Co.*, 784 F. Supp. 439, 444 (S.D. Ohio 1989) (applying Ohio law).

[9] Under the Restatement, Marder's nuisance claim must also be dismissed for a second independent reason: he has not alleged that he suffered "significant harm." Restatement's (Second) of Torts § 821F. Five individuals knocking on his door (¶ 51) does not qualify as significant harm. *See, e.g.*, *Sofka v. Thal*, 662 S.W.2d 502, 508-09 (Mo. 1983) (dismissing nuisance claim based on frequent calls for failure to allege significant harm).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14.

DEF. NIANTIC'S MOT. TO DISMISS PLS.' SECOND
CONSOLIDATED AM. COMPL. (NO. 3:16-CV-04300-JD)

1    Plaintiffs' SAC is analogous to *Westinghouse* because it fails to plead that Niantic's actions

2    were the "legal cause" of the players' alleged invasions or that Niantic participated to a substantial

3    extent in the players' alleged acts. And, like the instructions in *Westinghouse*, 891 F.2d at 614,

4    Niantic's Terms require players to "not enter onto private property without permission," (Kawai Decl.

5    Ex. 1 at 3), and the Guidelines admonish players to "ensure … that others are not affected by your

6    gameplay," to "[t]reat other players and bystanders with respect and courtesy," and to "conduct

7    yourself in an appropriate manner while playing[.]" *Id.* at Ex. 2 at 1. In light of these instructions,

8    Niantic plainly did not "endorse or condone" the players' allegedly annoying conduct. *See Camden*,

9    123 F. Supp. 2d at 267.

10                  **3.      The remaining Plaintiffs' nuisance claims also fail.**

11    The nuisance claims of the remaining plaintiffs, Garton and the Villas, must be dismissed for

12    similar reasons. Under the laws of their respective home states, Tennessee and Florida, neither Plaintiff

13    has alleged that Niantic proximately caused a nuisance. *See* Section V.D.2, *supra*; *see also Southern*

14    *Ry. Co. v. State*, 169 S.W. 1173, 1174 (Tenn. 1914) ("[N]o one is civilly answerable for a nuisance...if

15    this result is occasioned by the act of others, over whom he has no control…. In other words, the

16    proximate cause of every nuisance must be ascertained in fixing liability therefor, and when one's

17    property is, by the act of independent third parties, made the instrumentality of a nuisance, such act of

18    such parties is the proximate cause, and the innocent owner of the property is not responsible."); 

19    *Penelas v. Arms Tech., Inc.*, No. 99-1941, 1999 WL 1204353, at *4 (Fla. Cir. Ct. Dec. 13, 1999)

20    (dismissing public nuisance claim against gun manufacturers because nuisance liability requires

21    "control of the activity which creates the nuisance").

22    **VI.    CONCLUSION**

23    Plaintiffs have not asserted claims sufficient to proceed.  The Court should grant Niantic's

24    motion to dismiss with prejudice.  Plaintiffs have made multiple attempts to file a pleading sufficient

25    to state a claim, and further amendment will not permit the inclusion of additional relevant facts. The

26    Court should deny leave to amend as futile. *See Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th

27    Cir. 1990) (discretion to deny leave to amend is "particularly broad" where plaintiff has previously

28    amended).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15.

DEF. NIANTIC'S MOT. TO DISMISS PLS.' SECOND
CONSOLIDATED AM. COMPL. (NO. 3:16-CV04300-JD)

1

2   Dated: November 17, 2017                COOLEY LLP

3

4                                            /s/ *Michael G. Rhodes*
                                            ─────────────────────────
5                                            Michael G. Rhodes

6                                            Attorneys for Defendant
                                            NIANTIC, INC.

7

8

9

10

11  152479254

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

16.