COOLEY LLP
MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
JEFFREY M. GUTKIN (216083) (jgutkin@cooley.com)
BENJAMIN H. KLEINE (257225) (bkleine@cooley.com)
DEVON HANLEY COOK (262626) (dhanleycook@cooley.com)
101 California Street, 5th Floor
San Francisco, CA  94111-5800
Telephone:     (415) 693-2000
Facsimile:      (415) 693-2222

Attorneys for Defendant
NIANTIC, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

|  |  |
|---|---|
| In re *Pokémon Go* Nuisance Litigation | Case No.  3:16-cv-04300 JD |
| | **ANSWER TO SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT** |
| | **JURY TRIAL DEMANDED** |

Defendant Niantic, Inc. ("Niantic"), by and through its undersigned counsel, hereby responds to Plaintiffs' Second Amended Class Action Complaint ("SAC") as follows:

Niantic includes for convenience the headings in the SAC without admitting any factual or legal assertions therein.  To the extent a response is required to allegations in the headings, Niantic denies the allegations.

## PRELIMINARY STATEMENT

1.      This is a class action against Niantic, arising from the popular *Pokémon Go* mobile game, developed by Niantic and based on a media franchise co-owned by Nintendo Co. Ltd. ("Nintendo") and marketed and licensed by The Pokémon Company ("Pokémon Co.")[1], with millions of players worldwide.

**Answer:**        In response to paragraph 1, Niantic admits that Plaintiffs purport to bring this action as a class action, but denies that this action is amenable to class treatment.  Niantic admits that it developed *Pokémon GO* and that millions of players in countries around the world have downloaded *Pokémon GO*.  Niantic admits *Pokémon GO* is based on the Pokémon media franchise.  Niantic lacks knowledge and information with respect to the remaining allegations in paragraph 1, and on that basis denies them.

2.      *Pokémon Go* is the latest iteration of the immensely popular Pokémon media franchise, which consists in large part of a series of video games in which players take on the roles of "Trainers" with the goal of capturing and collecting fantasy creatures called Pokémon. Released on July 6, 2016 in the United States, *Pokémon Go* is an "augmented reality" game in which players use their smart phones to "catch" Pokémon in the players' real-world surroundings by utilizing the GPS, camera, and gyroscope features on users' mobile devices. When a player comes in close proximity to GPS coordinates determined by a Niantic algorithm, the game uses the phone's camera mode and gyroscope to display the image of a Pokémon, superimposed over the real-world image displayed on the player's phone screen, as though the Pokémon existed in the real world. (See Figure

---

[1] Pokémon Co. has separate divisions and/or subsidiaries that handle operations in different areas of the world. Its subsidiary The Pokémon Company International is responsible for North America and most territories outside Asia.

-2-

1.) By swiping their phone screens, players may then attempt to "catch" the Pokémon to add it to their virtual collections.



*Figure 1*

**Answer:**        In response to paragraph 2, Niantic admits that *Pokémon GO* is an iteration of the Pokémon media franchise and that, in at least some video games in the series, players take on the roles of "trainers" with the goal of capturing and collecting fantasy creatures called Pokémon. Niantic admits that *Pokémon GO* was released on July 6, 2016 in the United States and that *Pokémon GO* is an augmented reality game that can use various mobile phone technologies, including the Global Positioning System ("GPS"), camera, and gyroscope features.  Niantic admits that, while playing, as players move in the real world, *Pokémon GO* uses their mobile devices' GPS to attempt to roughly locate them and display their avatars on a map interface displayed on the players' mobile devices.  Niantic admits that when players' mobile devices report that they are in the vicinity of certain GPS coordinates, virtual Pokémon can appear near the players on the map interface.  Niantic admits that players that select a Pokémon to catch can choose to use the "AR" (for "augmented reality") setting and the mobile device's camera viewer to show the virtual creature on-screen projected on top of the player's real-world surroundings, however, whether or not the AR setting is used, players catch Pokémon that appear on the map interface by swiping their screen to "throw" Poké Balls at it.  To the extent that Figure 1 constitutes an allegation, Niantic admits that the

1  image appears to depict *Pokémon GO*, but Niantic lacks knowledge and information with respect to

2  those images' creation and authenticity.  Niantic denies any remaining allegations in paragraph 2.

3       3.       When the game detects, via GPS, that players are in the vicinity of certain real-world

4  locations, the GPS coordinates of which were selected and programmed into the mobile application

5  by Niantic and known to *Pokémon Go* players as "Pokéstops" and "Pokémon gyms," the players

6  gain access to potentially vital in-game items, which they can use to catch Pokémon, among other

7  purposes, or gain the opportunity to engage in virtual "battles" with other *Pokémon Go* players.

8       **Answer:**       In response to paragraph 3, Niantic admits that when players' mobile devices

9  report that they are in the vicinity of certain GPS coordinates, players can use *Pokémon GO* to

10 interact with virtual locations called "PokéStops" and "Gyms."  Niantic admits that players can

11 obtain helpful in-game items from PokéStops, including some that can be used to catch Pokémon,

12 among other purposes.  Niantic admits that players can train their Pokémon at Gyms and virtually

13 "battle" other players' Pokémon. Niantic denies any remaining allegations in paragraph 3.

14      4.       *Pokémon Go* was an immediate success. On Apple's App Store, the *Pokémon Go*

15 iTunes app was downloaded more times in its first week than any other iTunes app in history. In the

16 first three weeks of its release, *Pokémon Go* was downloaded more than 30 million times and earned

17 more than $35 million in revenue. *Pokémon Go* user engagement quickly surpassed that of other

18 popular applications such as Facebook and Twitter.

19      **Answer:**       In response to paragraph 4, Niantic admits that Pokémon GO has been

20 successful, and that it was downloaded more than 30 million times and earned more than $35 million

21 in gross revenue during the first three weeks of its release.  Niantic lacks knowledge or information

22 sufficient to admit or deny the allegations comparing *Pokémon GO* to other applications, and on that

23 basis denies them.  To the extent there are any other allegations to which a response is required,

24 Niantic denies the allegations.

25      5.       However, it quickly became clear that in releasing *Pokémon Go*, Niantic had

26 flagrantly disregarded the foreseeable consequences of its game, an innovative, augmented reality

27 experience that blurs the line between the "virtual" and "real" worlds in unprecedented ways. A

28 number of the GPS coordinates that Niantic had designated as Pokéstops and Pokémon gyms were,

in fact, on or directly adjacent to private property, and Niantic placed these Pokéstops and Pokémon gyms *without the consent of the properties' owners*. Shortly after the game's release, an individual whose Massachusetts home Niantic designated as a Pokémon gym reported more than 15 uninvited visitors in the space of only a few hours, and many more visitors over the following days. An Alabama cemetery complained that the presence of *Pokémon Go* players was detracting from the cemetery's decorum. Indeed, *Niantic even placed three Pokéstops within the United States Holocaust Memorial Museum* in Washington, D.C., prompting a complaint from the museum.

**Answer:**     The first sentence of paragraph 5 consists of Plaintiffs' legal conclusions, argument, and characterization of their allegations, which do not require a response; to the extent the allegations in the first sentence require a response, Niantic denies all the allegations therein. Niantic denies the allegations in the second sentence of paragraph 5 as virtual objects cannot be "placed" "on" or "adjacent" to a physical location. In response to the third sentence and as further discussed in its response to paragraph 127, Niantic admits that in July 2016 a Massachusetts resident requested removal of, and Niantic promptly removed, a point of interest from *Pokémon GO*. Niantic lacks knowledge or information sufficient to admit or deny the remaining allegations in the second sentence of paragraph 5, and on that basis denies the allegations. In response to the fourth sentence, and as further discussed in its response to paragraph 129, Niantic admits that in July 2016, a representative of Mobile Memorial Gardens requested removal of, and Niantic promptly removed, a point of interest from *Pokémon GO*. In response to the fifth sentence, and as further discussed in its response to paragraph 129, Niantic admits that in July 2016 it retired at least three points of interest from *Pokémon GO* that were associated with GPS coordinates near the Holocaust Memorial Museum. To the extent there are any other allegations in paragraph 5 to which a response is required, Niantic denies the allegations.

6.     The nature of the augmented reality experience at the heart of *Pokémon Go* is such that the appeal of the game has little to do with any gameplay elements in the app itself. In fact, the gameplay itself is simple and repetitive by design, because this makes the game accessible enough to go viral. Rather, the primary appeal of *Pokémon Go* is the need for real-world travel and the social engagement inherent in large groups of players congregating in close physical proximity.

1     **Answer:**     In response to paragraph 6, Niantic admits that real-world travel and social engagement can be elements of *Pokémon GO*.  Niantic denies any remaining allegations in paragraph 6.

7.     Niantic understands this; indeed, it is the key to *Pokémon Go*'s runaway success. However, while Niantic has been quick to recognize opportunities to monetize this interplay, netting it significant profits from players' participation in *Pokémon Go*'s virtual, in-game economy, it has so far refused to bear the real-world costs that the game has created for the affected property owners.

     **Answer:**     In response to paragraph 7, Niantic notes that the term "this" in the first sentence is vague, ambiguous, and unintelligible, and Niantic denies the allegations in the first sentence on that basis.  Niantic denies the allegations in the second sentence of paragraph 7.

8.     Niantic's unauthorized placement of Pokéstops and Pokémon gyms on or near the property of Plaintiffs and other members of the proposed class constitutes an intentional entry of their properties. The continuing invasion of the class members' use and enjoyment of their properties, committed by Niantic on an ongoing basis for profit, has caused significant harm to the members of the proposed class. On the basis of the foregoing acts and practices, Niantic is liable for trespass and nuisance.

     **Answer:**     Paragraph 8 consists of Plaintiffs' legal conclusions, argument, and characterization of their allegations, which do not require a response; to the extent a response is required, Niantic denies the allegations in paragraph 8.

## JURISDICTION AND VENUE

9.     The Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because there is diversity between a plaintiff and a defendant and the aggregate amount in controversy exceeds $5,000,000.00. See infra ¶¶153–155.

     **Answer:**     In response to paragraph 9, Niantic does not contest diversity jurisdiction pursuant to 28 U.S.C. § 1332(d).

10.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendant Niantic is headquartered in this district and a substantial part of the events giving rise to the claim occurred within this district.

1   **Answer:**       In response to paragraph 10, Niantic does not contest venue in this Court and

2   admits that it is headquartered in this district, that it resides in this district, and that it regularly

3   conducts business in this federal judicial district.  The remaining allegations in paragraph 10 consist

4   of Plaintiffs' argument and characterization of their allegations and do not require a response; to the

5   extent a response is required, Niantic denies all the allegations therein.

6   **PARTIES**

7   11.    Plaintiff Jeffrey Marder is a resident of West Orange, New Jersey. As described

8   herein, Defendant Niantic's placement of Pokémon, Pokéstops and/or Pokémon Gyms on or near

9   Mr. Marder's property interfered with his use and enjoyment of his property and caused significant

10   harm to Mr. Marder.

11   **Answer:**       In response to paragraph 11, Niantic lacks knowledge or information

12   sufficient to admit or deny the allegation that Jeffrey Marder is a resident of West Orange, New

13   Jersey, and on that basis denies it.  The remaining allegations in paragraph 11 consist of Plaintiffs'

14   legal conclusions, argument, and characterization of their allegations and do not require a response;

15   to the extent a response is required Niantic denies all the allegations therein.

16   12.    Plaintiffs Scott Dodich and Jayme Gotts-Dodich are residents of St. Clair Shores,

17   Michigan. As described herein, Defendant Niantic's placement of Pokémon, Pokéstops and/or

18   Pokémon Gyms on and near the Dodichs' property interfered with their use and enjoyment of their

19   property and caused significant harm to the Dodichs.

20   **Answer:**       In response to paragraph 12, Niantic lacks knowledge or information

21   sufficient to admit or deny the allegations that Scott Dodich and Jayme Gotts-Dodich are residents of

22   St. Clair Shores, Michigan, and on that basis denies them.  The remaining allegations in paragraph

23   12 consist of Plaintiffs' legal conclusions, argument, and characterization of their allegations and

24   does not require a response; to the extent a response is required Niantic denies all the allegations

25   therein.

26   13.    Plaintiff The Villas of Positano Condominium Association, Inc. is a non-profit

27   corporation incorporated in the State of Florida. The Condominium Association's membership is

28   comprised of the owners of the Villas of Positano (the "Villas") condominiums, located in

1  Hollywood, Florida. The Condominium Association collects the periodic association fees that each
2  owner pays for the Villas' facilities, insurance, and community maintenance. The Condominium
3  Association governs the policies of the Villas of Positano, and is responsible for, inter alia, the
4  Villas' maintenance. As described herein, Defendant Niantic's placement of Pokémon, Pokéstops
5  and/or Pokémon Gyms at or near the Villas of Positano interfered with the Condominium
6  Association's members' use and enjoyment of their properties and caused significant harm to the
7  Condominium Association's members. As such, the Condominium Association has standing to bring
8  this action on its members' behalf, because: (a) the Condominium Association's members would
9  otherwise have standing to sue in their own right; (b) the interests the Condominium Association
10  seeks to protect are germane to its organizational purpose; and (c) neither the claims asserted nor the
11  relief requested herein requires the participation of individual members in this litigation.

12      **Answer:**    In response to paragraph 13, Niantic lacks knowledge or information
13  sufficient to admit or deny the allegations in the first four sentences and on that basis denies them.
14  The remaining allegations in paragraph 13 consist of Plaintiffs' legal conclusions, argument, and
15  characterization of their allegations and do not require a response; to the extent a response is
16  required Niantic denies all the allegations therein.

17      14.    Plaintiff Jill M. Barbarise is a resident of Oradell, New Jersey. As described herein,
18  Defendant Niantic's placement of Pokémon, Pokéstops, and/or Pokémon Gyms on or near Ms.
19  Barbarise's property interfered with her use and enjoyment of her property and caused significant
20  harm to Ms. Barbarise.

21      **Answer:**    In response to paragraph 14, Niantic lacks knowledge or information
22  sufficient to admit or deny the allegation that Jill M. Barbarise is a resident of Oradell, New Jersey,
23  and on that basis denies it.  The remaining allegations in paragraph 14 consist of Plaintiffs' legal
24  conclusions, argument, and characterization of their allegations and do not require a response; to the
25  extent a response is required Niantic denies all the allegations therein.

26      15.    Plaintiff Jason Sarkis is a resident of Webster, New York. As described herein,
27  Defendant Niantic's placement of Pokémon, Pokéstops and/or Pokémon Gyms on or near Mr.
28  Sarkis's property interfered with his use and enjoyment of his property and caused significant harm

1    to Mr. Sarkis.

2          **Answer:**       In response to paragraph 15, Niantic lacks knowledge or information

3    sufficient to admit or deny the allegation that Jason Sarkis is a resident of Webster, New York, and

4    on that basis denies it.   The remaining allegations in paragraph 15 consist of Plaintiffs' legal

5    conclusions, argument, and characterization of their allegations and do not require a response; to the

6    extent a response is required Niantic denies all the allegations therein.

7          16.    Plaintiff Melissa Perez is a resident of Tulare, California. As described herein,

8    Defendant Niantic's placement of Pokémon, Pokéstops and/or Pokémon Gyms on or near Ms.

9    Perez's property interfered with her use and enjoyment of her property and caused significant harm

10   to Ms. Perez.

11         **Answer:**       In response to paragraph 16, Niantic lacks knowledge or information

12   sufficient to admit or deny the allegation that Melissa Perez is a resident of Tulare, California, and

13   on that basis denies it.   The remaining allegations in paragraph 16 consist of Plaintiffs' legal

14   conclusions, argument, and characterization of their allegations and do not require a response; to the

15   extent a response is required Niantic denies all the allegations therein.

16         17.    Plaintiff "Sam" Congshan Hao is a resident of Elmhurst, New York. As described

17   herein, Defendant Niantic's placement of Pokémon, Pokéstops and/or Pokémon Gyms on or near

18   Mr. Hao's property interfered with his use and enjoyment of his property and caused significant

19   harm to Mr. Hao.

20         **Answer:**       In response to paragraph 17, Niantic lacks knowledge or information

21   sufficient to admit or deny the allegation that "Sam" Congshan Hao is a resident of Elmhurst, New

22   York, and on that basis denies it.   The remaining allegations in paragraph 17 consist of Plaintiffs'

23   legal conclusions, argument, and characterization of their allegations and do not require a response;

24   to the extent a response is required Niantic denies all the allegations therein.

25         18.    Plaintiff Bruce Garton is a resident of Nashville, Tennessee. As described herein,

26   Defendant Niantic's placement of Pokémon, Pokéstops and/or Pokémon Gyms on or near Mr.

27   Garton's property interfered with his use and enjoyment of his property and caused significant harm

28   to Mr. Garton.

1       **Answer:**     In response to paragraph 18, Niantic lacks knowledge or information

2    sufficient to admit or deny the allegation that Bruce Garton is a resident of Nashville, Tennessee, and

3    on that basis denies it.  The remaining allegations in of paragraph 18 consist of Plaintiffs' legal

4    conclusions, argument, and characterization of their allegations and do not require a response; to the

5    extent a response is required Niantic denies all the allegations therein.

6          19.    Plaintiff Sally Rogers is a resident of Tesuque, New Mexico. As described herein,

7    Defendant Niantic's placement of Pokémon, Pokéstops and/or Pokémon Gyms on or near Ms.

8    Rogers's property interfered with her use and enjoyment of her property and caused significant harm

9    to Ms. Rogers.

10       **Answer:**     In response to paragraph 19, Niantic lacks knowledge or information

11    sufficient to admit or deny the allegation that Sally Rogers is a resident of Tesuque, New Mexico,

12    and on that basis denies it.  The remaining allegations in paragraph 19 consist of Plaintiffs' legal

13    conclusions, argument, and characterization of their allegations and do not require a response; to the

14    extent a response is required Niantic denies all the allegations therein.

15         20.    Plaintiff Deborah J. Pimentel is a resident of Pleasant Grove, Utah. As described

16    herein, Defendant Niantic's placement of Pokémon, Pokéstops and/or Pokémon Gyms on or near

17    Ms. Pimentel's property interfered with her use and enjoyment of her property and caused

18    significant harm to Ms. Pimentel.

19       **Answer:**     In response to paragraph 20, Niantic lacks knowledge or information

20    sufficient to admit or deny the allegation that Deborah J. Pimentel is a resident of Pleasant Grove,

21    Utah, and on that basis denies it.  The remaining allegations in paragraph 20 consist of Plaintiffs'

22    legal conclusions, argument, and characterization of their allegations and do not require a response;

23    to the extent a response is required Niantic denies all the allegations therein.

24         21.    Plaintiff Loren Morgan is a resident of Gahanna, Ohio. As described herein,

25    Defendant Niantic's placement of Pokémon, Pokéstops and/or Pokémon Gyms on or near Mr.

26    Morgan's property interfered with his use and enjoyment of his property and caused significant harm

27    to Mr. Morgan.

28       **Answer:**     In response to paragraph 21, Niantic lacks knowledge or information

1   sufficient to admit or deny the allegation that Loren Morgan is a resident of Gahanna, Ohio, and on

2   that basis denies it.   The remaining allegations in paragraph 21 consist of Plaintiffs' legal

3   conclusions, argument, and characterization of their allegations and do not require a response; to the

4   extent a response is required Niantic denies all the allegations therein.

5        22.     Defendant Niantic, Inc. is a software development company headquartered in San

6   Francisco, California 94105. The company was formed in 2002 as Niantic Labs, an internal startup

7   at Google Inc., and spun off as an independent entity in October 2015. Niantic is the developer and

8   publisher of *Pokémon Go*. Niantic receives a percentage of all revenues generated by the *Pokémon*

9   *Go* mobile application.

10       **Answer:**     In response to paragraph 22, Niantic admits that it is a software development

11   company headquartered in San Francisco, California 94111.   Niantic admits that in 2010 some

12   current Niantic personnel worked on a product team within Google Inc.  Niantic admits that it was

13   formed in October 2015, when it spun off from Google. Niantic admits that it is the developer and

14   publisher of *Pokémon GO*, and that it receives a percentage of the revenues directly generated by

15   *Pokémon GO*.  To the extent there are any other allegations to which a response is required, Niantic

16   denies the allegations.

### SUBSTANTIVE ALLEGATIONS

### Background

19       23.     Created in 1995 by the Japanese video game designer Satoshi Tajiri, the Pokémon

20   media franchise consists primarily of video games centered on fictional creatures called "Pokémon"

21   (short for "pocket monsters"). People playing the game are "Pokémon trainers," and they travel

22   around the world with the goal of capturing as many Pokémon as possible (indeed, Pokémon's

23   English language slogan is "Gotta Catch 'Em All"), training and strengthening them, and then

24   engaging in battles against teams owned by other trainers.

25       **Answer:**     Niantic lacks knowledge or information sufficient to admit or deny the

26   allegations in paragraph 23, and on that basis denies them.

27       24.     The Pokémon media franchise now spans video games, trading card games, animated

28   television shows and movies, comic books, and toys. It is the highest-grossing media franchise of all

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11.

**ANSWER TO SECOND CONSOLIDATED AMENDED CLASS
ACTION COMPLAINT - (CASE NO. 3:16-CV-04300-JD)**

1  time, and the second best-selling video game franchise of all time. The Pokémon video games have

2  sold more than 290 million copies worldwide.

3  **Answer:**  Niantic lacks knowledge or information sufficient to admit or deny the

4  allegations in paragraph 24, and on that basis denies them.

### ***Pokémon Go* and Augmented Reality**

6  25.    On July 6, 2016, Niantic released *Pokémon Go*, the latest installment of the Pokémon

7  video game series, as a mobile phone application in the United States. As with earlier Pokémon

8  games, the object of *Pokémon Go* is to collect as many Pokémon as possible. Unlike previous

9  Pokémon games, however, *Pokémon Go* took advantage of various mobile phone technologies—

10 including GPS, camera, and gyroscope features—to create an "augmented reality" gaming

11 experience, in which players discover and capture Pokémon by physically exploring their

12 surroundings.

13 **Answer:**    In response to paragraph 25, Niantic admits that on July 6, 2016, it released

14 *Pokémon GO*, a mobile phone application in the United States based on the Pokémon franchise.

15 Niantic denies that *Pokémon GO* is an installment in the Pokémon video game series. Niantic admits

16 that one feature of *Pokémon GO* is that players may attempt to collect many Pokémon.  Niantic

17 admits that *Pokémon GO* is an augmented reality game that can use various mobile phone

18 technologies, including the GPS, camera, and gyroscope features.  Niantic admits that, while

19 playing, as players move in the real world, *Pokémon GO* uses their mobile devices' GPS to attempt

20 to roughly locate them and display their avatars on a map interface displayed on their mobile

21 devices.  Niantic admits that when the players' mobile devices report that they are in the vicinity of

22 certain GPS coordinates, virtual Pokémon can appear near the player on the map interface.  Niantic

23 admits that players that select a Pokémon to catch can choose to use the "AR" (for "augmented

24 reality") setting and the mobile device's camera viewer to show the virtual creature on-screen

25 projected on top of the player's real-world surroundings, however, whether or not the AR setting is

26 used, players catch Pokémon that appear on the map interface by swiping their screen to "throw"

27 Poké Balls at it.  Niantic denies any remaining allegations in paragraph 25.

28 26.    Augmented reality requires a live view of the physical world—for instance, through a

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12.

**ANSWER TO SECOND CONSOLIDATED AMENDED CLASS
ACTION COMPLAINT - (CASE NO. 3:16-CV-04300-JD)**

mobile phone camera display—elements of which are augmented by computer-generated sensory input such as sound, video, graphics, or GPS data. From a development perspective, the physical world is thus the backdrop against which an augmented reality experience is rendered, and from a user's perspective, the physical world is the landscape against which an augmented reality experience unfolds.

**Answer:**   In response to paragraph 26, Niantic denies all the allegations therein.

27.   As an augmented reality game, *Pokémon Go* is dependent in equal parts on both Defendant Niantic's software code and on the existence of a physical space for its players to explore. To create the world of *Pokémon Go*, Niantic used mapping software to create a stylized, three-dimensional map of a player's actual surroundings—in essence, using the real world and the countless public and private properties that constitute it as building blocks for the game. (See Figure 2.)   As a *Pokémon Go* player physically moves throughout the real world, the player's avatar correspondingly moves throughout the map displayed on the player's phone.



*Figure 2*

**Answer:**   In response to paragraph 27, Niantic admits that *Pokémon GO* is an augmented reality game.  Niantic admits that the Map View display in the *Pokémon GO* application shows the area around the device's current location.  Niantic admits that as players move in the real

Cooley LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13.

ANSWER TO SECOND CONSOLIDATED AMENDED CLASS
ACTION COMPLAINT - (CASE NO. 3:16-CV-04300-JD)

world, *Pokémon GO* uses their mobile devices' GPS to locate them and display their avatars on a map interface and that Niantic attempts to have the avatars' movements roughly correspond with the players' physical movements.  To the extent that Figure 2 constitutes an allegation, Niantic admits that the image appears to depict a person holding a phone on which *Pokémon GO* is displayed, but Niantic lacks knowledge and information with respect to those images' creation and authenticity. Niantic denies any remaining allegations in paragraph 27.

28.    Niantic has placed different types of Pokémon at different locations on its game map. When the player's phone detects that the player is close enough to the real-world GPS coordinates of one of these locations, the game activates the phone's camera and superimposes an image of the Pokémon over the camera feed, making it seem as if the Pokémon is right in front of the player. (See Figure 1.) By swiping their phone screens, players can try to "catch" the Pokémon and add it to their virtual collection.

**Answer:**    In response to paragraph 28, Niantic admits that as players move in the real world, *Pokémon GO* uses their mobile devices' GPS to attempt to roughly locate them and display their avatars on a map interface displayed on their mobile devices.  Niantic admits that when the players' mobile devices report that they are in the vicinity of certain GPS coordinates, virtual Pokémon appear near the players on the map interface.  Niantic admits that players that select a Pokémon to catch can choose to use the "AR" (for "augmented reality") setting and the mobile device's camera viewer to show the virtual creature on-screen projected on top of the camera view of the players' real-world surroundings, however, whether or not the AR setting is used, players can catch Pokémon that appear on the map interface by swiping their screen to "throw" Poké Balls at it. Niantic denies any remaining allegations in paragraph 28.

29.    There are hundreds of different types of Pokémon available for capture, and the most prominent goal in the game is to "catch them all."[2] Different types spawn at different times and places: grass-type Pokémon are more common in parks, whereas water-type Pokémon are more

_____

[2] Upon the launch of *Pokémon Go*, there were approximately 151 different Pokémon available for capture. Around February 16, 2017, Niantic added approximately 100 more. Niantic will likely continue to add more over time.

1   common near lakes and rivers—in fact, many players have even concluded that certain Pokémon are

2   nocturnal and thus spawn primarily at night.[3] Some are common, appearing frequently across a wide

3   range of GPS coordinates and times of day, whereas others are very rare, spawning only at certain

4   times and in a narrow range of locations. Players can also obtain Pokémon eggs, which hatch only

5   after the player has travelled several kilometers while playing the game.

6      **Answer:**      In response to paragraph 29, Niantic admits when it released *Pokémon GO* on

7   July 6, 2016, there were over 100 Pokémon available for capture, and that it has subsequently added

8   additional Pokémon, such that hundreds of different types are available to attempt to capture today.

9   Niantic admits that on February 16, 2017 it added additional Pokémon, but denies that it added

10  approximately 100 more.  Niantic admits that one feature of *Pokémon GO* is that players may

11  attempt to collect many Pokémon.  Niantic admits that some wild Pokémon appear on the map

12  interface more frequently when a player's mobile device detects that the player is at GPS coordinates

13  near certain environments and climates or that the player is at GPS coordinates where the current

14  time falls into a particular window (*i.e.*, some Pokémon are more common during the day or during

15  the evening, but there are no Pokémon exclusive to either period). For example, some Pokémon may

16  appear more frequently when a player's mobile device detects that the player is at GPS coordinates

17  near lakes, oceans, or other bodies of water.  Niantic admits that players can obtain Pokémon eggs,

18  which hatch only after the player's phone detects that the player has travelled a specific distance

19  while playing *Pokémon GO*.  Niantic denies any remaining allegations in paragraph 29.

20      30.    Niantic also selects and designates certain real-world locations as "Pokéstops" and

21  "Pokémon Gyms," both of which are essential for players to advance in the game. By visiting

22  Pokéstops, players can obtain valuable items that help find, catch, and upgrade their Pokémon. At

23  Pokémon Gyms, players can engage in virtual battles with other players, with the ultimate goal of

24  taking control of the gym. At higher levels of the game, gaining control of many different gyms is

25  one of the fastest ways to advance in the game.

26

---

27  [3] *See, e.g., Are There Nocturnal Pokemon In Pokémon Go? New Research Finds Some Pokemon
28  More Common At Night (Mar. 8, 2017),* Pokémon Go Informer,
    https://pokemongoinformer.com/nocturnal-pokemon-in-pokemon-go/.

1    **Answer:**    In response to paragraph 30, Niantic admits that when the players' mobile

2   device reports that it is in the vicinity of certain GPS coordinates, players can use *Pokémon GO* to

3   interact with virtual locations called PokéStops and Gyms.  Niantic admits that players can obtain

4   helpful in-game items from PokéStops that can be used to, for example, increase the probability that

5   Pokémon will appear in the game interface, to catch Pokémon, or to allow their Pokémon to

6   "evolve" into a different Pokémon.  Niantic admits that if a Gym is not controlled by a player's

7   team, the player can "claim" the Gym for her team by battling and defeating all of the Pokémon in

8   the Gym.  Niantic denies any remaining allegations in paragraph 30.

9       31.    Because each Pokéstop or Pokémon gym exists only at a specific set of GPS

10   coordinates, a *Pokémon Go* player must be in the physical vicinity of the real-world property

11   associated with those GPS coordinates to take advantage of them and reap the associated in-game

12   reward. In particular, to engage in a battle at a Pokémon Gym, a player must not only travel to the

13   vicinity of a Pokémon Gym but must also remain within some minimum distance from the gym for

14   the duration of the battle.[4]

15    **Answer:**    In response to paragraph 31, Niantic admits that when the players' mobile

16   device reports that it is in the vicinity of certain GPS coordinates, players can use *Pokémon GO* to

17   interact with virtual locations called PokéStops and Gyms. Niantic admits that to train or battle at a

18   particular Gym, the player's phone must report that it is within a minimum distance of the GPS

19   coordinates associated with that Gym for the duration of the battle.  Niantic denies any remaining

20   allegations in paragraph 31.

21       32.    Thus, the most effective way to advance quickly in the game is to travel and explore

22   widely, visiting a variety of places at different times of day and night, in order to capture as many

23   different Pokémon as possible and to take advantage of Pokéstops and Pokémon gyms.

24    **Answer:**    In response to paragraph 32, Niantic admits that players may travel and

25   explore widely and visit a variety of places to capture many different Pokémon.  Niantic denies any

26

27   [4]   Ripsuibunny, *Gym battle distance checks - be within 100m,* Reddit,
     https://www.reddit.com/r/TheSilphRoad/comments/6nn2mb/gym_battle_distance_checks_be_wi
28   thin_100m/ (July 16, 2017).

Cooley LLP
Attorneys At Law
San Francisco

16.

**Answer to Second Consolidated Amended Class
Action Complaint - (Case No. 3:16-cv-04300-JD)**

remaining allegations in paragraph 32.

### *Pokémon Go* Is Fundamentally a Scavenger Hunt—a Social Experience With Simple, Accessible Gameplay That Draws Its Appeal from Real-World Travel

33.     Fundamentally, the appeal of Pokémon Go has had little to do with gameplay elements programmed into the app itself. Rather, the primary appeal of Pokémon Go is that it is a social experience unfolding in real, physical space.

**Answer:**     In response to paragraph 33, Niantic denies all the allegations therein.

34.     Niantic emphasizes this heavily in its advertising, encouraging players to search far and wide to capture Pokémon and advance in the game.  For example: Niantic's description of the game on Apple's and Google's application stores heavily promotes this aspect of *Pokémon Go*:

> Venusaur, Charizard, Blastoise, Pikachu, and many other Pokémon have been discovered!
>
> Now's your chance to **discover and capture the Pokémon all around you—so get your shoes on, step outside, and explore the world.** You'll join one of three teams and battle for the ownership of Gyms with your Pokémon at your side.
>
> Pokémon are out there, and you need to find them. **As you walk around a neighborhood, your smartphone will vibrate when there's a Pokémon nearby.** Take aim and throw a Poké Ball... You'll have to stay alert, or it might get away!
>
> **Search far and wide for Pokémon and items**
>
> **Certain Pokémon appear near their native environment—look for Water-type Pokémon by lakes and oceans. Visit PokéStops and Gyms—found at interesting places like museums, art installations, historical markers, and monuments**—to stock up on Poké Balls and helpful items.
>
> * * *
>
> Take on Gym battles and defend your Gym
>
> As your Charmander evolves to Charmeleon and then Charizard, you can battle together to defeat a Gym and assign your Pokémon to defend it against all comers. You can also participate in Raid Battles at Gyms around the world. A Raid Battle is a cooperative gameplay experience that encourages you to work with up to 20 other Trainers to defeat an extremely powerful Pokémon known as the Raid Boss. If you succeed in defeating it in battle, you'll have the chance to catch an extra powerful Pokémon of your own!

**Answer to Second Consolidated Amended Class Action Complaint - (Case No. 3:16-cv-04300-JD)**

*It's time to get moving*—your real-life adventures await![5]

**<u>Answer:</u>**       In response to paragraph 34, Niantic admits that it encourages players to move around and explore the world while playing *Pokémon GO*.   Niantic admits that, previously, the webpages associated with the URLs in paragraph 34 contained the cited language, without bolding or italics, together with other text not included in paragraph 34, but denies that that those URLs currently contain the cited language.   Niantic denies any remaining allegations in paragraph 34.

35.       Niantic also consistently reiterates the importance of real-world social engagement in its public communications. For example, a recent blog post emphasized that "Our games are designed to inspire movement, face-to-face social interactions, and exploration of public spaces."[6]

**<u>Answer:</u>**       In response to paragraph 35, Niantic admits that it has reiterated the importance of real-world social engagement in its public communications.   Niantic admits that the webpage associated with the URL in paragraph 35 contains the cited language.   To the extent there are any other allegations to which a response is required, Niantic denies the allegations.

36.       Many commentators have also noted the centrality of real-world travel to the game. For example:

> ***[T]he game does a lot to make you explore your real-world environment at different times.*** For example, if you go out to a park, you'll probably see more grass- or bug-type Pokémon. If you go near a lake or ocean, you'll be able to pick up more water types. And if you go out at night, you'll see more nocturnal fairy and ghost types.
>
> This is further enhanced by PokéStops, which are essentially notable locations in the real world marked on your in-game map. You can go to these to nab items, including Poké Balls and eggs that can hatch into full Pokémon. It's also possible to install special items at PokéStops that lure extra Pokémon, which also make the stops glow pink on the map so players know that hanging around will attract extra Pokémon.
>
> ***This need to travel is the game's depth***, essentially: To catch them all (and earn the medals attached to catching Pokémon), ***you're going to have to explore far and wide, during the day and night*** — like Ash Ketchum does in the TV show. It's the only way to become the very

---

[5]   Niantic, Inc., *Pokémon Go*, iTunes, https://itunes.apple.com/us/app/pok%C3%A9mon-go/id1094591345?mt=8 (last visited Aug. 28, 2017) (emphases added); Niantic, Inc., *Pokémon Go*, Google Play, https://play.google.com/store/apps/details?id=com.nianticlabs.pokemongo&hl=en (last visited Aug. 28, 2017) (emphases added).
[6]   *Fostering Community Engagement with Augmented Reality*, Niantic Labs, June 30, 2017, https://www.nianticlabs.com/blog/communityevents/.

best, like no one ever was.

*The game monetizes on this, too*: You can buy items in the store with real money that help you lure Pokémon. Since *Pokémon Go* is free to download and play, this is how the developers are making money off the game. (They'll also probably make money off all the data they're collecting.)[7]

**Answer:**      In response to paragraph 36, Niantic admits that the webpage associated with the URL in paragraph 36 contains the cited language without bolding or italics, together with other text not included in paragraph 36.  Niantic lacks knowledge or information sufficient to admit or deny the allegations describing what "commentators" have noted and on that basis denies them.  To the extent there are any other allegations to which a response is required, Niantic denies the allegations.

37.      The centrality of real-world travel is heightened by the relative lack of other gameplay elements. Catching Pokémon is highly repetitive, consisting overwhelmingly of making the same swiping motion over and over (albeit with slightly more precision as the player advances). The gym battles in *Pokémon Go* are determined primarily by the player's Pokémon's "combat power" statistic—involving little of the strategy that made battles interesting in previous Pokémon games. As many commentators have noted, these are "mostly boring and mundane grindy activities that offer little to no reward in terms of player progression and satisfaction."[8]

**Answer:**      In response to paragraph 37, Niantic admits that that the webpage associated with the URL in paragraph 37 contains the cited language, along with other text not included in paragraph 37.  Niantic lacks knowledge or information sufficient to admit or deny the allegations describing what "many commentators" have noted, and on that basis denies them.  Niantic denies the remaining allegations in paragraph 37.

38.      One result is that the "most powerful wellspring of fun in the game's design is how it *cultivates social engagement*."[9] Players have to travel to the same physical location to access a

---

[7]    German Lopez, *Pokémon Go*, explained, Vox, Aug. 5, 2016, https://www.vox.com/2016/7/11/12129162/pokemon-go-android-ios-game.

[8]  *Pokémon Go* Lack of Content is becoming Evident (Sep. 21, 2016), *Pokémon Go* Hub, https://pokemongohub.net/post/featured/pokemon-go-lack-of-content/.

[9]  Why *Pokémon Go* became an instant phenomenon (July 15, 2016, 3:57 pm), The Conversation, `https://theconversation.com/why-pokemon-go-became-an-instant-phenomenon-62412.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19.

ANSWER TO SECOND CONSOLIDATED AMENDED CLASS
ACTION COMPLAINT - (CASE NO. 3:16-CV-04300-JD)

1    Pokéstop or Pokémon Gym, and it's easy to identify other players because "collecting Pokémon is a

2    distinctive-looking thing to do with a phone. ***Players can tell when a stranger is collecting***

3    ***Pokémon at a place they happen to be.***"[10]

4        **Answer:**        In response to paragraph 38, Niantic admits that the webpage associated with

5    the URL in paragraph 38 contains the cited language without bolding or italics.  Niantic admits that

6    one feature of *Pokémon GO* is social engagement.  Niantic denies any remaining allegations in

7    paragraph 38.

8        39.    Essentially, Niantic has created and now manages and operates a scavenger hunt. To

9    play the game, players must travel to specific physical locations where they can find items

10   (Pokémon, Pokéstops, and Pokémon gyms) that are necessary to advance in the game. These items

11   are only accessible to players in their immediate physical proximity—and Niantic has complete

12   control over the locations of these in-game items. Moreover, like a scavenger hunt, *Pokémon Go*

13   incentivizes players to go and to congregate in large groups in places where they would otherwise

14   have no reason to go. As a result, every day, Niantic sends thousands and sometimes millions of

15   players searching for Pokémon and other items that Niantic has placed at specific GPS coordinates.

16       **Answer:**        The first sentence of paragraph 39 consists of Plaintiffs' argument and

17   characterization of their allegations, which do not require a response; to the extent the allegations in

18   the first sentence of paragraph 39 require a response, Niantic denies all the allegations therein. In

19   response to the second sentence, Niantic admits that when players' mobile devices report that they

20   are in the vicinity of certain GPS coordinates, players can use *Pokémon GO* to interact with virtual

21   locations called "PokéStops" and "Gyms" and that to play *Pokémon GO*, players can travel to

22   specific physical locations where they can find items including Pokémon, Pokéstops, and Gyms that

23   can help a player to advance in *Pokémon GO*. Niantic denies the remaining allegations in the second

24   sentence.  Niantic denies all the remaining allegations in the third, fourth, and fifth sentences of

25   paragraph 39 in part because virtual objects cannot be "placed" at specific coordinates.

26       40.    All of this means that a big part of the game's appeal inherently requires ***large groups***

27

28   ――――――――――――
     [10] *Id.*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20.

**ANSWER TO SECOND CONSOLIDATED AMENDED CLASS
ACTION COMPLAINT - (CASE NO. 3:16-CV-04300-JD)**

1    *of players congregating in close physical proximity*—just like most sports and many other

2    recreational activities. This requires physical space, and it creates significant logistical challenges

3    that someone has to be responsible for, such as cleaning and maintaining the physical space,

4    providing bathroom and other facilities, and so forth.

5    **Answer:**      In response to paragraph 40, Niantic denies all of the allegations therein.

6    **Monetizing Augmented Reality and Externalizing Its Costs**

7    41.    The core innovation of *Pokémon Go* is that it has enabled Niantic to profit

8    handsomely from a game that is fundamentally about exploring physical space, without having to

9    pay for that physical space or for any of the foreseeable costs of maintaining that physical space.

10   **Answer:**      In response to paragraph 41, Niantic admits that it has earned profits from

11   *Pokémon GO*.  Niantic denies any remaining allegations in paragraph 41.

12   42.    Initially, Niantic's primary revenue source from *Pokémon Go* was by selling

13   PokéCoins, the game's virtual currency. While a player may earn PokéCoins simply by playing

14   *Pokémon Go*, the fastest and easiest way to earn PokéCoins—and thus the fastest and easiest way to

15   upgrade one's *Pokémon Go* inventory—is to purchase PokéCoins with real money. A *Pokémon Go*

16   player can pay anywhere from $0.99 for 100 PokéCoins to $99.99 for 14,500 PokéCoins.

17   **Answer:**      In response to paragraph 42, Niantic admits that it earns revenue from

18   *Pokémon GO* in-app purchases when users purchase PokéCoins, *Pokémon GO*'s virtual currency.

19   Niantic admits that players can earn PokéCoins, by completing certain actions within the app.

20   Niantic admits that players can purchase PokéCoins by spending anywhere from $0.99 for 100

21   PokéCoins to $99.99 for 14,500 PokéCoins.  Niantic denies any remaining allegations in paragraph

22   42.

23   43.    In July 2016, Niantic was generating $1.6 million per day from iPhone users alone,

24   and approximately $200 million in total during the game's first month on the market.[11] By August

25

---

26   [11] Alice Truong, *Pokémon Go is making $1.6 million each day in the US from iOS users paying for silly virtual goods*, *QZ*, July 12, 2016, https://qz.com/729935/pokemon-go-is-making-1-6- million-each-day-in-the-us-from-ios-users-paying-for-silly-virtual-goods/; Mike Minotti, *Sensor Tower: Pokémon Go made $200 million in its first month*, VentureBeat (Aug. 8, 2016 9:20 AM), https://venturebeat.com/2016/08/08/sensor-tower-pokemon-go-made-200-million-in-its-first-month/.

2016, *Pokémon Go* had 100 million monthly users worldwide. The game's total revenues for 2016 were $950 million. By May 2017, *Pokémon Go* players had walked more than 15.8 billion kilometers while playing the game.

**Answer:**        In response to paragraph 43, Niantic admits that, in July 2016, *Pokémon Go* generated at least $1.6 million per day in gross revenue from iPhone users, and at least $200 million in gross revenue.  Niantic admits that by August 2016, *Pokémon GO* had at least 100 million monthly users worldwide.  Niantic admits that *Pokémon Go's* gross revenue for 2016 was at least $950 million. Niantic admits that by May 2017, *Pokémon GO* players had walked more than 15.8 billion kilometers while playing *Pokémon GO*.

44.        Commentators noted that the game's revenues were attributable to "the game's beloved intellectual property, simple mechanics, real-world augmented reality gameplay, and perhaps most of all, its social nature."[12]

**Answer:**        In response to paragraph 44, Niantic admits that the webpage associated with the URL in paragraph 44 contains the cited language.  Niantic lacks knowledge or information sufficient to admit or deny the allegations describing what "commentators" have noted, and on that basis denies them.  To the extent there are any other allegations to which a response is required, Niantic denies the allegations.

45.        More recently, Niantic has introduced "Raid Battles," which can only be accessed with a "Raid Pass," which are available for free in limited quantities—but a "Premium Raid Pass," which is far more valuable, must be purchased. This has become another major revenue stream.

**Answer:**        In response to paragraph 45, Niantic admits that on June 29, 2017, it added "Raid Battles" to *Pokémon GO*.  Niantic admits that players can use "Raid Passes" or "Premium Raid Passes" to access Raid Battles.  Niantic admits that players can receive one free Raid Pass per day by interacting with a Gym, and that players can purchase Premium Raid Passes using PokéCoins.  Niantic denies any remaining allegations in paragraph 45.

---

[12] Dean Takahashi, *Pokémon Go generated revenues of $950 million in 2016,* VentureBeat (Jan. 17, 2017, 12:02 a.m.), https://venturebeat.com/2017/01/17/Pokemon-go-generated-revenues-of¬950-million-in-2016/.

46.     In June 2017, the game had 60 million monthly players, with 20 percent of them opening the game at least once a day. As of June 30, 2017, *Pokémon Go* had been downloaded 752 million times and had generated $1.2 billion in revenue.[13] As of July 11, 2017, *Pokémon Go* players in the United States had spent $424 million on in-app purchases in the Apple App Store and Google Play store combined.[14]

**Answer:**     In response to paragraph 46, Niantic denies the allegations in the first sentence of paragraph 46.  Niantic admits that as of June 30, 2017, *Pokémon GO* had been downloaded at least 752 million times and had generated at least $1.2 billion in gross revenue. Niantic admits that *Pokémon GO's* gross revenue from in app purchases as of July 11, 2017 was at least $424 million.

47.     But as noted above, the game inherently requires large groups of players congregating in close physical proximity, which creates obvious foreseeable costs and expenses and logistical challenges. In launching *Pokémon Go*, however, Niantic considered the physical footprints of its game only to the extent they could be monetized for its benefit, while flagrantly disregarding the foreseeable consequences of the game for property owners.

**Answer:**     Paragraph 47 consists of Plaintiffs' legal conclusions, argument, and characterization of their allegations, which do not require a response; to the extent the allegations in paragraph 47 require a response, Niantic denies all the allegations therein.

48.     To create the world of *Pokémon Go*, Niantic used real properties, owned by real persons, as building blocks to construct a simulacrum of reality. For a player's avatar to explore the world of *Pokémon Go*, that player must physically move about in and to certain locations in the physical world. Niantic incentivizes players to go to certain real-world locations by placing rare Pokémon, Pokémon Gyms, and/or Pokéstops at those locations. Those locations thus become popular destinations for *Pokémon Go* players to congregate.

---

[13] Mike Minotti, *Pokémon Go* passes $*1.2 billion in revenue and 752 million downloads,* VentureBeat (June 30, 2017, 2:30 p.m.), https://venturebeat.com/2017/06/30/Pokemon-go-passes-1-2-billion-in-revenue-and-752-million-downloads/ ; *Adventures Await!, Pokémon Go* (May 16, 2017), http://pokemongolive.com/en/post/adventureweek2017.

[14] Stephanie Chan, *Sensor Tower: Pokémon Go's Japanese players outspend the U.S. nearly 4- to-1,* VentureBeat (July 11, 2017 2:30 p.m.), https://venturebeat.com/2017/07/11/sensor-tower¬Pokémon-gos-j apanese-players-outspend-the-u-s-nearly-4-to-1 /.

Cooley LLP
Attorneys At Law
San Francisco
23.
ANSWER TO SECOND CONSOLIDATED AMENDED CLASS
ACTION COMPLAINT - (CASE NO. 3:16-CV-04300-JD)

1    **Answer:**    In response to paragraph 48, Niantic denies all the allegations therein.

2    49.    By concentrating a significant number of Pokémon Gyms and Pokéstops in a small

3    public park on a quiet residential block, for example, Niantic ensured that the park would remain full

4    of *Pokémon Go* players making in-game purchases, thereby creating a robust revenue stream from

5    that location. Yet with respect to the costs associated with the physical presence of so many

6    *Pokémon Go* players in one place—of providing parking or other resources for more visitors than the

7    park was ever intended to accommodate, for example, or preventing or paying for the foreseeable

8    damage to residential property when a quiet residential street suddenly experiences an exponential

9    increase in visitors—Niantic has disclaimed all responsibility, imposing it instead on members of the

10    Class. To date, Niantic has reaped significant profits from the in-game economy of *Pokémon Go*,

11    while externalizing the game's costs to the real world, to be borne by real people.

12    **Answer:**    Paragraph 49 consists of Plaintiffs' legal conclusions, argument, and

13    characterization of their allegations, which do not require a response; to the extent the allegations in

14    paragraph 49 require a response, Niantic denies all the allegations therein.

15    **Placement of Pokéstops and Pokémon Gyms On or Near Private Property**

16    50.    Within days of the game's release, it became clear that many Pokéstops and Pokémon

17    gyms were, in fact, on or near private property, and that Niantic had placed these Pokéstops and

18    Pokémon gyms ***without the consent of the properties' owners***.

19    **Answer:**    In response to paragraph 50, Niantic denies all the allegations therein, in part

20    because virtual objects cannot be "placed" "on" or "near" a physical location.

21    **Jeffrey Marder**

22    51.    In early July 2016, shortly after the release of *Pokémon Go*, Plaintiff Jeffrey Marder

23    became aware that strangers were gathering outside of his home, holding up their mobile phones as

24    if they were taking pictures. At least five individuals knocked on Mr. Marder's door, informed Mr.

25    Marder that there was a Pokémon in his backyard, and asked for access to his backyard in order to

26    "catch" the Pokémon.

27    **Answer:**    Niantic lacks knowledge or information sufficient to admit or deny the

28    allegations in paragraph 51, and on that basis denies them.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

24.

**ANSWER TO SECOND CONSOLIDATED AMENDED CLASS
ACTION COMPLAINT - (CASE NO. 3:16-CV-04300-JD)**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### The Villas of Positano

52.     Likewise, residents of the Villas of Positano—an oceanfront condominium complex consisting of 62 private residences, located in Hollywood, Florida—became aware of hundreds of non-residents infiltrating their private condominium complex during the early hours of the morning, behaving "like zombies, walking around bumping into things." Villas residents subsequently discovered that Defendant Niantic had designated the Villas as a Pokéstop, labeled "Greek Architect" (an apparent reference to the Villas' Mediterranean-influenced aesthetic). (See Figure 3.) Moreover, Niantic had also programmed the *Pokémon Go* game to spawn certain rare Pokémon at the Villas, late at night and during early morning hours.

 

*Figure 3*

**Answer:**     Niantic lacks knowledge or information sufficient to admit or deny the allegations in the first sentence of paragraph 52, and on that basis denies them.  In response to the second sentence in paragraph 52, Niantic denies that it "designated the Villas as a PokéStop," but admits that there was formerly a point of interest named "Greek Architect" that has since been removed from *Pokémon GO*.  Niantic lacks knowledge or information sufficient to admit or deny the remaining allegations in the second sentence, and on that basis denies them.  To the extent that Figure 3 constitutes an allegation, Niantic lacks knowledge and information to admit or deny the allegations with respect to the left image and on that basis denies any allegations contained therein. With respect to the right image, Niantic admits that the image appears to depict *Pokémon GO*, but Niantic lacks knowledge and information with respect to that image's creation and authenticity.

Cooley LLP
Attorneys At Law
San Francisco

25.

Answer to Second Consolidated Amended Class
Action Complaint - (Case No. 3:16-cv-04300-JD)

1    With respect to the "See" signal in the citation of the figure, Niantic denies that the figure supports
2    the sentence that precedes it.  Niantic denies the allegations in the third sentence of paragraph 52.

3           53.    Over the next several weeks, conditions deteriorated at the Villas. Induced by
4    Niantic's unauthorized placement of hard-to-find Pokémon on Villas property, throngs of *Pokémon*
5    *Go* players continued to trespass onto Villas property on a nightly basis, in order to be present during
6    peak spawning hours. Often parking illegally, players crowded the Villas, talking, shouting, and
7    playing music as the Villas' residents tried to sleep. *Pokémon Go* players stayed for hours each
8    night, leaving garbage in their wake. Moreover, as the Villas and nearby Boardwalk lack public
9    bathroom facilities, many *Pokémon Go* players used the Villas' landscaping to relieve themselves
10   during their nightly incursions.

11          **Answer:**      Niantic lacks knowledge or information sufficient to admit or deny the
12   allegations in the first, third, fourth, and fifth sentences of paragraph 53, and on that basis denies
13   them.  Niantic denies that it "placed" hard-to-find Pokémon on Villas property.  Niantic lacks
14   knowledge or information sufficient to admit or deny the remaining allegations in the second
15   sentence of paragraph 53, and on that basis denies them.

16          54.    With "out-of-control crowds" continuing to congregate on the Villas' property and
17   making noise in the early hours of the morning, The Lojeta Group ("Lojeta"), the Villas' developer,
18   contacted Niantic and requested that the Villas be removed as a Pokéstop. In response, Lojeta
19   received only an automated reply. Due to Niantic's inaction, Lojeta was forced to hire off-duty
20   police officers to patrol the Villas from 11 p.m. until 4 a.m.

21          **Answer:**      In response to the allegations the first sentence of paragraph 54, Niantic
22   admits that it received communications from "Lont" and "Positanofd" requesting removal of a
23   Pokéstop.  Niantic lacks knowledge or information sufficient to admit or deny the allegations in the
24   first sentence concerning the identity of the requester and the "out of control crowds" that
25   congregated on the Villa's property, and on that basis denies them.  In response to the second
26   sentence of paragraph 54, Niantic denies the allegations.  Niantic lacks knowledge or information
27   sufficient to admit or deny the allegations in the third sentence, and on that basis denies them.  To
28   the extent there are any other allegations to which a response is required, Niantic denies the

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

26.

**ANSWER TO SECOND CONSOLIDATED AMENDED CLASS
ACTION COMPLAINT - (CASE NO. 3:16-CV-04300-JD)**

1    allegations.

2        55.    By placing a Pokéstop on the Villas' property, and by programming rare Pokémon to

3    spawn nearby, Niantic ensured that crowds of *Pokémon Go* players would regularly congregate at

4    the Villas, many of whom could be counted upon to make in-game purchases, thus generating a

5    revenue stream. However, Niantic imposed the foreseeable costs associated with its revenue

6    stream—for example, the need to hire security guards and clean up trash and other waste from the

7    property—squarely on the Villas, causing significant harm.

8        **Answer:**    Paragraph 55 consists of Plaintiffs' legal conclusions, argument, and

9    characterization of their allegations, which do not require a response; to the extent the allegations in

10   paragraph 55 require a response, Niantic denies all the allegations therein.

11                              **Scott and Jayme-Gotts Dodich**

12       56.    The case of Wahby Park presents another egregious example of the foreseeable

13   consequences of Niantic's disregard for property rights. Wahby Park is a small municipal park in the

14   City of St. Clair Shores, Michigan. Scott Dodich and Jayme Gotts-Dodich reside on Revere Street, a

15   private cul-de-sac across the street from Wahby Park.

16       **Answer:**    In response to paragraph 56, Niantic denies all the allegations in the first

17   sentence.  Niantic lacks knowledge and information sufficient to admit or deny the allegations in the

18   second and third sentences of paragraph 56, and on that basis denies them.

19       57.    In early July 2016, shortly after the release of *Pokémon Go*, the Dodichs noticed a

20   significant increase in the number of visitors to Wahby Park, from an estimated 15 to 20 visitors at

21   any given time to at least several hundred, most of whom were clearly focused on their mobile

22   phones. (See Figure 4.) The Dodichs soon learned that Defendant Niantic had placed at least seven

23   Pokéstops and one Pokémon Gym on the park. (See Figure 5.) In fact, Wahby Park topped *Click On

24   Detroit's* list of "Best places to play *Pokémon Go* in Metro Detroit," which described "[h]undreds of

25   people walking around" and "[a]t least six Pokéstops, all constantly lured."[15]

26

27

28
---
[15] Dustin Block, *Best places to catch Pokemon in Metro Detroit*, Click On Detroit, July 28, 2016, 11:41 AM, https://www.clickondetroit.com/news/pokemon-map.

27.

1
2
3
4
5
6
7
8
9
10
11



12 *Figure 4*



25 *Figure 5*
26 *An in-game map of Wahby Park and Revere Street (to the left),*
*displaying at least seven Pokéstops and one Pokémon Gym.*
27

**Answer:**    In   response   to   paragraph   57,   Niantic   lacks   knowledge   or   information

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

28.

ANSWER TO SECOND CONSOLIDATED AMENDED CLASS
ACTION COMPLAINT - (CASE NO. 3:16-CV-04300-JD)

sufficient to admit or deny the allegations in the first sentence of paragraph 57, and on that basis denies them.  To the extent that Figure 4 constitutes an allegation, Niantic lacks knowledge or information with respect to that image's creation and authenticity, and with respect to the "See" signal in the citation of the figure, Niantic denies that the figure supports the sentence that precedes it.  In response to the second sentence of paragraph 57, Niantic admits that at least seven *Pokémon Go* points of interest were associated with GPS coordinates near Wahby Park, several of which have been retired, but Niantic denies that it placed any PokéStops or a Gym "on" Wahby Park as virtual objects cannot be "placed" "on" physical property.   Niantic lacks knowledge or information sufficient to admit or deny the remaining allegations in the second sentence concerning what the Dodichs learned, and on that basis denies them.  To the extent that Figure 5 constitutes an allegation, Niantic admits that the image appears to depict *Pokémon GO*, but Niantic lacks knowledge and information with respect to that image's creation and authenticity, and with respect to the "See" signal in the citation of the figure, Niantic denies that the figure supports the sentence that precedes it.  To the extent there are any other allegations in the second sentence to which a response is required, Niantic denies them.  Niantic admits that the webpage associated with the URL in the footnote after the third sentence of paragraph 57 contains the cited language in the third sentence, together with other text not included in paragraph 57.  To the extent there are any other allegations in the third sentence to which a response is required, Niantic denies them.

58.     Over the next several weeks, Revere Street degenerated into "a nightmare" for the Dodichs and their neighbors. Many of the visitors who flooded the park in search of Pokémon paid scant attention to the property boundaries of the Dodichs or other residents of Revere Street, and likewise disregarded the clearly posted sign advising that Revere Street was a private road, with parking for residents and their guests only. *Pokémon Go* players parked their cars in front of the Dodichs' and their neighbors' homes, blocking their driveways. (See Figure 6.) *Pokémon Go* players trespassed on the Dodichs' and their neighbors' lawns, trampling their landscaping and peering into their windows. (See Figure 7.) When Mrs. Gotts-Dodich asked a *Pokémon Go* player to leave her property, she was told to "shut up B****, or else."

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

29.

ANSWER TO SECOND CONSOLIDATED AMENDED CLASS
ACTION COMPLAINT - (CASE NO. 3:16-CV-04300-JD)

1
2
3
4
5
6
7
8
9
10
11



*Figure 6*

12
13
14
15
16
17
18
19
20
21
22
23
24
25



*Figure 7*

26

    **Answer:**      Niantic lacks knowledge or information sufficient to admit or deny the

27

allegations in paragraph 58, and on that basis denies them. To the extent that Figure 6 constitutes an

28

Cooley LLP
Attorneys At Law
San Francisco

30.

Answer to Second Consolidated Amended Class
Action Complaint - (Case No. 3:16-cv-04300-JD)

1    allegation, Niantic lacks knowledge or information with respect to that image's creation and

2    authenticity, and with respect to the "See" signal in the citation of the figure, Niantic denies that the

3    figure supports the sentence that precedes it.  To the extent that Figure 7 constitutes an allegation,

4    Niantic lacks knowledge or information with respect to that image's creation and authenticity, and

5    with respect to the "See" signal in the citation of the figure, Niantic denies that the figure supports

6    the sentence that precedes it.

7        59.    On or around July 25, 2016, the Dodichs requested the removal of the Pokéstops and

8    Pokémon Gym that Niantic had placed near their home, using the designated request form on the

9    company's website. In response, they received only an automated form reply: "Thank you for

10   reporting this PokéStop/Gym. We will review and take appropriate action. You'll receive a follow-

11   up email once your request has been reviewed."

12      **Answer:**      In response to the allegations in paragraph 59, Niantic admits that it received a

13   communication on July 25, 2016 from an individual named "Jsdodich" asking "to remove the

14   Gyms/Stops that are located in the Wahby Park adjacent to our private street."  Niantic lacks

15   knowledge or information sufficient to admit or deny the allegations as to whether the individual is

16   Ms. Gotts.   Niantic admits that it sent a responsive communication to the individual named

17   "Jsdodich" and that the communication contains the language quoted in paragraph 59 together with

18   other text not included in paragraph 59.

19      60.    Two days later, on July 27, 2016, the Dodichs had yet to receive the promised

20   response from Niantic, and submitted two more requests—this time, via emails directly to Niantic's

21   legal department and John Hanke, Niantic's CEO. The emails described to Niantic the conditions the

22   company's actions had created on Revere Street, and stated, in part:

23          At any given moment there are at least a couple of hundred people in
           the park play[ing] this game, compared to the average of at least 15-20
24         in the park. The [Pokéstops and Pokémon gyms] . . . [are] an ***open
           invitation for the players to utilize our street, our lawns, looking in***
25         ***our windows*** . . . and so forth. ***There are at least 30 homes . . . that***
           ***are affected by this. These players are loud, make threats, [are]***
26         ***intrusive, and I do not feel safe.*** My husband and I moved to our
           home almost two years ago because it was peaceful, quite, and safe.
27         ***When I see people driving slow, looking into our home, walking on***
           ***our property, looking into our vehicles, we do not feel safe.*** Neither
28         do the neighbors.

. . .

With all the traffic it is hard to tell who is playing the game, or casing out our street/park, someone who is looking to rob, rape or any other harm. . . .

***They park along our street that borders Wahby Park, we ask them to move and get threats and attitudes. I was threatened by a man who refused to leave. He was parked in front of my home. I had hardly any room to back out of my driveway.*** Mind you, he was also parked the wrong way on the street.

. . .

I truly hope you will take this into consideration, the news has already been in the park twice, and have interviewed neighbors on this issue.

(Emphases added.)

**Answer:**      In response to the allegations in paragraph 60, Niantic lacks knowledge or information sufficient to admit or deny the allegation that the Dodichs emailed Niantic's legal department, and on that basis denies it.  Niantic denies the remaining allegations in paragraph 60.

61.      In response to this litany of detailed grievances—which reported trespassing and personal threats, and expressed concerns about robbery and rape—the Dodichs again received only a generic form reply, thanking them again for contacting Niantic and directing them to "visit the help center[]" for Pokémon Go on Niantic's website.

**Answer:**      In response to the allegations in paragraph 61 regarding the receipt of a "generic form reply," Niantic denies that the Dodichs never received more than generic or form responses to their apparent complaints to Niantic.  The remaining allegations in paragraph 61 consists of Plaintiffs' legal conclusions, argument, and characterization of their allegations, which do not require a response; to the extent the remaining allegations paragraph 61 require a response, Niantic denies any remaining allegations in paragraph 61.

62.      Once again, the Dodichs did not receive any follow-up from Niantic. Accordingly, on August 1, 2016, the Dodichs wrote yet another email to the company:

***The past few weeks have been an absolute nightmare*** for not only my husband and I, but for the residents on our street as well. Almost two years ago my husband and I moved into our home, not knowing how

drastically our once quiet, safe, and peaceful street has gone to the complete opposite.

32.

. . .

Most recent I am seeking help for anxiety, I believe I will call it that and am seeking help. I guess you could say I had a nervous breakdown, never had to encounter this feeling in my life. *We have veterans with PTSD and this traffic is getting to them as well.*

*Nobody gets sleep anymore. Constantly have to protect our homes from people on our property that invade, all because of the stops/gyms.* I will highlight the issues we are having:

**Privacy**: Since our street borders the park, our privacy has been taken away from us. *The stops/gyms border directly on our street, causing the gamers to take over our property as well as the parks. They are on our lawns, with the newest being looking right into our windows. How is this acceptable? They hang out on our lawns, trample landscaping, look in vehicles,* hang out in the middle of the street looking at our homes while playing their game, so I hope. We ask them to leave but 75% percent of the time, they ignore us or call us names. . . .

**Safety**: Along with our privacy being violated, our safety is a concern too. Our street is narrow, we have elderly, and special needs children that require a lot of care. It is not uncommon for an ambulance go down the street frequently. It is not safe for cars to be blocking emergency vehicles to get down the street to assist people that need care. *We don't feel safe having people on our property looking into our home. Nor do we feel safe with random vehicles parking, driving slow, and hanging out on our street. We don't know who is playing the game, who is looking at our homes to break in or steal, who is a pedophile or rapist. I don't feel safe sitting on our porch, something we love to do.* We have gotten heckled and yelled at for calling the police and we didn't ever do so. *I have been threatened because I asked someone to leave, he said shut up b**** or else.* What does or else mean?

**Traffic control**: We are a private street, with that being said the police cannot ticket or have vehicles removed. All day is constant traffic, either parking on the street or just driving real slow to catch the Pokémon, or just stop right in the middle of the street. When we ask these unwanted guests to leave, we are threatened, they don't listen, give attitude, and leave when they want, this goes on all night. *Blocking driveways, parking on the wrong side of the street, sitting in driveways, you name it they are doing it.*

Look at the traffic in the park, even after dark. They scatter when it is time to leave, *hiding on our street or in the bushes*, then come right back once police leave.

**Answer:**    In response to the first sentence in paragraph 62, Niantic denies that the Dodichs did not receive any follow-up from Niantic. In response to the allegations in the second sentence of paragraph 62, Niantic admits that it received a communication on August 1, 2016 from

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

33.

ANSWER TO SECOND CONSOLIDATED AMENDED CLASS
ACTION COMPLAINT - (CASE NO. 3:16-CV-04300-JD)

an individual named "Jayme Gotts" and that the communication contains the language quoted in paragraph 62 without bolding or italics, together with other text not included in paragraph 62. Niantic lacks knowledge or information sufficient to admit or deny the allegations as to whether the individual is Ms. Gotts.    To the extent there are any other allegations to which a response is required, Niantic denies the allegations.

63.    Once again, the Dodichs received no reply beyond a generic form response.

**Answer:**        In response to the allegations in paragraph 63, Niantic denies the allegations.

64.    In mid-August 2016, after filing their initial complaint in the since-consolidated action *Dodich et al. v. Niantic, Inc. et al.,* 3:16-cv-04556, the Dodichs learned, through a Facebook posting, that they were the targets of an event titled "Defend *Pokémon Go* Meet Up," scheduled for August 21, 2016, organized by a pseudonymous *Pokémon Go* enthusiast on Facebook. The event posting referred to the Dodichs as "crybabies" and the concerns expressed in their complaint as "whining," and exhorted *Pokémon Go* players to assemble in strength near Wahby Park in an effort to intimidate the Dodichs into dropping their lawsuit:

> So come on out and let's make a spectacle by occupying ol' Wahby! Wahby Park is only open from 8:30 AM to 9:00 PM, but ***they can't stop the public from congregating in other public areas after 9 PM without closing times (think sidewalks, easements, or other creative ways to exercise your right to use public property)***.
>
> . . .
>
> A NOTE TO PROPERTY OWNERS NEAR WAHBY PARK:
>
> ***Please convince your neighbors Scott and Jayme Dodich to drop this frivolous lawsuit. The event will be cancelled if the lawsuit is dropped.***[16]

**Answer:**        Niantic admits that the Dodichs filed a complaint in August 2016 in an action formerly known as *Dodich et al. v. Niantic, Inc. et al.,* 3:16-cv-04556 that has since been consolidated.   Niantic lacks knowledge or information sufficient to admit or deny the remaining allegations in the first sentence of paragraph 64 and on that basis denies them.   Niantic admits that the URL cited in footnote 16 contains the text quoted in paragraph 64 without bolding or italics,

---

[16]    Arjay Cee, *Defend Pokémon Go Meet Up*, Facebook (Aug. 21, 2016) https://www.facebook.com/events/1328617877166658 (emphasis added).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO
34.
ANSWER TO SECOND CONSOLIDATED AMENDED CLASS
ACTION COMPLAINT - (CASE NO. 3:16-CV-04300-JD)

1   together with other text not included in paragraph 64. Niantic otherwise denies all the allegations

2   contained therein.

3       65.     After viewing the Facebook event posting, the Dodichs opted to leave their home for

4   the night of the event.

5       **Answer:**     Niantic lacks knowledge or information sufficient to admit or deny the

6   allegations in paragraph 65, and on that basis denies them.

7       66.     The problem continued into 2017. By July 2017, the Dodichs had requested that

8   Niantic remove Pokéstops or Pokémon gyms numerous times and had even contacted the Better

9   Business Bureau. But 3 Pokéstops or Pokémon gyms were still accessible from the Dodichs'

10  property, and *Pokémon Go* players were walking on the Dodichs' lawn while making the distinctive

11  swiping gesture necessary to throw a Pokéball in the game.

12      **Answer:**     In response to paragraph 66, Niantic lacks knowledge or information

13  sufficient to admit or deny the allegations in the first sentence stating that conduct that the Dodichs

14  considered to be a problem continued into 2017, and on that basis denies them.  To the extent there

15  are any other allegations in the first sentence that require a response, Niantic denies them.  Niantic

16  admits that it received communications from individuals named "Jayme Gotts", "Jlgd530", and

17  "Jsdodich" regarding the removal of Pokéstops or Gyms and lacks knowledge or information as to

18  whether this requester is one of the "Dodichs."  Niantic lacks knowledge or information as to the

19  allegation that the Dodichs contacted the Better Business Bureau and on that basis denies that

20  allegation.  Niantic lacks knowledge or information sufficient to admit or deny the allegations that

21  there were three Pokéstops accessible from the Dodichs' property in July 2017.  Niantic lacks

22  knowledge or information sufficient to admit or deny the allegations that "*Pokémon Go* players were

23  walking on the Dodichs' lawn while making the distinctive swiping gesture necessary to throw a

24  Pokéball in the game" in the third sentence of paragraph 66, and on that basis denies them.

25      67.     As with the Villas of Positano, Defendant Niantic successfully monetized Wahby

26  Park by filling it with Pokéstops and Pokémon gyms, thereby ensuring that hundreds of revenue-

27  generating *Pokémon Go* players would fill the park on a daily basis, and causing those players to

28  trespass on the Dodichs' property. Yet Niantic has refused to take responsibility for any of the

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

35.

**ANSWER TO SECOND CONSOLIDATED AMENDED CLASS
ACTION COMPLAINT - (CASE NO. 3:16-CV-04300-JD)**

1    foreseeable consequences of transforming a quiet neighborhood park into a profit center, and has

2    instead imposed those costs on the Dodichs and their neighbors. Niantic's actions have caused

3    significant harm to the Dodichs, including threats of violence and temporary displacement from their

4    home by a Facebook-organized mob.

5        **Answer:**    In response to paragraph 67, Niantic denies all the allegations therein.

6    <u>**Jill M. Barbarise**</u>

7        68.    Plaintiff Jill M. Barbarise is a resident of Oradell, New Jersey.

8        **Answer:**    Niantic lacks knowledge or information sufficient to admit or deny the

9    allegation in paragraph 68, and on that basis denies it.

10       69.    Beginning in July 2016, Ms. Barbarise started noticing groups of teenage boys

11   congregating around her property, huddled around their smartphones.

12       **Answer:**    Niantic lacks knowledge or information sufficient to admit or deny the

13   allegations in paragraph 69, and on that basis denies them.

14       70.    Around 10 p.m. on July 15, 2016, Ms. Barbarise was awakened by her dog barking.

15   She went outside to see what was going on, and she noticed a group of 6-8 people, seemingly

16   teenagers, huddled around their smartphones in a parking lot adjacent to her property, towards the

17   north-east. (Ms. Barbarise's property and the parking lot were separated by a vinyl fence.) Similarly,

18   around 7:25 p.m. on July 19, 2016, Ms. Barbarise heard her dog barking and then found a group of

19   4-6 people in the same parking lot, huddled around their smartphones. This was quite unusual for the

20   neighborhood.

21       **Answer:**    Niantic lacks knowledge or information sufficient to admit or deny the

22   allegations in paragraph 70, and on that basis denies them.

23       71.    Around 11:45 a.m. on July 21, 2016, Ms. Barbarise saw a group of 4 boys in front of

24   her driveway, huddled around their smartphones in the same way. She asked what they were doing,

25   and they told her they were playing the new Pokémon game and asked if they could enter her yard to

26   catch a Pokémon located there. She declined.

27       **Answer:**    Niantic lacks knowledge or information sufficient to admit or deny the

28   allegations in paragraph 71, and on that basis denies them.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

36.

**ANSWER TO SECOND CONSOLIDATED AMENDED CLASS
ACTION COMPLAINT - (CASE NO. 3:16-CV-04300-JD)**

1   72.   On July 23, 2016, Ms. Barbarise noticed that the gate in the fence between her

2   property and the parking lot had been damaged. Specifically, the metal ground stake had been

3   bent—suggesting that someone had attempted to pull the gate open. She had to pay $150 to have the

4   ground stake replaced.

5   **Answer:**   Niantic lacks knowledge or information sufficient to admit or deny the

6   allegations in paragraph 72, and on that basis denies them.

7   73.   Afterwards, she continued to find groups of teenage boys gathered next to her

8   property, huddled on her smartphone. On several of these occasions, the disturbance caused her dog

9   to start barking late at night, waking her up from sleep.

10   **Answer:**   Niantic lacks knowledge or information sufficient to admit or deny the

11   allegations in paragraph 73, and on that basis denies them.

12   **Jason Sarkis**

13   74.   Plaintiff Jason Sarkis is a resident of Webster, New York. His property is adjacent to

14   Milton Case Memorial Park, and his driveway includes a pedestrian access point to the park. There

15   is a sign at the end of his driveway indicating a "Walking Entrance" to the park. He also often

16   spends time taking care of the park.

17   **Answer:**   Niantic lacks knowledge or information sufficient to admit or deny the

18   allegations in paragraph 74, and on that basis denies them.

19   75.   In July 2016, he noticed that large groups of people began congregating around the

20   sign, often trespassing on his property as they did so, at all hours of day and night. He soon learned

21   that Niantic had placed a Pokémon Gym at the location of the sign at the end of his driveway.

22   **Answer:**   Niantic lacks knowledge or information sufficient to admit or deny the

23   allegations in the first sentence of paragraph 75, and on that basis denies them. In response to the

24   second sentence of paragraph 75, Niantic admits that there was a point of interest associated with

25   GPS coordinates near the location identified in communications sent by "Jwsarkis" and "Sarkis

26   Jennifer" that Niantic removed from *Pokémon GO*. Niantic denies the remaining allegations in the

27   second sentence of paragraph 75 as virtual objects cannot be "placed" "at" a physical property.

28   76.   For at least 6-7 weeks, large groups continued to gather around the sign. Many would

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

37.

ANSWER TO SECOND CONSOLIDATED AMENDED CLASS
ACTION COMPLAINT - (CASE NO. 3:16-CV-04300-JD)

1  trespass on his property, park in his driveway, trample and litter in his yard, and make lots of noise

2  (sometimes screaming or yelling) during both daytime and nighttime hours. He had to spend time

3  every day picking up trash and cigarette butts from his yard. Over the course of the summer he also

4  had to fix landscaping stones and hardscape that had been removed, as well as grass patches and

5  flower beds that had been dug and kicked up.

6  **Answer:**      Niantic lacks knowledge or information sufficient to admit or deny the

7  allegations in paragraph 76, and on that basis denies them.

8  77.      At the time, he had an 18-month old son and two small dogs, and his wife was in her

9  second trimester of pregnancy. Previously, his family had been used to keeping the windows open

10  and spending much of their time outside. But now, the constant traffic and noise not only kept his

11  family awake at night, it also made them afraid and uncomfortable and prevented them from

12  enjoying their own front and back yard for much of the summer.

13  **Answer:**      Niantic lacks knowledge or information sufficient to admit or deny the

14  allegations in paragraph 77, and on that basis denies them.

15  78.      Many times, he politely asked the game-players to move or at least keep the noise

16  down. They generally responded disrespectfully, such as by swearing or yelling at him for disturbing

17  their game; several even threatened him. When his wife tried asking them politely, she was called a

18  "bitch" and told to "go fuck [herself]."

19  **Answer:**      Niantic lacks knowledge or information sufficient to admit or deny the

20  allegations in paragraph 78, and on that basis denies them.

21  79.      Mr. Sarkis also called 911 several times and even filed a police report about the

22  problem, but to no avail.

23  **Answer:**      Niantic lacks knowledge or information sufficient to admit or deny the

24  allegations in paragraph 79, and on that basis denies them.

25  80.      Both Mr. Sarkis and his wife sent numerous emails and complaints to Niantic, using

26  the contact info posted on its website. As early as July 20, 2016—only two weeks after the game was

27  released—he contacted Niantic via its website to request removal of the Pokémon Gym from his

28  property and to complain to them about "vandalism and noise causing my 18 month old baby to be

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

38.

ANSWER TO SECOND CONSOLIDATED AMENDED CLASS
ACTION COMPLAINT - (CASE NO. 3:16-CV-04300-JD)

constantly woke up. Please. I have called the police but they can't help. Please remove this from my yard."

**Answer:**     In response to the allegations in the first sentence of paragraph 80, Niantic admits that it received communications from an individual "requester" identified as "Jwsarkis" and others from a "requester" identified as "Sarkis Jennifer," but lacks knowledge or information sufficient to admit or deny that the individuals are Mr. Sarkis and his wife.  Niantic lacks knowledge or information sufficient to admit or deny the allegations that Mr. Sarkis and his wife consulted Niantic's website to find contact information, and on that basis denies them.  Niantic admits that it received a communication from an individual identified as "Jwsarkis" on July 20, 2016, and that July 20, 2016 is two weeks after *Pokémon GO* was released, but lacks knowledge or information sufficient to admit that the individual is Mr. Sarkis.  Niantic admits that the communication requested that Niantic remove a Gym and contains the language quoted in the last sentence of paragraph 80, together with other text not included in paragraph 80.  To the extent there are any other allegations to which a response is required, Niantic denies the allegations.

81.    On August 3, Niantic told him that it had "removed the PokéStop/Gym in question" and that he "should see these changes reflected soon." But for weeks, the crowds of players kept coming back as if nothing had changed.

**Answer:**     In response to the allegations in the first sentence of paragraph 81, Niantic admits that it sent a communication to an individual identified as "Jwsarkis" on August 3, 2016 and that the communication contains the language quoted in the first sentence of paragraph 81, together with other text not included in paragraph 81, but Niantic lacks knowledge or information sufficient to admit or deny whether the individual is Mr. Sarkis.  Niantic lacks knowledge or information sufficient to admit or deny the allegations in the second sentence of paragraph 81, and on that basis denies them.

82.    On August 11, he wrote to Niantic: "It has been a week and the gym is still here. Please can you expedite its removal." On August 12, he wrote to Niantic: "They gym has not moved yet and the radius has gotten bigger." On August 22, he wrote to Niantic: "This is still an issue. What have you fixed?!" On August 26, he wrote to Niantic: "i am getting more and more people in front of

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

39.

ANSWER TO SECOND CONSOLIDATED AMENDED CLASS
ACTION COMPLAINT - (CASE NO. 3:16-CV-04300-JD)

1  my house and in my yard. please remove this gym ... like you said you would." On September 12, he

2  wrote to Niantic that the "gym is still active." On September 16, he wrote to Niantic: "The gym ... is

3  still active. My family is being harassed. I am begging you to please remove it. It has been 6 weeks

4  since you said you would. My pregnant wife and 18 mo old child cannot go outside any longer

5  because of the crowd in front of our house. Please end this. Please."

6      **Answer:**    In response to the allegations in paragraph 82, Niantic admits that it received

7  communications from an individual "requester" identified as "Jwsarkis" on August 11, 2016, August

8  12, 2016, August 22, 2016, August 26, 2016, and September 12, 2016, but Niantic lacks knowledge

9  or information sufficient to admit or deny whether the individual is Mr. Sarkis. Niantic admits that

10  the communications on these respective dates contain the respective language quoted in paragraph

11  82, together with other text not included in paragraph 82.

12      83.    However, Mr. Sarkis kept seeing groups of *Pokémon Go* players congregating by the

13  sign at least until October 2016.

14      **Answer:**    Niantic lacks knowledge or information sufficient to admit or deny the

15  allegations in paragraph 83, and on that basis denies them.

16      84.    Finally on October 3, he received a response from Niantic. NianticOpsLarry

17  (*Pokémon Go*) wrote to him: "Thanks for your report. We have verified there are no Pokéstops or

18  Gyms at that location."

19      **Answer:**    In response to the allegations in paragraph 84, Niantic admits that it sent a

20  communication from the account "NianticOps Larry" on October 3, 2016 to an individual identified

21  as "Jwsarkis" but lacks knowledge or information to admit or deny whether the individual was Mr.

22  Sarkis. Niantic admits that the communication contained the language quoted in paragraph 84,

23  together with other text not included in paragraph 84.

24      **Melissa Perez**

25      85.    Plaintiff Melissa Perez is a resident of Tulare, California. Her home is on a corner lot

26  within a development, and it has a swimming pool in the backyard.

27      **Answer:**    Niantic lacks knowledge or information sufficient to admit or deny the

28  allegations in paragraph 85, and on that basis denies them.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

40.

ANSWER TO SECOND CONSOLIDATED AMENDED CLASS
ACTION COMPLAINT - (CASE NO. 3:16-CV-04300-JD)

86. In July 2016, she suddenly started seeing large groups gathering in the intersection near her house. They constantly created loud noises at night, disrupting her and her husband's sleep and sometimes causing them to be late for work the next morning, which was particularly problematic because she often worked 16-hour shifts. Her dog would also often bark all night because he could hear the large groups.

**Answer:** Niantic lacks knowledge or information sufficient to admit or deny the allegations in paragraph 86, and on that basis denies them.

87. It turned out that Niantic had designated her pool as either a Pokéstop or a Pokémon Gym.

**Answer:** Niantic lacks knowledge or information sufficient to admit or deny the allegation in paragraph 87, and on that basis denies it.

88. Many of the *Pokémon Go* players trespassed on her lawn, trampled and killed much of the grass, looked over the fence around her pool, pulled and hung off the fence, and even broke planks on the fence. They constantly left empty soda bottles and candy wrappers all over her lawn. She and her husband had to spend hours cleaning up the yard and replacing and fertilizing the grass that had been trampled.

**Answer:** Niantic lacks knowledge or information sufficient to admit or deny the allegations in paragraph 88, and on that basis denies them.

89. She filed a police report, but the police officer told her there was nothing he could do because the trespassers would likely disperse as soon as the police arrived.

**Answer:** Niantic lacks knowledge or information sufficient to admit or deny the allegations in paragraph 89, and on that basis denies them.

90. In May 2017, because of all the broken planks and other damage to the fence, they ended up having to replace the whole fence—costing over $3000 as well as considerable time and aggravation. Even while the fence was being rebuilt, some of the construction materials were stolen, forcing them to spend an extra $100 on fence planks.

**Answer:** Niantic lacks knowledge or information sufficient to admit or deny the allegations in paragraph 90, and on that basis denies them.

Cooley LLP
Attorneys At Law
San Francisco

41.

Answer to Second Consolidated Amended Class
Action Complaint - (Case No. 3:16-cv-04300-JD)

91.     Even after the fence was replaced, some *Pokémon Go* players continued to trespass—and some of them caused additional damage to the fence. In June 2017 and then again in August 2017, Ms. Perez's husband had to replace some of the planks in the newly-built fence.

**Answer:**     Niantic lacks knowledge or information sufficient to admit or deny the allegations in paragraph 91, and on that basis denies them.

### "Sam" Congshan Hao

92.     Plaintiff "Sam" Congshan Hao is a resident of Elmhurst, New York.

**Answer:**     Niantic lacks knowledge or information sufficient to admit or deny the allegations in paragraph 92, and on that basis denies them.

93.     Beginning in July 2016, he suddenly started seeing large groups (sometimes over 70) congregating near his house, often staying as late as 2 a.m. They created lots of noise, sometimes screaming and playing music. They blocked the sidewalk, drank beer, and smoked cigarettes. Some would even lean against the fence around his property or block the front gate.

**Answer:**     Niantic lacks knowledge or information sufficient to admit or deny the allegations in paragraph 93, and on that basis denies them.

94.     It turned out that Niantic had placed a Pokéstop at the intersection near his house. The issue even received media coverage, such as in a *Pix11* report titled "Drunken Pokémon players terrorize Elmhurst building."[17] A city council member, quoted in that article, reported that his office had been "flooded with complaints" such as that "75 to 100 people are playing late at night and partying throwing beer cans, cigarettes, urinating."

**Answer:**     In response to paragraph 94, Niantic denies the allegations in the first sentence because, among other reasons, virtual objects cannot be "placed" "at" a physical location.  Niantic also denies the allegations in the second sentence; the URL cited in footnote 17 does not link to the Pix11 article referenced in paragraph 94.  Niantic lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 94, and on that basis denies the allegations.

95.     Mr. Hao's windows are only 4 feet away from the sidewalk, so the constant noise and

---

[17] Monica Morales, *Drunken Pokemon players terrorize Elmhurst building,* Pix11, July 19, 2016, http://pix11.com/2016/07/19/drunken-Pokémon-hunters-terrorize-elmhurst-building/.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

42.

**ANSWER TO SECOND CONSOLIDATED AMENDED CLASS
ACTION COMPLAINT - (CASE NO. 3:16-CV-04300-JD)**

1   secondhand cigarette smoke were very disruptive to his family's sleep and also their health,

2   particularly for his three young children—then of 5, 3, and 1.5 years of age. None of them could

3   sleep well, the children often cried at night due to the disturbance, the parents worried about their

4   children's lungs, and the family overall suffered considerable mental distress.

5        **Answer:**   Niantic lacks knowledge or information sufficient to admit or deny the

6   allegations in paragraph 95, and on that basis denies them.

7        96.   He called the police several times. Sometimes the police responded by dispersing the

8   game players—but this was barely helpful, as players (maybe the same players, maybe different

9   ones) would always return soon afterwards. Most of the time, the police took no action.

10       **Answer:**   Niantic lacks knowledge or information sufficient to admit or deny the

11  allegations in paragraph 96, and on that basis denies them.

12                          **Bruce Garton**

13       97.   Plaintiff Bruce Garton lives in Nashville, Tennessee. Mr. Garton lives on the property

14  with his wife and two children.

15       **Answer:**   Niantic lacks knowledge or information sufficient to admit or deny the

16  allegations in paragraph 97, and on that basis denies them.

17       98.   In 2016, Mr. Garton witnessed about 3 to 4 people trespassing onto his property per

18  day, and observed about 40-50 cars passing his house per day. Many cars parked in the street idly for

19  long periods of time. Some parked in his driveway. Mr. Garton had to chase people off his property.

20  The nuisance carried on for approximately one month. At the time, Mr. Garton's children were 3

21  years and 11 years old.

22       **Answer:**   Niantic lacks knowledge or information sufficient to admit or deny the

23  allegations in paragraph 98, and on that basis denies them.

24       99.   Mr. Garton believed these were all Pokémon players because he asked one of the

25  individuals, who was male, why he was on his property. The man responded that there was a

26  Pokémon game item on his property that the man was attempting to capture.

27       **Answer:**   Niantic lacks knowledge or information sufficient to admit or deny the

28  allegations in paragraph 99, and on that basis denies them.

Cooley LLP
Attorneys At Law
San Francisco

43.

ANSWER TO SECOND CONSOLIDATED AMENDED CLASS
ACTION COMPLAINT - (CASE NO. 3:16-CV-04300-JD)

100.    The Pokémon players were a constant nuisance to Mr. Garton and his family, causing them to feel unsafe in their own home, because they had no way of knowing whether people could be posing as players just to get onto the property and hurt the family or rob their home. The Gartons worried about their children's safety and were not comfortable having them play outside. The fact that the children were homeschooled made the problem worse.

**Answer:**    Niantic lacks knowledge or information sufficient to admit or deny the allegations in paragraph 100, and on that basis denies them.

101.    Further exacerbating their anxiety, an individual engaging in the Pokémon game was fatally shot in a road rage incident at a cemetery about a mile from the Garton residence.[18] This incident made his family even more nervous.

**Answer:**    Niantic denies that the URL cited in footnote 18 contains a link to the *Tennessean* article referenced in footnote 18.  Niantic lacks knowledge or information sufficient to admit or deny the allegations in the first sentence of paragraph 101, and on that basis denies the allegations.  Niantic lacks knowledge or information sufficient to admit or deny the allegations in the second sentence of paragraph 101, and on that basis denies them.

102.    Although Mr. Garton called the company to complain and to ask that his property be removed from the game, he never received a response.

**Answer:**    Niantic lacks knowledge or information sufficient to admit or deny the allegations in paragraph 102, and on that basis denies them.

**Sally Rogers**

103.    Plaintiff Sally Rogers owns property in Tesuque, New Mexico. Her property is immediately adjacent the Shidoni Foundry, Gallery, and Sculpture Gardens, in Tesuque, New Mexico.

**Answer:**    Niantic lacks knowledge or information sufficient to admit or deny the allegations in paragraph 103, and on that basis denies them.

---

[18] Jason Gonzales, *Nashville police: Man fatally shot after road rage incident*, Tennessean, Dec. 25, 2016, http://www.tennessean.com/story/news/crime/2016/12/25/nashville-police¬investigate s-fatal-road-rage-incident/95 841342/.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

44.

ANSWER TO SECOND CONSOLIDATED AMENDED CLASS
ACTION COMPLAINT - (CASE NO. 3:16-CV-04300-JD)

104.     There are two residences towards the northern end of her property; she resides in one and rents out the other. On the remainder of her property, she has allowed Shidoni to display certain outdoor sculptures and to allow visitors to access those sculptures for viewing and possible purchase. The sculpture garden area is clearly posted as being open from "9:00 a.m. to dusk."

**Answer:**     Niantic lacks knowledge or information sufficient to admit or deny the allegations in paragraph 104, and on that basis denies them.

105.     The two residences on her property are clearly separated from the sculpture garden area by a fence, with a driveway-wide opening in the middle. There are four prominent signs on the fence indicating that these are private residences with no trespassing allowed.

**Answer:**     Niantic lacks knowledge or information sufficient to admit or deny the allegations in paragraph 105, and on that basis denies them.

106.     At some point before July 2016, there had been a "Bacon and Eggs" sculpture displayed in the sculpture garden area of her property. The sculpture was approximately 15 feet away from the fence and 35–40 feet away from Ms. Rogers's residence. By July 2016, that sculpture had been removed.

**Answer:**     Niantic lacks knowledge or information sufficient to admit or deny the allegations in paragraph 106, and on that basis denies them.

107.     In early July 2016, she suddenly noticed (and was puzzled by) a large number of people who started showing up and wandering around her property while holding up their smartphones.

**Answer:**     Niantic lacks knowledge or information sufficient to admit or deny the allegations in paragraph 107, and on that basis denies them.

108.     Having heard news reports about *Pokémon Go* and about various businesses and other locations across the country being inundated with players, she confronted one trespasser and asked what he was looking for. He said he was looking for a Pokéstop and showed her on his iPhone what the Pokéstop looked like. As it turned out, the *Pokémon Go* game displayed a Pokéstop with a picture of the "Bacon and Eggs" sculpture that had previously been on Ms. Rogers's property.

**Answer:**     In response to paragraph 108, Niantic admits there was formerly a PokéStop

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

45.

ANSWER TO SECOND CONSOLIDATED AMENDED CLASS
ACTION COMPLAINT - (CASE NO. 3:16-CV-04300-JD)

1  called "Bacon and Eggs" that has been retired.  Niantic lacks knowledge or information sufficient to

2  admit or deny the remaining allegations in paragraph 108, and on that basis denies them.

3     109. Throughout much of the summer, *Pokémon Go* players wandered all over her

4  property, apparently trying to find the "Bacon and Eggs" sculpture whose picture was displayed with

5  the Pokéstop, but being unable to find it. At many different times, day and night, Ms. Rogers saw

6  people walking back-and-forth and in circles on her property while holding up their smartphones,

7  sometimes singly and sometimes in groups, apparently trying to find a sculpture that was no longer

8  there. Many of the same people came back multiple times, walking around with their smartphones

9  up in circles in the same way.

10    **Answer:**  In response to paragraph 109 Niantic admits there was formerly a PokéStop

11  called "Bacon and Eggs" that has been retired.  Niantic lacks knowledge or information sufficient to

12  admit or deny the remaining allegations in paragraph 109, and on that basis denies them.

13     110. Players frequently walked into the private-residences area—walking through the

14  opening in the fence while completely ignoring the signs clearly indicating private property and

15  warning against trespassing. This happened at all hours of day and night. Often in the morning, she

16  would look out her window and see *Pokémon Go* players in her front yard and parking area,

17  wandering around with their phones held up. She also, several times, directly observed *Pokémon Go*

18  players walk right up to the fence, read the no-trespassing signs, and then blatantly ignore them and

19  enter the private residence area. She even had to chase innumerable people off her property.

20    **Answer:**  Niantic lacks knowledge or information sufficient to admit or deny the

21  allegations in paragraph 110, and on that basis denies them.

22     111. Even when *Pokémon Go* players remained in the sculpture-garden area (without also

23  trespassing into the private-residences area), many would arrive at all hours of the evening and night,

24  even though area was clearly posted as being open from "9:00 a.m. to dusk." They made noise and

25  disrupted her ability to enjoy and use her own home.

26    **Answer:**  Niantic lacks knowledge or information sufficient to admit or deny the

27  allegations in paragraph 111, and on that basis denies them.

28     112. When she asked *Pokémon Go* players to leave her private property—even if late at

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

46.

ANSWER TO SECOND CONSOLIDATED AMENDED CLASS
ACTION COMPLAINT - (CASE NO. 3:16-CV-04300-JD)

1  night—some of them actually cursed at her or became angry simply because she had asked them to

2  leave. Some were drunk and belligerent. She did not always feel safe in dealing with them. She also

3  could not tell if some of them might be scoping out her property for possible theft or burglary under

4  the guise of playing the game.

5  **Answer:**    Niantic lacks knowledge or information sufficient to admit or deny the

6  allegations in paragraph 112, and on that basis denies them.

7  113.    These problems from *Pokémon Go* players were a daily occurrence throughout the

8  summer of 2016 and into the fall. The daily stream of intruders and trespassers made her feel

9  constantly intruded-upon and on-edge about what might happen during the night and after dark. In

10  effect, the game, without her prior knowledge or permission, had completely undermined her ability

11  to lead her normal home life privately and securely.

12  **Answer:**    Niantic lacks knowledge or information sufficient to admit or deny the

13  allegations in paragraph 113, and on that basis denies them.

14  114.    On July 30, 2016, she contacted Niantic by sending the following email:

15  You need to immediately remove this location from your game; this is
16  not a "request." It is a Cease and Desist Order which will be followed
   by legal action if you do not comply. You have made my private
17  property one of your stops and every person who comes there is
   illegally TRESPASSING. The location is at the Shidoni Foundry and
18  Sculpture Gardens, in Tesuque, New Mexico, 87575 USA. You used a
   photo of a sculpture entitled "Bacon and Eggs" as a stop at this
19  location. Shidoni is NOT a public park; the location/stop you have
   used is my private property which I am allowing the foundry/sculpture
20  garden to use. They do not own the location you have made into one of
   your stops -- I do. I do not want a bunch of people tromping all over
21  my property as part of your game. What you have done is invite the
   whole world to property that has my private residence on it, for your
22  own purposes and your own financial gain. Remove this site/stop
   immediately.

23  **Answer:**    In response to the allegations in paragraph 114, Niantic admits that it received

24  a communication from an individual identified as "Srogersllc" on July 30, 2016, and that the

25  communication contained the language quoted in paragraph 114. Niantic lacks knowledge or

26  information sufficient to admit or deny whether the individual was Ms. Rogers, and on that basis

27  denies the allegation.

28  115.    In response, she received only an automated email:

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

47.

ANSWER TO SECOND CONSOLIDATED AMENDED CLASS
ACTION COMPLAINT - (CASE NO. 3:16-CV-04300-JD)

1

2

> Thank you for reporting this PokéStop/Gym. We will review and take appropriate action. You'll receive a follow-up via email once your request has been reviewed.

3   **Answer:**   In response to the allegations in paragraph 115, Niantic admits that it sent a

4   responsive communication to the individual named "Srogersllc" and that the communication

5   contains language similar to that quoted in paragraph 115.

6   116.   She received no other response until November 21, 2016—4 months later—when she

7   received the following email:

8

9

10

> Thank you for your report and please accept our sincere apology for the delay in response due to the unusually high usage of the game, and subsequent requests, for both the removal and addition of game locations. It has taken us longer than we would like to review your request.

11

12

13

> We have found that the number of players visiting locations has eased to a manageable level in the time since the initial excitement of the product launch which is why we wanted to check in to see if this was still a concern.

14

15

16

17

> Due to problems in the past with unwanted removals, before we can take action we need to confirm that you are the owner of this property and that you have the authority to make the final decision on this matter. If you would like to proceed with this request, please reply to this message with the following statement to confirm that you are authorized to make this request: "I am the owner of the property or have authority to make this request with the owner's consent." Please include your title and your phone number.

18

> Once we have received this information we will promptly proceed in reviewing your request.

19   **Answer:**   In response to the allegations contained in paragraph 116, Niantic admits that

20   its response following the response identified in paragraph 115 went to an individual identified as

21   "Srogersllc" on November 21, 2016 and that the communication contained the language quoted in

22   paragraph 116.  Niantic lacks knowledge or information sufficient to admit or deny the allegations as

23   to whether the individual is Ms. Rogers.

24   117.   She responded on November 22, in relevant part:

25

26

27

> I am the owner of this property and have absolute authority to make this "request." However, as noted MONTHS AGO, THIS IS NOT A REQUEST, IT IS AN ORDER FOR NIANTIC TO CEASE AND DESIST.

28

> You sleazy pricks don't seem to realize that you are not in the driver's

seat on this; you are breaking the law and you are violating my property rights, along with the rights of many other private citizens across this continent and the world, who have dealt with the same bunch of idiotic trespassers and property damages that you have unleashed without authorization and consent. Niantic et al has made millions off the inconvenience, intrusion, violation, and misery of others, and yet you blithely take a half a year to respond -- and when you finally do, it is a do-nothing BULLSHIT EMAIL that merely repeats your previous asinine view that you have the right to "decide" whether I have to put up with your shit, vis-à-vis MY PROPERTY. Again, for your thick skulls: MY PROPERTY, not yours.

The class action lawsuit I have joined, along with the US court system, will be the ultimate deciders and I am confident that you will be on the receiving-end of justice, and will be paying for breaking the law over and over again. In the meantime, I will be exercising my right to have trespassers arrested (and my big mean dog probably won't be waiting for the police to arrive). Here's my "suggestion" for you lazy-ass pricks in the meantime: Remove this location immediately, or you and your stupid gamers can and will suffer the consequences - all of them.

(emphasis added).

**Answer:**        In response to the allegations in paragraph 117, Niantic admits that it received a communication from an individual identified as "Srogersllc" on November 22, 2016 and that the communication contained the language quoted in paragraph 117, along with other text not included in paragraph 117. Niantic lacks knowledge or information sufficient to admit or deny the allegations as to whether the individual is Ms. Rogers.

### Deborah J. Pimentel

118.    Plaintiff Deborah J. Pimentel is a resident of Pleasant Grove, Utah.

**Answer:**        Niantic lacks knowledge or information sufficient to admit or deny the allegation in paragraph 118, and on that basis denies it.

119.    In July 2016, she began noticing unfamiliar cars parking immediately adjacent to her home, at odd hours all day and at least as late as midnight, sometimes blocking her driveway. The drivers would generally stay in their cars for 15–30 minutes, sometimes with the lights on and sometimes off, sometimes with the motor on and sometimes off. She could see that the drivers were always holding up their smartphones. On average she saw 3 cars doing this every day; at times, she saw up to 5 at once. These cars often created enough noise to wake her out of a sound sleep.

**Answer:**        Niantic lacks knowledge or information sufficient to admit or deny the

Cooley LLP
Attorneys At Law
San Francisco

49.

ANSWER TO SECOND CONSOLIDATED AMENDED CLASS
ACTION COMPLAINT - (CASE NO. 3:16-CV-04300-JD)

1    allegations in paragraph 119, and on that basis denies them.

2        120.    Around July 31, 2016, she saw a car idling with its headlights off, on the side of her

3    house near the entrance to the backyard. This scared her. Only a few months earlier, her home had

4    been burglarized and she had interrupted the burglars during the burglary. There had also been two

5    separate attempted burglaries since then via the path from the side entrance towards the back door.

6    So she called the police. However, the car was gone by the time the police arrived.

7        **Answer:**    Niantic lacks knowledge or information sufficient to admit or deny the

8    allegations in paragraph 120, and on that basis denies them.

9        121.    Over the next week, as unfamiliar cars kept parking near her house in the same way

10    with the drivers holding up their smartphones, she called the police two more times, both times late

11    at night. The police spoke to one of the drivers and were told that there was a Pokémon Gym right in

12    front of her house. This eased some of her fears, but did nothing for the noise and disruption.

13        **Answer:**    Niantic lacks knowledge or information sufficient to admit or deny the

14    allegations in paragraph 121, and on that basis denies them.

15        122.    Shortly thereafter, she saw a car blocking her front driveway and told them to leave.

16    The driver and passenger were on their phones and she could see animated pictures on their screens.

17        **Answer:**    Niantic lacks knowledge or information sufficient to admit or deny the

18    allegations in paragraph 122, and on that basis denies them.

19        123.    These disruptions slowed down after the summer of 2016, but picked up again in the

20    summer of 2017. In May 2017, she once again noticed unfamiliar cars parking near her house with

21    the drivers holding up their smartphones, as they had before. Around June 2017, she started seeing

22    large groups of people congregating on the sidewalk and sometimes trespassing on her driveway.

23    She has seen at least two people trespassing onto her lawn, and she has recently had to clean litter

24    and cigarette butts on her lawn.

25        **Answer:**    Niantic lacks knowledge or information sufficient to admit or deny the

26    allegations in paragraph 123, and on that basis denies them.

27                                **Loren Morgan**

28        124.    Plaintiff Loren I. Morgan resides in Gahanna, Ohio, in the same neighborhood as the

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

50.

**ANSWER TO SECOND CONSOLIDATED AMENDED CLASS
ACTION COMPLAINT - (CASE NO. 3:16-CV-04300-JD)**

1    Gahanna Historical Society.

2        **Answer:**      Niantic lacks knowledge or information sufficient to admit or deny the

3    allegations in paragraph 124, and on that basis denies them.

4        125.    According to Mr. Morgan, Niantic placed Pokémon game items at the Historical

5    Society, the Log Cabin Home, and the Gazebo, which are all located near Mr. Morgan's home.

6    These items attracted hordes of *Pokémon Go* players at all hours of the night. *Pokémon Go* players

7    trespassed onto Mr. Morgan's property, as well as his neighbor's properties. In addition, the players

8    initiated verbal altercations and littered on and around the properties (litter consisting of beer cans

9    and bottles, candy wrappers, and cigarette butts). Mr. Morgan has suffered sleep deprivation as a

10   result of being woken up by Pokémon players' nighttime activities.

11       **Answer:**      In response to the first sentence of paragraph 125, Niantic admits that there is

12   one *Pokémon Go* point of interest associated with GPS coordinates near 101 S. High Street,

13   Gahanna, Oh 43230.   Niantic lacks knowledge or information sufficient to admit or deny the

14   remaining allegations in the first sentence of paragraph 125, and on that basis denies them. Niantic

15   further denies that virtual objects can be "placed" "at" physical locations.  In response to the second,

16   third, fourth, and fifth sentences of paragraph 125, Niantic lacks knowledge or information sufficient

17   to admit or deny the allegations therein, and on that basis denies them.

18                              **Many Other Examples**

19       126.    These are just a few examples of the consequences of Defendant Niantic's disregard

20   for property rights. Many other examples are easy to find through media coverage and general

21   internet searches.

22       **Answer:**      Niantic denies the allegations in paragraph 126.

23       127.    In a series of tweets on July 9, 2016, Boon Sheridan, a resident of Holyoke,

24   Massachusetts, reported that Niantic had placed a Pokémon gym in his home. By mid-afternoon that

25   day, Sheridan reported that "I've counted 15 people stopping by and lingering in their phones so far.

26   I think at least three car visits as well."[19] He commented that he "[c]an't wait to talk to my neighbors

27   _____

28   [19]    Boon    Sheridan    (@boonerang),    Twitter    (July    9,    2016,    11:46    AM),
     https://twitter.com/boonerang/status/751849914154483712.

about it. 'So, all these people pulling up at all hours? We don't know them... and we can't stop it. '"[20] He also "pointed out that the problems could easily lead to the value of his house going down and issues with his neighbours. The strange behaviour of people around his location – people turning up at all times and then leaving soon after – could easily lead people to speculate that drug dealing or other crime was happening there."[21] In an interview with the online publication Buzzfeed, Sheridan "said it is a little odd that *he has no control over his home being a significant part of the game, and never signed off on being included*."[22]

**Answer:**      Niantic denies that it placed a Gym in Boon Sheridan's home as virtual objects cannot be "placed" "in" a physical location.  Niantic admits that the URLs cited in footnotes 19 through 21 contain the language quoted in paragraph 127, as well as other text not quoted. Niantic denies that the URL cited in footnote 22 contains a link to a *Buzzfeed* article referenced in paragraph 127, and notes that one day after effecting the item removal requested by Mr. Sheridan, Niantic received a message from him that said "Any chance you can put one in the park as requested?…and thanks for the rapid response earlier. I appreciate it."  Niantic lacks knowledge or information sufficient to admit or deny the allegations in the final sentence of paragraph 127 and on that basis denies the allegations. Niantic lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 127 and on that basis denies the allegations.

128.    Likewise, as reported in the online videogame publication *Gamerant*, Niantic placed a Pokéstop at a private residence in Albuquerque, New Mexico, already famous as a filming location for the television show *Breaking Bad. Gamerant*'s article stated, in part, that the home's "yard is being besieged by intrepid *Pokémon Go* trainers who may not be aware they're stepping onto private property."[23]

---

[20]    Boon    Sheridan    (@boonerang),    Twitter    (July    9,    2016,    8:31    PM), https://twitter.com/boonerang/status/751982090003120132.

[21] Andrew Griffin, *Pokémon Go Turns Man's Home Into a 'Gym', Causing Chaos*, The Independent, July 10, 2016, http://www.independent.co.uk/life-style/gadgets-and-tech/gaming/pokemon-go-man-s-house-accidentally-turned-into-a-gym-causing-huge-problems-a7129756.html (emphasis added).

[22] Stephanie McNeal, *People Are Flocking To This Guy's House Because It's A Gym On Pokémon Go*, Buzzfeed, July 10, 2016, https://www.buzzfeed.com/stephaniemcneal/Pokémon¬go-house?utm_term=.pqWaeK3GPV#.pvO6bRYEBQ (emphasis added)

[23]    John    Jacques,    *6    Strange    Pokémon    Go    PokeStops,*    GameRant,

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Answer:**    Regarding the allegations in the first sentence of paragraph 128, Niantic denies that virtual objects can be "placed" "at" a physical location.  Niantic admits that there was a *Pokémon Go* point of interest associated with GPS coordinates near 3828 Piermont Dr., Albuquerque, New Mexico, and that Niantic has removed it.  Niantic denies that the URL cited in footnote 23 links to the *Gamerant* article referenced in paragraph 128.  Niantic lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 128, and on that basis denies them.

129.    Incredibly, Niantic even placed ***at least three Pokéstops within the United States Holocaust Memorial Museum*** in Washington, D.C. (see Figure 8), prompting the museum to state that "Playing the game is not appropriate in the museum, which is a memorial to the victims of Nazism. We are trying to find out if we can get the museum excluded from the game." Similarly, a representative of Mobile Memorial Gardens, a cemetery in Mobile, Alabama, has objected to the presence of *Pokémon Go* players on its property, stating "This is private. I owe it to the families we serve to provide a sense of decorum here."



*Figure 8*

**Answer:**    In response to the first sentence of paragraph 129, Niantic admits that it retired at least three points of interest from *Pokémon Go* that were associated with GPS coordinates near the United States Holocaust Memorial Museum in Washington, D.C. Niantic lacks the knowledge or information sufficient to admit or deny the remaining allegations contained in the first sentence of

https://gamerant.com/strange¬pokemon-go-pokestops/ (last visited Aug. 28, 2017).

paragraph 129, including regarding the authenticity of Figure 8, and on that basis denies them.  In response to the second sentence of paragraph 129, Niantic admits that a representative of Mobile Memorial Gardens requested removal of, and Niantic promptly removed, a point of interest from *Pokémon GO*, and notes that the representative thanked Niantic, confirmed the point of interest was "gone," and said "[we] do not wish to disparage the game, the players, or your business in any way." Niantic denies any remaining allegations in paragraph 129, including the allegation that virtual objects can be "placed" "within" a physical location.

130.   Niantic blithely acknowledged its placement of Pokéstops on private property, advising users on the *Pokémon Go* website: "If you can't get to the Pokéstop because it's on private property, there will be more just around the corner, so don't worry!"[24] (See Figure 9.)



*Figure 9*

* * * * *

**Answer:**      Niantic admits that the URL cited in footnote 24 contains the language quoted in paragraph 130 and displayed in Figure 9.  Niantic denies that Niantic made the quoted statement. Niantic denies that it placed PokéStops on private property as virtual objects cannot be "placed" within or "on" a physical location.  Niantic denies any remaining allegations in paragraph 130.

131.   Milwaukee County responded to these problems by passing an ordinance requiring

---

[24] http://www.Pokemongo.com/en-us/explore/, accessed on August 28, 2017.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

54.

ANSWER TO SECOND CONSOLIDATED AMENDED CLASS
ACTION COMPLAINT - (CASE NO. 3:16-CV-04300-JD)

1  Niantic and any other creators of "location-based augmented reality games" to obtain a permit before

2  incorporating any county park locations into the game. According to the text of the ordinance, this

3  was necessary because "the sudden mass influx of *Pokémon Go* players in Lake Park, in particular

4  since July 6, 2016, has resulted in ***unanticipated consequences, including, but not limited to:***

5  ***increased litter and waste in the park, inadequate bathrooms to accommodate the high ratio of***

6  ***people, after-hours violations, enhanced security oversight, unauthorized vendors, significant***

7  ***daily traffic congestion, parking violations, trampled grass***, and related concerns about sensitive

8  flora and fauna areas."[25]

9       **Answer:**      In response to paragraph 131, Niantic admits that Milwaukee County passed

10  an ordinance requiring game makers to obtain a permit before introducing a game into Milwaukee

11  County Parks.  Niantic understands that this ordinance was later struck down.  Niantic further admits

12  that the text of the ordinance includes the quoted language, without bolding or italics, together with

13  other text not included in paragraph 131.  Niantic denies the remaining allegations in paragraph 131.

14       132.   The County Board explained why the permit requirement was necessary:

15  The permit requirement is in response to the ***County Parks***
16  ***Department's inability last summer to hold Niantic Inc. and its***
    ***Pokémon franchise financially accountable for damage done at Lake***
17  ***Park after daily throngs of players packed the park*** beginning in July,
    Supervisor Sheldon Wasserman said.

18  ***The county was not notified when Niantic placed game characters at***
19  ***numerous historic landmarks within the park***, officials said.

20  ***County taxpayers were stuck paying for "thousands of dollars" of***
    ***damage to the park,*** according to Wasserman. Lake Park neighbors
21  took photos and recorded videos of ***empty beer cans, trash piles,***
    ***trampled turf and overflowing toilets***. There were complaints of
22  traffic congestion, late-night activity and unauthorized vendors.

23  The permit requirement — adopted Thursday by the board — targets
    creators of the games and does not restrict public access to the parks,
24  Supervisor Marcelia Nicholson said in support of the ordinance.[26]

25  _____
    [25]   Milwaukee   County,   Wisc.,   Ordinance   16-637   (Feb.   2,   2017),   available   at
26  https://milwaukeecounty.legistar.com/View.ashx?M=F&ID=4804249&GUID=F4E4091F-6450-
    42FB-B949-0A9EB71EC3B6 (emphasis added).
27  [26] Don Behm, *Milwaukee County requires parks permit for Pokémon*, Post Crescent, Feb. 3, 2017,
    http://www.postcrescent.com/story/news/local/milwaukee/2017/02/03/milwaukee-county¬requires-
28  parks-permit-pokmon/97444996/

**Answer:** Niantic admits that the URL cited in footnote 26 contains the language quoted in paragraph 132 without bolding or italics, together with other text not included in paragraph 132, but Niantic denies that the County Board "explained" the permit requirement as quoted in paragraph 132 and denies the other allegations contained therein.

133. More recently, as Niantic has updated the game in various attempts to keep players interested, the social and real-world impacts of the game have only gotten more and more prominent.

**Answer:** In response to paragraph 133, Niantic admits that it updates *Pokémon GO* to enhance players' experience. The remaining allegations in paragraph 133 consist of Plaintiffs' legal conclusions, argument, and characterization of their allegations, which do not require a response; to the extent a response is required, Niantic denies any remaining allegations in paragraphs 133.

134. In February 2017, Niantic introduced a large number of new Pokémon creatures. In Kimberly Point Park in Neenah, Wisconsin (as in many other places), this caused a major disruption:

> *The Generation 2 release brought out players in droves*. It coincided with a week of unseasonably warm weather that melted snow and thawed frozen ground. *The heavy foot traffic turned the park lawn into a muddy mess. City crews had aerated and reseeded the lawn last fall to repair damage done by Pokémon Go players*.

> "It was just that perfect storm, with the new release of characters and great weather," Kading said.

> Upon realizing the damage, Kaufert ordered crews to fence the area to prevent further harm. He said the number of people in the park was estimated at 350 several days after the Gen 2 release.

> "The park was not built for that many people," he said.

**Answer:** In response to the first sentence of paragraph 134, Niantic admits that it released new Generation 2 Pokémon in February 2017. In response to the remaining allegations in paragraph 134, Niantic lacks the knowledge or information sufficient to admit or deny the allegations contained therein, and on that basis denies the allegations.

135. Recently, Niantic has updated the game by adding a new "motivation system" affecting how players interact with Pokémon Gyms and by adding a new "Raid Battle" feature allowing multiple players to work together "to defeat an extremely powerful Pokémon known as the Raid Boss."

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

56.

ANSWER TO SECOND CONSOLIDATED AMENDED CLASS
ACTION COMPLAINT - (CASE NO. 3:16-CV-04300-JD)

1       **Answer:**      In response to paragraph 135, Niantic admits that it added a "motivation

2   system" in June 2017, which, along with other changes, affected how players interact with Gyms.

3   Niantic further admits that it added a "Raid Battle" feature in June 2017 and that the feature enables

4   players "to defeat an extremely powerful Pokémon known as the Raid Boss."  In response to any

5   remaining allegations in paragraph 135, Niantic denies them.

6       136.    By design, Raid Battles can only be played in groups.

7       **Answer:**      In response to paragraph 136, Niantic denies the allegations therein.

8       137.    This created a resurgence of interest in the game, thus predictably creating a

9   resurgence of real-world impacts on all of the physical places that players actually played the game.

10   As one article explained:

11           *Pokémon Go* introduced an all new raid system. They later on
            introduced Legendary Pokémon as raid bosses and everyone wants a
12           shot at them. Trainers all over the world flocked to locations that were
            flagged as gyms.
13

14           However, some of these gyms happen to be attached to private
            property. They are also attached to institutions like police and fire
15           departments. Not to mention, they are also attached to holy places such
            as churches.
16
            * * *
17
            ***Due to the placement of some of the gyms and at times the placement
18           of rare Pokémon, players are venturing into places they shouldn't be***.

19           In Connecticut for example, a local Newington Fire Department voice
            their concerns over ***players getting in the way while they are***
20           ***responding to calls.***

21           "The volunteer fire department took to Facebook on Tuesday, saying it
            had come to their attention that the fire headquarters on Main Street is
22           a location of interest for the *Pokémon Go* players," according to
            WFSB.
23
            "Fire officials said while they support the community and visitors,
24           ***they can't have their parking lot filled with 'Pokémon hunters,'***
            ***because those spots are for firefighters responding to calls.***"
25
            ***It's easy to see how this could become a hazard for both players and***
26           ***firefighters.*** For some players in rural areas, there aren't many options.
            A lack of monuments or notable buildings cause Pokéstops and gyms
27           to appear in areas they probably shouldn't.

28           ***This is at no fault of the players. Some stops and gyms in the game***
            ***are poorly located in areas where players could be admonished for***

1

2

> *playing in. It is important to note that trainers of all ages play the game, so while some understand the right and wrong places, others may not be so understanding.*[27]

3

**Answer:**        Niantic admits that the URL cited in footnote 27 contains the language quoted

4

in paragraph 137 without bolding or italics, together with other text not included in paragraph 137.

5

Niantic otherwise denies all the allegations contained therein.

6

### Without Being Able to Exploit The Private Property Of Others, Niantic's Business Model

7

### Would Be Severely Weakened

8

138.    *Pokémon Go* has been immensely profitable for Niantic. The game's profitability

9

derives from its popularity, which, in turn, derives in large part from its augmented reality

10

experience, in which playing *Pokémon Go* turns a user's surroundings into a virtual world of

11

beacons to be activated and Pokémon to be captured.

12

**Answer:**        In response to paragraph 138, Niantic admits that *Pokémon GO* has earned

13

profits for Niantic.  Niantic further admits that Niantic's profits derive in part from *Pokémon GO*'s

14

popularity with players.  Niantic denies the remaining allegations in paragraph 138.

15

139.    But as noted above, the game inherently requires large groups of players congregating

16

in close physical proximity, which creates obvious foreseeable costs and expenses and logistical

17

challenges.

18

**Answer:**        In response to paragraph 139, Niantic denies the allegations.

19

140.    Thus, to create that immersive world, Niantic made unauthorized use of Plaintiff's

20

and other Class members' property by placing Pokéstops and Pokémon gyms thereupon or nearby.

21

In so doing, Niantic has caused *Pokémon Go*'s millions of players to make unwanted incursions onto

22

the properties of Plaintiffs and other members of the class—a clear and ongoing invasion of their use

23

and enjoyment of their land that has caused significant harm to Plaintiffs and the other members of

24

the class and from which Niantic has profited and continues to profit.

25

**Answer:**        In response to paragraph 140, Niantic denies the allegations.

26

---

27

28

[27] Navi, *Pokémon Go Resurgence Raises Concerns On Trespassing*, Neurogadget, July 26, 2017, http://neurogadget.net/2017/07/26/Pokémon-go-resurgence-raises-concerns-trespassing/55579 (emphases added).

141.     If Niantic had to pay for the foreseeable physical expenses of having large groups of players congregating for hours and hours, it would have a very different business model.

**Answer:**      Paragraph 141 consists of Plaintiffs' legal conclusions, argument, and characterization of their allegations, which do not require a response; to the extent a response is required, Niantic denies the allegations.

142.     For example, Niantic produced and hosted "*Pokémon Go* Fest" in Grant Park in Chicago on July 22, 2017. Niantic's advertising for the event promised the chance to capture rare Pokémon creatures and to work with thousands of other players on various challenges with special in-game rewards. Niantic sold tickets for $20, and it expected 20,000 attendees.

**Answer:**      In response to the first sentence of paragraph 142, Niantic admits the allegations.  In response to the second sentence of paragraph 142, Niantic admits that advertising for *Pokémon GO* Fest included a description of the chance to "[w]ork together with thousands of Trainers in the park and millions around the world to complete challenges throughout the day and unlock amazing in-game rewards globally," and to "[c]atch a wide variety of Pokémon, including some that have never been seen before in Grant Park."  Niantic denies any remaining allegations in the second sentence of paragraph 142.  In response to the third sentence of paragraph 142, Niantic admits the allegations.

143.     The event was a disaster.

**Answer:**      Niantic denies the allegation in paragraph 143.

144.     Due to Niantic's failure to prepare for the number of attendees, many of them had to wait in line for hours to enter. Just before noon—two hours after the start time—Twitter user @Rager67 commented, "Umm you know you have 75% of PAYING customers outside still? Probably 2-3 hours from getting in the very small park. What were you thinking?"[28]

**Answer:**      Niantic admits that the URL cited in footnote 28 contains the language quoted in paragraph 144.  Niantic denies all other allegations in paragraph 144.

145.     Once players were able to enter the park, many were unable to access the game

---

[28]   Andrew   J.   Rager   (@Rager67),   Twitter   (July   22,   2017,   8:52   AM), https://twitter.com/Rager67/status/888788955461767170.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

59.

**ANSWER TO SECOND CONSOLIDATED AMENDED CLASS
ACTION COMPLAINT - (CASE NO. 3:16-CV-04300-JD)**

servers due to technical issues with Niantic's servers and software—the kind of logistical problem that Niantic presumably should have been best able to anticipate and plan for.

**Answer:**      In response to paragraph 145, Niantic admits that software and network problems prevented many people from being able to connect reliably to *Pokémon GO* during *Pokémon GO* Fest.  Niantic denies the remaining allegations in paragraph 145.

146.   Many attendees were not even able to connect to the internet because the crowd overloaded the cellular towers and mobile data networks in the area—a widely-known problem at large events of any kind, and another problem that Niantic, a software company, should have been most able to anticipate and plan for.

**Answer:**      Niantic admits that software and network problems prevented many people from being able to connect reliably to *Pokémon GO* during *Pokémon GO* Fest.  Niantic lacks knowledge or information sufficient to admit or deny whether that was "a widely-known problem at large events of any kind," and on that basis denies the allegations.  Niantic denies the remaining allegations in paragraph 146.

147.   As one article summarized:

> In case you missed it: ***Pokémon Go Fest went about as poorly as it could have***. Visitors who traveled from far and wide spent hours in the blistering sun, unable to play the game due to massive bugs and server errors. No one felt the heat more than Niantic, the game's developer, which was s***hocked by just how much of a disaster the event was***.

> "Obviously they can't completely make it up to all the people who have come out to Chicago today, but they want to extend the fact that they're extremely apologetic and unhappy with the process and the results," a spokesperson told a small group of press on behalf of the development team toward the end of the event. "So hopefully this is something that we will never see replicated again, learn from this and move on."

> The developer already started to make amends during *Pokémon Go* Fest. Attendees were frustrated — and loud about it — by their inability to play the game during the day, which led Niantic to offer compensation. First, the company promised $100 of in-game currency to all ticket holders. Not long after that, Niantic offered full refunds to everyone for their $20 wristbands.

> "Just know that the staff here are pretty horrified with the results, so they want to make good as fast as possible," the spokesperson told us, just before Niantic put out a much softer official apology on its website.

Cooley LLP
Attorneys At Law
San Francisco

60.

Answer to Second Consolidated Amended Class
Action Complaint - (Case No. 3:16-cv-04300-JD)

1
2

"I'm super sorry guys — I'm really sorry especially for everyone who traveled international, East Coast, from all over," he continued telling press. "So this clearly was not what we were hoping for today. Thanks for your patience."[29]

3
4
5

**Answer:**        Niantic admits that the URL cited in footnote 29 contains the language quoted in paragraph 147 without bolding or italics, together with other text not included in paragraph 147. Niantic otherwise denies all the allegations contained therein.

6
7
8
9
10
11

148.    All of this suggests that Niantic lacks the ability to provide and manage and maintain usable physical space where players can enjoyably play the game. Therefore, it is much easier and more profitable for Niantic to have its game players congregate on or near property that is owned and maintained by other people, thus allowing Niantic to avoid the financial expenses and logistical challenges inherent in a game requiring large groups of players to congregate in close physical proximity for extended periods.

12

**Answer:**        In response to paragraph 148, Niantic denies all the allegations therein.

13
14
15
16
17

149.    Moreover, the nature of the game ensures that the only way for Niantic to keep players interested is to keep adding content. But because the gameplay itself is so simple and repetitive (largely by design, because this makes the game accessible enough to go viral), the primary source of depth in the game is the need for real-world travel and the social engagement inherent in large groups of players congregating in close physical proximity.

18
19

**Answer:**        Niantic admits that real-world travel and social engagement can be elements of the game.  Niantic denies all other allegations contained in paragraph 149.

20
21
22

150.    For example, the recently-added "Raid Battles" feature led to a major resurgence of interest in the game because it fosters precisely this kind of collaborative gameplay among large groups of players all in the same physical place.

23
24
25
26

**Answer:**        Niantic admits that following the introduction of Raid Battles, player interest in *Pokémon GO* appeared to increase for a time.  However, Niantic lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 150, and on that basis denies the

27
28

[29]  Allegra Frank, Niantic 'horrified' by *Pokémon Go* Fest, Polygon, July 24, 2017, https://www.polygon.com/2017/7/24/16019576/Pokémon-go-fest-disaster.

1    allegations.

2         151.   But collaborative gameplay among large groups of players all in the same physical

3    place requires an actual physical place, and it creates significant logistical challenges that someone

4    has to be responsible for. Niantic has shown that it lacks the capability to provide any [sic] manage

5    that physical place providing and managing that space—which means Niantic can only keep players

6    interested (and thus keep up its revenue streams) if it keeps being able to exploit physical places

7    managed by others.

8         **Answer:**      Paragraph 151 consists of Plaintiffs' legal conclusions, argument, and

9    characterization of their allegations, which do not require a response; to the extent a response is

10   required, Niantic denies the allegations.

11        152.   One commentator explained just how quickly players are likely to lose interest if

12   Niantic stops giving them new opportunities for collaborative gameplay on a regular basis:

13           *Legendary Raids have been a vital addition to the game, giving us a*
             *reason to collaborate with other players,* a destination for previously
14           aimless Pokéwalks and, crucially, top-tier rewards that make the game
             feel a whole lot less stingy in the past. They take time, however: time
15           to walk, time to wait on other people, time to head to the next one and
             make sure you've still got a group together. That's all good and fine,
16           but it means that keeping up with the game takes a bit more of a
             commitment than it used to, and people appear to be getting worn
17           out....

18           *The casual player might be a bit confused: "just don't play the*
             *game" would be their obvious answer. But that doesn't really work*
19           *for either the more dedicated player or the developer, which relies on*
             *said dedicated players for its revenue.* Hardcore players want all the
20           new rewards that have been made available, *and taking a step back*
             *from it takes you out of the rhythms of daily play*. If you start to feel
21           overwhelmed, you might indeed stop playing for a bit, and that bit
             might turn into much longer if the game continues to add more
22           rewards in without you. *It's a balancing act to keep things engaging*
             *without throwing too much at people. Addicts don't leave*
23           *Legendaries on the table, but they also don't know when to stop*.

24           The problem, of course, is that it's going to be awfully hard to take
             Legendary Raids away for *any period of time will remind us just how*
25           *hollow the game is at the core*. I've already completed my Pokédex
             and assembled a team strong enough to make a solid contribution to
26           most Raids currently available: all that's left for me right now is
             grinding my level up and slowly powering up an even wider array of
27           Pokémon. I'll still do it, because it's nice outside and I just got this in
             the mail, but *Legendary Raids are really what keep me going at this*
28           *point. Taking them away would easily knock me back to playing on*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

62.

**ANSWER TO SECOND CONSOLIDATED AMENDED CLASS
ACTION COMPLAINT - (CASE NO. 3:16-CV-04300-JD)**

1    *the weekends, if that*.

2    Other games have limited time events as well, but more content in the
     middle helps to build a more natural rhythm into the game. *Pokémon
3    Go* could keep us entertained with NPC battles, real daily quests, or
     PvP fighting, but all of those remain little more than mirages on the
4    horizon. **Pokémon Go is a game that sucks you in when it adds new
     content or even just tweaks reward values with a new event, but a
5    few weeks of playing can burn you out and leave you aimless until
     the next content drop**. Constant Legendaries risk becoming part of
6    that background noise rather than the special events that they are. That
     will mean fewer groups will form to take them down and they'll lose
7    that focus that makes them work.[30]

8    **Answer:**        The URL cited in footnote 30 does not link to the *Forbes* article quoted in

9    paragraph 152.  Niantic lacks knowledge or information sufficient to admit or deny the allegations

10   that the quoted language appears in the referenced article, and on that basis denies the allegations.

11   Niantic denies all remaining allegations in paragraph 152.

12          **The Requested Injunction Would Cost Niantic At Least $5 Million**

13          153. In this case, Plaintiffs are seeking an injunction requiring Niantic to remove all

14   Pokéstops and Pokémon Gyms that are within 100 meters of any private property unless the property

15   owner has given prior authorization for the placement. The injunction would also forbid Niantic

16   from placing any new Pokéstops or Pokémon Gyms within 100 meters of any private property unless

17   the property owner has given prior authorization for the placement. Such an injunction is necessary

18   to protect property owners from trespass, property damage, noise, and other interferences to their

19   property rights and to their ability to use and enjoy their property.

20          **Answer:**        Niantic denies the allegations in the last sentence of paragraph 153.  Niantic

21   admits that the SAC seeks the injunctive relief described in the first two sentences of paragraph 153.

22          154.    However, such an injunction would significantly undermine Niantic's ability to keep

23   players interested in the game. In densely-populated areas like New York City or San Francisco,

24   Pokéstops and Pokémon Gyms would likely be relegated to large parks such as Central Park. Many

25   players would not be able to play on a regular basis, in the same way that many Manhattanites do not

26   ---

27   [30] Dave Thier, '*Pokémon Go*:' *Legendary Fatigue Is Real, Especially With Mewtwo On The Way,*
     Forbes,   Aug.   16,   2017,   https://www.forbes.com/sites/davidthier/2017/08/16/pokemon-
28   go¬legendary-fatigue-is-real-especially-with-mewtwo-on-the-way/#3d476c8929f4        (emphases
     added).

Cooley LLP
Attorneys At Law
San Francisco

63.

**Answer to Second Consolidated Amended Class
Action Complaint - (Case No. 3:16-cv-04300-JD)**

have easy daily access to somewhere they can play soccer or football.

**Answer:**       In response to paragraph 154, Niantic admits that the requested injunctive relief would substantially and impermissibly damage Niantic's ability to do business and operate *Pokémon GO*.  In response to the other allegations in paragraph 154, Niantic lacks the knowledge or information sufficient to admit or deny the allegations, and on that basis denies the allegations.

155.    For many of the reasons detailed supra at ¶¶ 33–49, 138–152, a smaller gameboard—with fewer Pokéstops and fewer Pokémon Gyms—would make *Pokémon Go* a less appealing game because there would simply be less to do. Many players would play less often, others would stop playing at all, and far fewer people would be making in-game purchases of PokéCoins or Legendary Raid Passes. This would significantly undercut Niantic's revenue streams from the game.

**Answer:**       In response to paragraph 155, Niantic admits that the requested injunctive relief would substantially and impermissibly damage Niantic's ability to do business and operate *Pokémon GO*.  In response to the other allegations in paragraph 155, Niantic lacks the knowledge or information sufficient to admit or deny the allegations, and on that basis denies the allegations.

156.    In addition, an injunction would impose administrative costs on Niantic, such as for removing existing Pokéstops and Pokémon Gyms, keeping much closer track of private property locations, and communicating with property owners attempting to obtain their consent.

**Answer:**       In response to paragraph 156, Niantic admits that the injunctive relief sought in the SAC would impose costs on Niantic.  Niantic lacks knowledge or information sufficient to admit or deny the remaining allegations, and on that basis denies the allegations.

157.    Thus, such an injunction would decrease Niantic's revenue from *Pokémon Go* by 2%, *at the very least*. As noted above, *Pokémon Go* has generated $424 million in revenue in the United States in one year. Thus, such an injunction would cost Niantic at least $8.48 million.

**Answer:**       In response to paragraph 157, Niantic admits that the injunctive relief sought in the SAC would impose costs on Niantic.  In response to the allegation that *Pokémon GO* has generated $424 million in revenue in the United States in one year, Niantic admits that from July 6, 2016 to July 5, 2017 *Pokémon Go's* U.S.-based gross revenue was at least $424 million.  To the extent there are further allegations in paragraph 157, Niantic lacks the knowledge or information

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

64.

ANSWER TO SECOND CONSOLIDATED AMENDED CLASS
ACTION COMPLAINT - (CASE NO. 3:16-CV-04300-JD)

1   sufficient to admit or deny them, and on that basis denies the allegations.  Also, paragraph 157

2   consists of Plaintiffs' legal conclusions, argument, and characterization of their allegations, which do

3   not require a response; to the extent a response is required, Niantic denies the allegations.

4                                   **CLASS ACTION ALLEGATIONS**

5          158.   Plaintiffs bring this lawsuit as a class action on behalf of themselves and all other

6   similarly situated as members of the proposed Class pursuant to Federal Rules of Civil Procedure

7   23(a) and (b)(2) and/or (b)(3). This action satisfies the numerosity, commonality, typicality,

8   adequacy, predominance, and superiority requirements of those provisions.

9          **Answer:**      Niantic admits the SAC purports to bring a lawsuit as described in the first

10  sentence of paragraph 158.  Niantic denies that Plaintiffs can maintain this action as a class action

11  under Federal Rules Civil Procedure 23(a), (b)(2), and/or (b)(3).   The remaining allegations in

12  paragraph 158 consist of Plaintiffs' legal conclusions, argument, and characterization of their

13  allegations, which do not require a response.  To the extent that the remaining allegations require a

14  response, Niantic denies the allegations therein.

15         159.   The proposed nationwide class (the "Class") Plaintiffs seek to represent is defined as

16  follows:

17                  All persons in the United States who own or lease property within 100
18                  meters of any location that Niantic has designated, without prior
                    consent of such property owner or lessee, as a Pokéstop or Pokémon
19                  Gym in the *Pokémon Go* mobile application.

20         **Answer:**      Niantic admits that Plaintiffs purport to bring this action as a class action and

21  that paragraph 159 describes the class Plaintiffs purport to represent.  Niantic denies all remaining

22  allegations in paragraph 159.

23         160.   Excluded from the Class are Defendant; any entity or division in which it has a

24  controlling interest; its legal representatives, officers, directors, assignees, and successors; and its

25  current or former employees.

26         **Answer:**      Niantic admits that Plaintiffs purport to bring this action as a class action and

27  that the SAC provides that Plaintiffs wish to exclude from the class the persons and entities

28  described in paragraph 160.  To the extent paragraph 160 contains legal conclusions, argument, and

Cooley LLP
Attorneys At Law
San Francisco

65.

**Answer to Second Consolidated Amended Class
Action Complaint - (Case No. 3:16-cv-04300-JD)**

characterizations of Plaintiffs' allegations, it does not require a response. To the extent paragraph 160 requires a response, Niantic denies the allegations therein.

161. Plaintiffs reserve the right to amend the Class definitions and to add additional sub-Classes as appropriate if discovery and further investigation reveal that the Class should be expanded, divided into sub-Classes, or modified in any other way.

**Answer:** Paragraph 161 consists of Plaintiffs' legal conclusions and argument and does not require a response. To the extent paragraph 161 requires a response, Niantic denies the allegations therein.

**Numerosity & Ascertainability**

162. Although the exact number of Class members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable.

**Answer:** Paragraph 162 consists of Plaintiffs' legal conclusions, argument, and characterization of their allegations, which do not require a response. To the extent that paragraph 162 requires a response, Niantic denies the allegations therein.

163. The disposition of the claims of these Class members in a single action will provide substantial benefits to all parties and to the Court. Class members are readily identifiable from information and records in Defendant's possession, custody, or control.

**Answer:** Paragraph 163 consists of Plaintiffs' legal conclusions, argument, and characterization of their allegations, which do not require a response. To the extent that paragraph 163 requires a response, Niantic denies the allegations therein.

**Typicality**

164. Plaintiffs' claims are typical of the claims of the Class, as Plaintiffs and the other members of the Class sustained damages arising out of the same wrongful conduct by Defendant, as alleged herein.

**Answer:** In response to Paragraph 164, Niantic denies that it engaged in any wrongful conduct or damaged Plaintiffs and the other members of the putative class. Moreover, Paragraph 164 consists of Plaintiffs' legal conclusions, argument, and characterization of their allegations,

which do not require a response.  To the extent that paragraph 164 requires a response, Niantic denies the allegations therein.

**Adequate Representation**

165.    Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel with substantial experience in prosecuting complex and class action litigation nationwide.

**Answer:**    The first sentence of paragraph 165 consists of Plaintiffs' legal conclusions, argument, and characterization of their allegations, which do not require a response; to the extent the first sentence of paragraph 165 requires a response, Niantic denies the allegations therein.   In response to the second sentence of paragraph 165, Niantic lacks knowledge or information sufficient to admit or deny the allegations therein, and on that basis denies them.

166.    Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class, and have the financial resources to do so. Neither Plaintiffs nor their counsel have interests adverse to those of the Class.

**Answer:**    Niantic lacks knowledge or information sufficient to admit or deny the allegations in the first sentence of paragraph 166, and on that basis denies them.  Niantic lacks knowledge or information sufficient to admit or deny the second sentence of paragraph 166, and on that basis denies the allegations.  Even if Niantic did have the information or knowledge sufficient to admit or deny the second sentence of paragraph 166, that sentence consists of Plaintiffs' legal conclusions, argument, and characterization of their allegations, which do not require a response.

**Predominance of Common Issues**

167.    There are numerous questions of law and fact common to Plaintiffs and Class members that predominate over any question affecting only individual Class members, the answer to which will advance resolution of the litigation as to all Class members. These common legal and factual issues include, inter alia:

a.     whether Niantic designated GPS coordinates located on private property as Pokéstops or Pokémon gyms;

b.     whether Niantic's conduct constituted a trespass and/or nuisance at common law and

ANSWER TO SECOND CONSOLIDATED AMENDED CLASS
ACTION COMPLAINT - (CASE NO. 3:16-CV-04300-JD)

1    if so, what remedies are available by law;

2          c.    whether the Court should enjoin Niantic from continuing to engage in the conduct

3    complained of herein;

4          d.    the appropriate measure of relief, including but not limited to a preliminary and/or

5    permanent injunction; and

6          e.    the extent of the damages caused by Defendant's acts.

7        **Answer:**    Paragraph 167 consists of Plaintiffs' legal conclusions, argument, and

8    characterization of their allegations, which do not require a response; to the extent paragraph 167

9    requires a response, Niantic denies the allegations therein.

10   <div align="center">**Superiority**</div>

11       168.    Plaintiffs and other Class members have all suffered and will continue to suffer harm

12   and damages as a result of Defendant's unlawful and wrongful conduct. A class action is superior to

13   other available methods for the fair and efficient adjudication of this controversy.

14       **Answer:**    Niantic denies that it has engaged in unlawful or wrongful conduct or harmed

15   or damaged Plaintiffs and the other members of the putative class.  The remaining allegations in

16   paragraph 168 consists of Plaintiffs' legal conclusions, argument, and characterization of their

17   allegations, which do not require a response; to the extent the remaining allegations in paragraph 168

18   require a response, Niantic denies the allegations therein.

19       169.    Absent a class action, most Class members would likely find the cost of litigating

20   their claims prohibitively high and would therefore have no effective remedy at law. Because of the

21   relatively small size of the individual Class members' claims, it is likely that few if any Class

22   members could afford to seek legal redress for Defendant's misconduct as alleged herein. Absent a

23   class action, Class members will continue to incur damages, and Defendant's misconduct will

24   continue without remedy.

25       **Answer:**    Niantic lacks knowledge or information sufficient to admit or deny paragraph

26   169's allegations regarding Class members and Class members' claims, and on that basis denies the

27   allegations.  Moreover, paragraph 169 consists of Plaintiffs' legal conclusions, argument, and

28   characterization of their allegations, which do not require a response; to the extent paragraph 169

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

68.

**ANSWER TO SECOND CONSOLIDATED AMENDED CLASS
ACTION COMPLAINT - (CASE NO. 3:16-CV-04300-JD)**

1   requires a response, Niantic denies the allegations therein.

2        170.    Class action treatment of common questions of law and fact would also be a superior

3   method to multiple individual actions or piecemeal litigation in that class action treatment will

4   conserve the resources of the courts and the litigants, and will promote consistency and efficiency of

5   adjudication.

6        **Answer:**    Paragraph 170 consists of Plaintiffs' legal conclusions, argument, and

7   characterization of their allegations, which do not require a response; to the extent paragraph 170

8   requires a response, Niantic denies the allegations therein.

9                                    **COUNT I**

10   **Nuisance—Brought on Behalf of Plaintiffs and the Class against Niantic**

11        171.    Plaintiffs repeat, reallege, and incorporate by reference each of the foregoing

12   allegations as though fully set forth herein.

13        **Answer:**    Niantic re-alleges and incorporates by reference its responses contained in

14   paragraphs 1-171 as though set forth fully herein.

15        172.    At common law, an invasion of one's private interest in the use and enjoyment of

16   their land that causes significant harm constitutes a nuisance.

17        **Answer:**    Paragraph 172 consists of Plaintiffs' legal conclusions, argument, and

18   characterization of their allegations, which do not require a response; to the extent paragraph 172

19   requires a response, Niantic denies the allegations therein.

20        173.    As described above, via designation of specific GPS coordinates, Niantic

21   intentionally placed Pokémon, Pokéstops, and/or Pokémon gyms on or near the properties of

22   Plaintiffs and other members of the proposed Class.

23        **Answer:**    Niantic denies the allegations in paragraph 173.

24        174.    Niantic undertook the foregoing conduct without authorization from Plaintiffs or

25   other members of the proposed Class.

26        **Answer:**    Niantic denies the allegations in paragraph 174.  Also, Paragraph 174 consists

27   of Plaintiffs' legal conclusions, argument, and characterization of their allegations, which do not

28   require a response.  To the extent paragraph 174 requires a response, Niantic denies the allegations

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

69.

ANSWER TO SECOND CONSOLIDATED AMENDED CLASS
ACTION COMPLAINT - (CASE NO. 3:16-CV-04300-JD)

therein.

175.    The foregoing conduct has caused foreseeable incursions by *Pokémon Go* players onto the property of Plaintiffs and the other members of the proposed Class, thereby invading their use and enjoyment of their properties.

**Answer:**    Paragraph 175 consists of Plaintiffs' legal conclusions, argument, and characterization of their allegations, which do not require a response; to the extent paragraph 175 requires a response, Niantic denies the allegations therein.   Also, Niantic lacks knowledge or information sufficient to admit or deny the allegations in paragraph 175, and on that basis denies the allegations.

176.    Plaintiffs and other members of the class have been significantly harmed in a variety of ways by these incursions, including but not limited to suffering property damage, receiving threats of physical harm from *Pokémon Go* players, incurring costs to clean waste and debris from their property, and incurring costs to secure their properties against unwanted incursions.

**Answer:**    Niantic lacks knowledge or information sufficient to admit or deny the allegations in paragraph 176, and on that basis denies the allegations.  Additionally, paragraph 176 consists of Plaintiffs' legal conclusions, argument, and characterization of their allegations, which do not require a response; to the extent paragraph 176 requires a response, Niantic denies the allegations therein.

177.    The invasion described above remains ongoing, as at the time of the filing of this Complaint, Niantic continued to designate GPS coordinates on or near the properties of Plaintiffs and other members of the proposed Class as Pokémon spawning locations, Pokéstops, and/or Pokémon gyms in *Pokémon Go*.

**Answer:**    In response to paragraph 177, Niantic denies that it designates GPS coordinates on or near private property.  The allegations regarding "[t]he invasion described above" consist of Plaintiffs' legal conclusions, argument, and characterization of their allegations, which do not require a response; to the extent they require a response, Niantic denies the allegations. Additionally, Niantic lacks knowledge or information sufficient to admit or deny those allegations, and on that basis denies the allegations.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

70.

**ANSWER TO SECOND CONSOLIDATED AMENDED CLASS
ACTION COMPLAINT - (CASE NO. 3:16-CV-04300-JD)**

178.    The foregoing conduct constitutes a nuisance.

**Answer:**    Paragraph 178 consists of Plaintiffs' legal conclusions, argument, and characterization of their allegations, which do not require a response; to the extent paragraph 178 requires a response, Niantic denies the allegations therein.

179.    As a direct and proximate result of Niantic's actions, Niantic is liable to Plaintiffs and the other members of the proposed Class.

**Answer:**    Paragraph 179 consists of Plaintiffs' legal conclusions, argument, and characterization of their allegations, which do not require a response; to the extent paragraph 179 requires a response, Niantic denies the allegations therein.

### COUNT II

### Trespass—Brought on Behalf of Plaintiffs and the Class against Niantic

180.    Plaintiffs repeat, reallege, and incorporate by reference each of the foregoing allegations as though fully set forth herein.

**Answer:**    Niantic re-alleges and incorporates by reference its responses contained in paragraphs 1-180 as though set forth fully herein.

181.    At common law, a party is liable for trespass if it enters land in the possession of another or causes a thing or third person to do so.

**Answer:**    Paragraph 181 consists of Plaintiffs' legal conclusions, argument, and characterization of their allegations, which do not require a response; to the extent paragraph 181 requires a response, Niantic denies the allegations therein.

182.    As described above, via designation of specific GPS coordinates, Niantic intentionally placed Pokémon, Pokéstops, and/or Pokémon gyms on or near the properties of Plaintiffs and other members of the proposed Class.

**Answer:**    In response to paragraph 182, Niantic denies the allegations therein.

183.    By these placements, Niantic caused things—Pokémon, Pokéstops, and/or Pokémon gyms—to enter the properties of Plaintiffs and other members of the proposed Class.

**Answer:**    In response to paragraph 183, Niantic denies the allegations therein.

184.    By virtue of the incentives created by and criteria for success in the *Pokémon Go*

Cooley LLP
Attorneys At Law
San Francisco

71.

Answer to Second Consolidated Amended Class
Action Complaint - (Case No. 3:16-cv-04300-JD)

mobile game, Niantic induced *Pokémon Go* players to go to the locations of the Pokémon, Pokéstops, and/or Pokémon gyms in order to advance their progress in the game. Niantic thereby caused third persons to enter the properties of Plaintiffs and other members of the proposed Class.

**Answer:**      Paragraph 184 consists of Plaintiffs' legal conclusions, argument, and characterization of their allegations, which do not require a response; to the extent paragraph 184 requires a response, Niantic denies the allegations therein.

185.    The foregoing conduct remains ongoing, as at the time of the filing of this Complaint, Niantic continued to designate GPS coordinates on or near the properties of Plaintiffs and other members of the proposed Class as Pokémon spawning locations, Pokéstops, and/or Pokémon gyms in *Pokémon Go*.

**Answer:**      In response to paragraph 185, Niantic denies that it designates GPS coordinates on or near private property.  Further, paragraph 185 consists of Plaintiffs' legal conclusions, argument, and characterization of their allegations, which do not require a response; to the extent they require a response, Niantic denies the allegations.  Additionally, Niantic lacks knowledge or information sufficient to admit or deny those allegations, and on that basis denies the allegations.

186.    The foregoing conduct constitutes trespass.

**Answer:**      Paragraph 186 consists of Plaintiffs' legal conclusions, argument, and characterization of their allegations, which do not require a response; to the extent paragraph 186 requires a response, Niantic denies the allegations therein.

187.    As a direct and proximate result of Niantic's actions, Niantic is liable to Plaintiffs and the other members of the proposed Class.

**Answer:**      Paragraph 187 consists of Plaintiffs' legal conclusions, argument, and characterization of their allegations, which do not require a response; to the extent paragraph 187 requires a response, Niantic denies the allegations therein.

## **PRAYER FOR RELIEF**

The paragraphs in the section entitled "Prayer for Relief" are Plaintiffs' statement of requested relief, to which no response is required.  To the extent that a response is required, Niantic

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

72.

**ANSWER TO SECOND CONSOLIDATED AMENDED CLASS
ACTION COMPLAINT - (CASE NO. 3:16-CV-04300-JD)**

denies the allegations, including but not limited to denying that Plaintiffs are entitled to any relief.

## JURY DEMAND

The paragraph in the section entitled "Jury Demand" is Plaintiffs' demand for a jury trial, to which no response is required.

## NIANTIC'S DEFENSES

Niantic asserts the following defenses to the SAC, without assuming the burden of proof or persuasion on such defenses such that would otherwise fall on Plaintiffs.  Niantic reserves the right to supplement or amend these defenses as discovery is conducted or if Plaintiffs amend the SAC. Niantic does not knowingly or intentionally waive any defense.

### I.     FIRST DEFENSE – LACK OF STANDING

Plaintiffs and members of the putative class lack standing to bring this action under Article III of the U.S. Constitution.

The basis for this defense is the fact that Plaintiffs and members of the putative class have not suffered any injury, and the fact that Plaintiffs and members of the putative class have not alleged a real nor immediate threat of future harm that would entitle them to injunctive relief.

### II.    SECOND DEFENSE - CONSENT

Plaintiffs and each member of the putative Class are barred from recovery, in whole or in part, by the doctrines of acquiescence, consent, permission, and authorization.

The basis for this defense includes, but is not limited to, a showing that Plaintiffs and/or putative Class members acquiesced, consented to, gave permission for, and/or authorized Niantic's allegedly wrongful acts or conduct, and/or accepted the benefits conferred on them by Niantic.

### III.   THIRD DEFENSE –ACTION NOT MAINTAINABLE AS A CLASS ACTION

Plaintiffs and each member of the putative class are barred from recovery, in whole or in part, because they cannot meet the requirements of Federal Rule of Civil Procedure 23.

The basis for this defense is that Plaintiffs cannot satisfy the numerosity, commonality, typicality, adequacy, predominance, and/or superiority requirements of Federal Rule of Civil Procedure 23.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

73.

ANSWER TO SECOND CONSOLIDATED AMENDED CLASS
ACTION COMPLAINT - (CASE NO. 3:16-CV-04300-JD)

**IV.    FOURTH DEFENSE – FAILURE TO STATE A CLAIM**

Plaintiffs and each member of the putative Class are barred from recovery, in whole or in part, by the fact that the SAC fails to state a claim upon which relief may be granted.

**V.    FIFTH DEFENSE – ABSENCE OF PROXIMATE CAUSE**

Plaintiffs and each member of the putative Class are barred from recovery, in whole or in part, by the fact that no Plaintiff, or any putative class member, has sustained any loss, damage, harm, or detriment as a result of, or proximately caused by, any alleged acts, omissions, or other breach of duty by Niantic.

The basis for this defense includes, but is not limited to, the fact that Niantic's conduct was not a substantial factor causing the alleged incidents at issue to occur and the alleged injuries, losses and damages complained of and the fact that the subsequent and intervening acts of third parties— e.g., *Pokémon GO* players—caused the alleged incidents at issue and the alleged injuries, losses and damages complained of.

**VI.    SIXTH DEFENSE  - COMMON CUSTOM, USAGE, OR CONDUCT**

Plaintiffs and each member of the putative Class are barred from recovery, in whole or in part, by the doctrine of common custom, usage or conduct.

**VII.    SEVENTH DEFENSE – APPORTIONMENT**

Plaintiffs and each member of the putative class are barred from recovery, in whole or in part, by the doctrines of apportionment and several liability.

The basis for this defense includes, but is not limited to, the fact that third parties caused the happening of the alleged incidents at issue and the alleged injuries, losses and damages complained of.

**VIII.    EIGHTH  DEFENSE – NO INJUNCTIVE RELIEF**

Plaintiffs and each member of the putative class are not entitled to an injunction prohibiting the conduct at issue.

The basis for this defense includes, but is not limited to, the fact that the balance of the hardships do not favor enjoining the conduct at issue.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

74.

ANSWER TO SECOND CONSOLIDATED AMENDED CLASS
ACTION COMPLAINT - (CASE NO. 3:16-CV-04300-JD)

1

## NIANTIC'S DEMAND FOR JURY TRIAL

2      Niantic demands a jury trial on all issues so triable.

3

## PRAYER

4      Wherefore, Niantic prays:

5      **1.**      That Plaintiffs and putative Class members take nothing by reason of their
              claims in the SAC and that the SAC be dismissed in its entirety with
6              prejudice;

7      **2.**      That judgment be entered thereon in favor of Niantic;

8      **3.**      That Niantic be awarded its costs of suit incurred in the defense of this action;
              and
9
       **4.**      For such other and additional relief as the Court deems proper.
10

11

12

13   Dated: April 24, 2018                    COOLEY LLP

14

15                                             */s/ Jeffrey M. Gutkin*
                                               Jeffrey M. Gutkin
16

17                                             Attorneys for Defendant
                                               NIANTIC, INC.
18

19

20

21   173661326

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

75.

**ANSWER TO SECOND CONSOLIDATED AMENDED CLASS
ACTION COMPLAINT - (CASE NO. 3:16-CV-04300-JD)**