1  Jennifer Pafiti (SBN 282790)
2  **POMERANTZ LLP**
   1100 Glendon Avenue
3  Los Angeles, CA 90024
   Phone: 310-405-7190
4  Email: jpafiti@pomlaw.com

5  (additional counsel on signature page)

6  *Attorneys for Plaintiff*

7

8

9
                    **UNITED STATES DISTRICT COURT**

                    **NORTHERN DISTRICT OF CALIFORNIA**

                    **SAN FRANCISCO DIVISION**

10 | | **Case No. 3:16-cv-04300-JD** |

11 **CLASS ACTION**

12 **IN RE POKÉMON GO** | **PLAINTIFFS' MOTION IN SUPPORT OF**
   **NUISANCE LITIGATION** | **PRELIMINARY APPROVAL OF SETTLEMENT**
13

14 Date:    March 14, 2019
   Time:    10:00 a.m.
15 Courtroom: 11, 19th Floor
   Judge: Hon. James Donato

16

17

18

19

20

21

22

23

24

25

26

27

28

{00309711;15 }

# TABLE OF CONTENTS

MEMORANDUM OF LAW ................................................................................................ 1

I.     TERMS OF THE PROPOSED SETTLEMENT ........................................... 1

     A.    Proposed Settlement Class ................................................................ 1

     B.    Injunctive Relief ............................................................................... 1

     C.    Mediation of Named Plaintiffs' Individual Damages Claims .................... 3

     D.    Settlement Class Notice Plan ............................................................ 4

     E.    Release by Settlement Class Members ............................................... 4

     F.    Attorneys' Fees ................................................................................ 5

     G.    Service Awards for the Named Plaintiffs .......................................... 6

II.    STATEMENT OF FACTS AND PROCEDURAL HISTORY ........................... 6

     A.    Allegations of the Complaint ............................................................ 6

     B.    Procedural History ........................................................................... 9

     C.    Discovery ...................................................................................... 10

     D.    Settlement Negotiations ................................................................. 10

ARGUMENT ............................................................................................................ 11

III.   THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE SETTLEMENT ...................................................................................... 11

     A.    The Settlement Meets All Requirements for a Presumption of Fairness .. 11

     B.    The Settlement is the Product of Informed Arms-Length Negotiations ... 12

     C.    The Settlement is Within the Range of Possible Approval ..................... 13

     D.    Risks of Further Litigation .............................................................. 14

     E.    The Proposed Service Awards are Fair and Reasonable. ....................... 16

IV.   THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT AND PLAINTIFFS' COUNSEL APPOINTED CLASS COUNSEL .......................................................................................... 17

     A.    Certification of the Settlement Class Under Rule 23(b)(2) .................... 17

         1.    Numerosity ......................................................................... 17

         2.    Typicality and Commonality under Rule 23(a) ........................... 17

         3.    Adequacy of Representation .................................................. 18

         4.    Class Certification is Appropriate under Rule 23(b)(2) ............... 18

         5.    Appointment of Counsel under Rule 23(g) ............................... 19

V.    THE COURT SHOULD APPROVE THE NOTICE PROGRAM ...................... 20

VI.   FINAL APPROVAL HEARING ................................................................ 22

VII.  CONCLUSION .................................................................................... 22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ballen v. City of Redmond*,
  466 F.3d 736 (9th Cir. 2006) ..............................................................................................5

*Berry v. Schulman*,
  807 F.3d 600 (4th Cir. 2015) ............................................................................................20

*Chun-Hoon v. McKee Foods Corp*,
  716 F. Supp. 2d 848 (N.D. Cal. 2010) ........................................................................12, 16

*Collins v. Cargill Meat Sols. Corp.*,
  274 F.R.D. 294 (E.D. Cal. 2011) ......................................................................................17

*De Gonzalez v. City of Richmond*,
  No. C-14-00386 DMR, 2014 WL 2194816 (N.D. Cal. May 23, 2014)................................15

*Green v. Am. Express Co.*,
  200 F.R.D. 211 (S.D.N.Y. 2001) ......................................................................................21

*Harris v. Vector Mktg. Corp.*,
  No. 08-cv-5198 EMC, 2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) .................................12

*Helsel v. Morcom*,
  555 N.W.2d 852 (Mich. Ct. App. 1996) ............................................................................14

*Hopson v. Hanesbrands Inc.*,
  No. CV-08-0844 EDL, 2009 WL 928133 (N.D. Cal. Apr. 3, 2009) ....................................16

*In re Colgate-Palmolive Softsoap Antibacterial Hand Soap Mktg. & Sales
  Practices Litig.*,
  No. 12-md-2320-PB, 2015 WL 7282543 (D.N.H. Nov. 16, 2015) ......................................14

*In re Comverse Tech., Inc. Sec. Litig.*,
  No. 06-CV-1825 (NGG), 2010 WL 2653354 (E.D.N.Y. June 24, 2010)..............................20

*In re Elan Corp. Sec. Litig.*,
  No. 02 Civ. 865, 2002 WL 31720410 (S.D.N.Y. Dec. 3, 2002)..........................................20

*In re Ferrero Litig.*,
  583 F. App'x 665 (9th Cir. 2014) ........................................................................................5

*In re Katrina Canal Breaches Litig.*,
  628 F.3d 185 (5th Cir. 2010) ............................................................................................20

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ........................................................................16

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) ........................................................................16

*In re Packaged Ice Antitrust Litig.*,
   779 F. Supp. 2d 642 (E.D. Mich. 2011) .......................................................19

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
   264 F.R.D. 603 (N.D. Cal. 2009) ..................................................................18

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) ......................................................................11

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) ..........................................................................5

*Jacobs v. Cal. State Auto. Ass'n Inter-Ins. Bureau*,
   No. C 07-00362 MHP, 2009 WL 3562871 (N.D. Cal. Oct. 27, 2009) .................16

*Jermyn v. Best Buy Stores, L.P.*,
   No. 08 Civ. 214 CM, 2012 WL 2505644 (S.D.N.Y. June 27, 2012).....................21

*Johnson v. Metro-Goldwyn-Mayer Studios Inc.*,
   No. C17-541RSM, 2018 U.S. Dist. LEXIS 177824 (W.D. Wash. Oct. 16,
   2018) ...........................................................................................................11

*Lilly v. Jamba Juice Co.*,
   No. 13-CV-02998-JST, 2015 WL 1248027 (N.D. Cal. Mar. 18, 2015) ...............21

*McDonald v. CP OpCo, LLC*,
   No. 17-cv-04915-HSG, 2019 U.S. Dist. LEXIS 13376 (N.D. Cal. Jan. 28,
   2019) ...........................................................................................................11

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ..................................................................11

*Satchell v. Fed. Express Corp.*,
   No. C03-2659 SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007)......................12

*United States v. Parke*,
   No. 12-cv-01787-SU, 2014 U.S. Dist. LEXIS 27448 (D. Or. Jan. 8, 2014)..........15

*Walters v. Reno*,
   145 F.3d 1032 (9th Cir. 1998) ......................................................................19

*Wren v. RGIS Inventory Specialists*,
   No. C-06-05778 JCS, 2011 U.S. Dist. LEXIS 38667 (N.D. Cal. Apr. 1, 2011) ....16

{00309711;15 }

*Yeagley v. Wells Fargo & Co.*,
   365 F. App'x 886 (9th Cir. 2010) ...........................................................................5

**Statutes**

California Civil Code Section 1542 .............................................................................4

**Rules**

Fed. R. Civ. P. 23 ................................................................................... *passim*

Fed. R. Civ. P. 30 ..........................................................................................10

**Other Authorities**

*Newberg on Class Actions* (5th ed. 2014) ..............................................................12

*Newberg on Class Actions* (5th ed. rev. June 2016) .............................................20

Restatement (Second) of Torts (1965) ...................................................................14

Plaintiffs seek an order (1) granting preliminary approval of the proposed Settlement as set forth in the Settlement Agreement (the "Settlement Agreement") between Plaintiffs and Defendant Niantic, Inc. ("Niantic" or "Defendant"); (2) provisionally certifying the Settlement Class, as defined below, for settlement purposes only, (3) appointing Plaintiffs as Class Representatives and their counsel as Class Counsel; (4) approving the form and manner of notice to Settlement Class Members; (4) establishing deadlines for the filing of any objections to the Settlement; and (5) scheduling a fairness/final approval hearing to consider the fairness of the Settlement. This motion is based on this Memorandum of Law, the Settlement Agreement, the pleadings, Orders, transcripts and other papers on file in this action, and any further evidence and arguments that may be presented at a hearing on this matter.

## MEMORANDUM OF LAW

## I.     TERMS OF THE PROPOSED SETTLEMENT

### A.     Proposed Settlement Class

The proposed Settlement Class consists of:

> All persons in the United States who own or lease property within 100 meters of any location that Niantic has designated, without prior consent of such property owner or lessee, as a Pokéstop or Pokémon Gym in the *Pokémon Go* mobile application.

### B.     Injunctive Relief

The proposed Settlement provides injunctive relief in the form of remedial measures designed to prevent the future placement of virtual game items on private property, and to promptly address future complaints of trespass and nuisance by Pokémon Go players when they arise. Specifically, for the three-year Settlement Period, Niantic has agreed to the following:

(a)     For complaints properly received through Niantic's website related to nuisance, trespass, or a request to remove a PokéStop or Gym (each a "POI"), Niantic will use commercially reasonable efforts ("CRE") to resolve the complaints and communicate a resolution within no more than 15 (fifteen) days of wait time for the requestor, for 95% of cases each year.

(b)     In cases where the complaining party in section (a) is the owner of a single-family residential property and the party reviewing the complaint determines that the

complained of POI is on or within 40 meters of that property, Niantic will instruct that reviewer to remove the POI from the property. In cases where the resolution specified in (a) or (b) requires removal of a POI, Niantic will use CRE to perform that removal within five business days of the communication from Niantic agreeing to such action.

(c)     Niantic will use CRE to maintain a database of complaints related to nuisance or trespass and requests to remove a POI, for a minimum of 1 (one) year from the date of the complaint. Niantic will also continue to use CRE to avoid the placement of new POI on single-family residential property.

(d)     Niantic will maintain a form on its website whereby an owner of single-family residential property can request that any POIs on or within 40 meters of their property be removed. In cases where Niantic has previously removed a POI from the property of a single-family residential home, and in cases where Niantic does so in the future during the settlement period, Niantic agrees to use CRE to avoid re-placing that POI on that same single-family residential property.

(e)     For Raids which Niantic's systems indicate will involve more than 10 participants, Niantic will use CRE to cause a warning message to appear on participants' screens before the raid begins reminding players to be courteous to others and respectful of their real-world surroundings. Precise final language will be determined by Niantic, in its sole discretion.

(f)     Niantic will add specific instructions to the current review form that Niantic's user-reviewers use to evaluate new POI submissions that direct user-reviewers to increase scrutiny regarding any proposed POI that may be located on or within 40 meters of a private single-family residential property, and POI that appear to be located in neighborhood parks. At a minimum, such instructions will include directions for the user-reviewer to examine the proposed POI using a variety of sources, including but not limited to mapping services maintained by private companies such as Google Maps. After such review, Niantic will use CRE to avoid placing the POI on any property that appears to the reviewer to be a single-family residential property.

{00309711;15 }

1    (g)    Niantic will manually review a statistically significant percentage of new

2  POI submissions via a Niantic employee or contractor for the principal purpose of trying to avoid

3  POIs that are more likely to lead to issues with nuisance or trespass.

4    (h)    Niantic will maintain a mechanism for parks whereby it provides parks the

5  opportunity to request that a specific park's Hours of Operation be applied to POIs that are

6  located within that park. Niantic will also comply with requests related to existing POI located in

7  parks from governmental parks authorities to apply Hours of Operation to POI located in parks

8  within their jurisdiction. In addition to any notice of the settlement that Plaintiffs determine is

9  required, at least once in each of the three years of the settlement period, Niantic will make a

10  public post on its website that includes a notification that Niantic will limit the hours of operation

11  of POIs within public parks upon request from the proper park administrator.

12    (i)    Niantic will confirm compliance with its obligations under section (a)

13  above by way of an audit, at Niantic's expense, conducted by an independent firm that Niantic

14  will select, at the time of Plaintiffs' choosing during the 3 (three) year period, with at least 30

15  days' notice to Niantic before the commencement of the audit. Should the audit conclude that

16  Niantic was materially non-compliant with the settlement terms in section (a) during the audited

17  period, a second audit will be conducted, at Niantic's expense, during the settlement period, with

18  at least 30 days' notice to Niantic before commencement of the second audit.

19    (j)    Niantic will add a new warning to the rotating warnings that appear at the

20  launch of the game (which currently include "do not trespass while playing Pokémon GO" and

21  "do not play Pokémon GO while driving") that states: "Be courteous to members of real-world

22  communities as you play Pokémon GO" or something similar.  Niantic will have the discretion to

23  choose the final specific language.

24    **C.    Mediation of Named Plaintiffs' Individual Damages Claims**

25  Pursuant to the Stipulation, the Parties have agreed to mediate the Named Plaintiffs'

26  Individual Claims for Monetary Damages. This provision is expressly severable from the

27  remainder of the settlement agreement, in the event that the Court will not approve the inclusion

28  of this term as part of the Settlement.

{00309711;15 }

3

**D.     Settlement Class Notice Plan**

Defendant has agreed to pay the cost of Class Notice. Although direct, individual notice is not possible because the Parties lack the necessary contact information for the Settlement Class, the Parties have nonetheless worked diligently to complete the proposed Notice Plan reasonably designed to reach the Settlement Class. As part of the Notice Plan, the Long-Form Notice substantially in the form attached to the Settlement Agreement as Exhibit A-1, along with the Stipulation and all relevant Court orders and docket entries, will be posted on a case-specific settlement website (the "Class Settlement Website"). Short-Form Notice, substantially in the form attached to the Settlement Agreement as Exhibit A-2, will be posted on the Pokémon GO support website and published in several nationally prominent news publications including *USA Today* and in two prominent publications targeted towards public parks and/or public park systems. The Short-Form Notice will direct individuals to the Class Settlement Website, where they will be able to find the Long-Form Notice and underlying Settlement documents.

**E.     Release by Settlement Class Members**

The Settlement includes a limited release of claims for equitable and injunctive relief only. It does not include any release of claims for monetary damages. Specifically, the release discharges the Released Parties from "all claims for equitable, injunctive or declaratory relief based on the facts that were or could have been alleged in the SAC, including but not limited to injunctive claims arising out of or relating to any of the facts, transactions, events, occurrences, acts, disclosures, statements, misrepresentations, omissions, failures to act, or other conduct that was or could have been alleged, including, but not limited to, claims regarding Niantic's conduct, practices, disclosures, terms, and policies relating to the placement of POI, spawning of Pokémon , and/or design of the Pokémon GO game through the date on which the Court enters the Approval Order." The Release further waives "rights, and benefits of Section 1542 of the California Civil Code, and any law or legal principle of similar effect in any jurisdiction, whether federal or state" (*i.e.*, unknown claims).  As with the general Release, the Section 1542 release is also limited to claims for injunctive relief. *See* Section 3 of the Settlement Agreement.

### F.    Attorneys' Fees

By motion filed prior to the Final Approval Hearing, Plaintiffs' counsel will seek an award of attorneys' fees and reimbursement of expenses, not to exceed $8,000,000 in fees and $130,000 in expenses. As set forth in Section 2.3 of the Settlement Agreement, Defendant has agreed to pay the fees, costs and expenses that may be awarded by the Court. However, Defendant has not agreed to pay any set amount of fees and has the ability to object to the amount of the fee request submitted by Plaintiffs' Counsel in connection with the final approval hearing. If approved, any award would be paid solely by Niantic and would in no way impact any Class member who elects to pursue future money damage claims. The Proposed Notice advises Class Members that Plaintiffs' counsel will be seeking a fee and expense award, and the maximum amount that they are requesting.

"[I]n injunctive relief class actions, courts often use a lodestar calculation because there is no way to gauge the net value of the settlement or any percentage thereof." *Hanlon*, 150 F.3d 1011, 1029 (9th Cir. 1998); *see Yeagley v. Wells Fargo & Co.*, 365 F. App'x 886, 887 (9th Cir. 2010) (holding that the district court should have used the lodestar to calculate attorney's fees where injunctive relief was sought and no common fund was created). "Under the lodestar method, a court need not determine the 'value' of particular injunctive relief because fees are calculated through an assessment of time expended on the litigation, counsel's reasonable hourly rate and any multiplier factors such as contingent representation or quality of work." *In re Ferrero Litig.*, 583 F. App'x 665, 668 (9th Cir. 2014). First, the "raw" lodestar is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. A court then considers whether to enhance that lodestar figure by applying a multiplier in light of factors such as the time and labor required; the novelty and difficulty of the questions involved; the skill requisite to perform the legal service properly; whether the fee is fixed or contingent; the amount involved and the results obtained; the experience, reputation, and ability of the attorneys; and awards in similar cases. *See Ballen v. City of Redmond,* 466 F.3d 736, 746 (9th Cir. 2006); *see also In re Wash. Pub. Power Supply Sys. Sec. Litig.,* 19 F.3d 1291, 1300-01, 1302 (9th Cir. 1994) (noting that "courts have routinely enhanced the lodestar to reflect the risk

of non-payment" and finding district court's failure to apply multiplier to lodestar calculation was abuse of discretion where case was "fraught with risk and recovery was far from certain").

Plaintiffs will present their full arguments in support of an award of attorneys' fees and expenses when they file their Fee Motion. As of today, Plaintiffs' Counsel has expended in excess of 2,500 hours in prosecuting this Action, resulting in a lodestar of more than $1.4 million. Plaintiffs' Counsel expects to expend many more hours in connection with this Action in the future in the course of seeking final approval of the Settlement and then in monitoring Niantic's compliance with the Settlement. Accordingly, Plaintiffs' Counsel submits that a multiplier of up to 4 may be appropriate in this case.

### G.    Service Awards for the Named Plaintiffs

Plaintiffs will seek up to $1,000 apiece for their service to the Class, by participating in the Action and assisting in bringing about the substantial benefits of the Settlement for the Class. Plaintiffs will request that the Court order Niantic to bear the costs of the service awards. The Notice advises Class Members that Plaintiffs will be seeking such service awards.

## II.    STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A.    Allegations of the Complaint

This case arises from Pokémon Go, the immensely popular game that was first launched in 2016 and is maintained and operated by Niantic. The game is centered on a world populated by exotic fictional creatures called Pokémon. Players explore that world trying to find and capture as many Pokémon as possible (indeed, the franchise's slogan is "Gotta Catch 'Em All") and then training them to fight in battles against other players' Pokémon.

Pokémon Go created an immersive "augmented reality" gaming experience in which players travel through the fictional game world not by pressing buttons on a controller but by physically exploring the real world. As the player moves in the real world, his or her avatar correspondingly moves on a map displayed on the player's phone. To capture a Pokémon, the player must move close enough to a real-world location that Niantic has designated as that Pokémon's location, and the game displays an animation of a Pokémon superimposed over the

player's camera feed, giving players the chance to "catch" a Pokémon that seems to be right in front of them. ¶¶ 23-46.[1]

This case alleges that the game actively rewards players for exploring widely and in particular for visiting different locations at different times and congregating in large groups for extended periods. There are hundreds of unique Pokémon, and the goal is to "capture them all". Different types spawn in different places (*e.g.*, some on grass, others near water) and at different times of day and night, and some are very rare, spawning only at certain times and in a narrow range of locations. ¶ 29. Niantic also designates certain real-world locations as "Pokéstops" (where players can obtain valuable in-game items) and "Pokémon gyms" (where players engage in virtual battles with other players), both of which are essential for players to advance in the game. Because each Pokéstop or Pokémon gym exists only at a specific set of GPS coordinates, a player must be physically close to the real-world property associated with those GPS coordinates to take advantage of them and reap a virtual in-game reward. ¶¶ 30-40.

However, Niantic has not limited its game board to public spaces, but instead has repeatedly placed rare Pokémon, Pokémon Gyms, or PokéStops ("Game Items") on or nearby private properties and effectively transformed those properties into scavenger hunt grounds where players can catch Pokémon, acquire useful in-game items, win battles against other *Pokémon Go* players, and thereby advance in the game. Plaintiffs' action alleges that this strongly encourages players to visit those locations—and to trespass if necessary to do so. ¶¶ 41-49.

Soon after Pokémon Go was launched, it became apparent that Niantic had indiscriminately placed Pokémon Game Items on private properties as well as on landmark sites, such as the National Holocaust Museum in Washington, D.C., where gameplay was highly inappropriate. The Complaint extensively detailed the experiences of putative class members

---

[1] Unless otherwise indicated, all citations to ¶ _ are to the Second Consolidated Amended Class Action Complaint (ECF No. 83) (the "Complaint").

from various states who suffered unwanted trespass and/or nuisance as a direct result of Niantic's unsolicited placement of Pokémon game items on or near their private properties.[2]

The Villas of Positano, a private condominium complex located in Florida, alleges on behalf of its members that hundreds of non-residents began infiltrating the Villas on a nightly basis in order to catch Pokémon during their "peak spawning hours." The players stayed for hours each night, shouting, playing music, and littering, among other disturbances. ¶¶ 52-55.

Plaintiffs Scott Dodich and Jayme Gotts-Dodich resided across the street from Wahby Park in Michigan, where Niantic had placed Pokémon Gyms and Pokéstops. The Dodichs allege that Pokémon Go players trespassed on Plaintiffs' and their neighbors' lawns, trampling their landscaping and peering into their windows, and parked their cars blocking their driveways. ¶¶ 56–58. When asked to leave, the players refused, and threatened the Dodichs. ¶¶ 59-62.

Plaintiff Jason Sarkis, from New York, alleges that large groups of people began congregating at all hours of day and night around a sign at the end of his driveway, where Niantic had placed a Pokémon Gym. Large groups lingered there for weeks and often trespassed onto and damaged his property. Plaintiff "Sam" Congshan Hao, also a New York resident, alleges that he saw large groups (sometimes with more than 70 people) congregating near his house after Niantic placed a Pokéstop at a nearby intersection. The constant noise and secondhand cigarette smoke from the crowds disrupted his family's sleep and health and otherwise inflicted considerable mental distress. ¶¶ 92-96.

Plaintiff Melissa Perez alleges that Pokémon Go players trespassed onto her California property after Niantic had designated her swimming pool as a Pokéstop or a Pokémon Gym, damaging her lawn and her fence and generally causing a nuisance. ¶¶ 85-91. Similarly, Plaintiff Bruce Garton from Tennessee alleges that players trespassed onto his property, forcing him to chase them off, and making him and his family feel unsafe. ¶¶ 97-102.

---

[2] The named plaintiffs reside in New Jersey, Florida, Ohio, Michigan, New York, California, Tennessee and Utah.

Plaintiff Sally Rogers, from New Mexico, alleges that Pokémon Go players trespassed onto her property in pursuit of a Pokéstop on her property that resembled a "Bacon and Eggs" sculpture that had previously been on the property, but had since been removed. ¶¶ 103-17.

Plaintiff Deborah Pimentel alleges that suspected players blocked her driveway and trespassed and littered on her property because Niantic had placed a Pokémon Gym in front of her house. ¶¶ 118-23. Ohio Plaintiff Loren Morgan similarly alleges that Niantic's placement of game items near his home attracted hordes of Pokémon Go players at all hours of the night who initiated verbal altercations and who trespassed and littered onto his and his neighbor's properties. ¶¶ 124-25. New Jersey Plaintiff Jill Barbarise alleged that groups of teenage boys congregating around her property, playing Pokémon Go, and that soon thereafter, someone attempted to pull open the gate around her property, requiring repairs. ¶¶ 68-73.

The Complaint alleges that many of these Plaintiffs tried contacting Niantic to have the game items removed from their properties, but that Niantic either ignored their requests altogether, or provided a generic e-mail response that accomplished nothing.

The Complaint further alleges that the foregoing trespasses and nuisances were entirely foreseeable by Niantic when it designed and launched a game that indiscriminately placed Pokémon Game Items without confirming that the locations were not on private property, and that Niantic was indisputably on notice of the alleged transgressions no later than when Plaintiffs reported the trespasses to Niantic, yet did nothing to abate the trespass and nuisance that it knew it was causing.

### B.    Procedural History

The first complaint in the now consolidated class action was filed on July 29, 2016, just a few weeks after the release of Pokémon GO, on behalf of former Named Plaintiff Jeffrey Marder. Plaintiffs' counsel filed two additional complaints shortly thereafter, each asserting the same claims on behalf of the same class, but with different Named Plaintiffs (Jayme and Scott Dodich, and Villas). The Court later consolidated the cases before Judge James Donato under the *In re Pokémon Go Nuisance Litigation* caption. The original complaints named The Pokémon

Company and Nintendo Co., Ltd. as Defendants, but Plaintiffs later dismissed these parties voluntarily.

Plaintiffs filed an amended complaint on November 25, 2016, which Niantic moved to dismiss. At the July 27, 2017 hearing on Niantic's motion, the Court raised a question about its jurisdiction and stayed all discovery, which led Plaintiffs to amend.

Plaintiffs filed a Second Consolidated Amended Class Action Complaint on August 28, 2017, which is the current operative pleading. This Complaint also added the final eight Named Plaintiffs. The Complaint brings two claims for trespass and nuisance and seeks an injunction requiring Niantic to remove Pokémon game items from private properties and locations within 100 meters of private property and barring Niantic from placing Pokémon game items there in the future. The action also seeks incidental monetary damages. Defendant again moved to dismiss, and the Court orally denied the Defendant's motion in its entirety at a March 29, 2018 hearing. The Court lifted the stay on discovery on March 28, 2018.

**C.**     **Discovery**

After the Court denied the motion to dismiss in March 2018, the parties began discovery in earnest. The parties exchanged discovery requests, including requests for production of documents and interrogatories. Defendants produced over 380,000 pages of documents. Defendant noticed depositions for each of the eleven Named Plaintiffs.  Disputes arose regarding the necessity, location and timing for these depositions.  The Parties engaged in extensive briefing regarding this dispute, as well as regarding a separate dispute concerning the Plaintiffs' responses to Defendants' interrogatory responses, which Defendant claimed were deficient.

On November 27, 2018, Plaintiff's counsel took the deposition of Niantic's Chief Product Development Officer, Kei Kawai, who was one of the key executives involved in the design and launch of Pokémon Go. Plaintiffs' counsel also noticed a Rule 30b(6) deposition of Niantic, but the case settled on the eve of this deposition.

**D.**     **Settlement Negotiations**

The parties engaged in a full-day mediation session on November 1, 2018 in San Francisco with Gregory Lindstrom, Esq., an experienced mediator with Philips ADR. Although

the parties made significant progress during this session, they did not achieve a settlement that day, but continued negotiations by telephone and email. Discovery continued while the parties negotiated. The parties agreed on a term sheet on November 28, 2018. Thereafter, the parties negotiated and drafted the Settlement Agreement and accompanying exhibits.

## ARGUMENT

### III. THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE SETTLEMENT

#### A. The Settlement Meets All Requirements for a Presumption of Fairness

Rule 23(e)'s settlement approval process is designed to "protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). A court "should not second guess the settlement terms and review should be 'limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.'" *Johnson v. Metro-Goldwyn-Mayer Studios Inc.*, No. C17-541RSM, 2018 U.S. Dist. LEXIS 177824, at *5 (W.D. Wash. Oct. 16, 2018) (quoting *Hanlon*, 150 F.3d at 1027).

Rule 23(e) sets forth a "two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004). "Courts may preliminarily approve a settlement and direct notice to the class if the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) does not grant improper preferential treatment to class representatives or other segments of the class; (3) falls within the range of possible approval; and (4) has no obvious deficiencies." *McDonald v. CP OpCo, LLC*, No. 17-cv-04915-HSG, 2019 U.S. Dist. LEXIS 13376, at *16 (N.D. Cal. Jan. 28, 2019) (citing *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)); *see also* Fed. R. Civ. P. 23(e)(1) (settlement notice is appropriate where "justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal"). The Settlement meets these requirements.

**B.     The Settlement is the Product of Informed Arms-Length Negotiations**

"An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Harris v. Vector Mktg. Corp.*, No. 08-cv-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011). Here, the proposed Settlement was reached only after extensive arms-length, informed negotiations conducted under the supervision of an experienced mediator, after over two years of hard-fought litigation. At the time of Settlement, both parties had a full understanding of the strengths and weaknesses of their respective claims and positions. Plaintiffs' counsel had conducted an extensive investigation which produced the First and Second Amended Complaints, both of which Defendant moved to dismiss. After the court denied the motion to dismiss, the parties exchanged discovery requests and engaged in substantial discovery. Niantic produced over 380,000 pages of documents, and provided written responses to Plaintiffs' inquiries regarding Niantic's policies and procedures regarding Pokémon Go, as well as inquiries regarding the game's design. In addition, Plaintiff's counsel took the deposition of Niantic's Chief Product Development Officer, Kei Kawai, who was one of the key executives involved in the design and launch of Pokémon Go.

The parties' settlement negotiations were supervised by an experienced mediator, which "further suggests that the parties reached the settlement in a procedurally sound manner and that it was not the result of collusion or bad faith by the parties or counsel." *Harris*, 2011 WL 1627973, at *8; *see also Chun-Hoon v. McKee Foods Corp*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010); *Satchell v. Fed. Express Corp.*, No. C03-2659 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."). In connection with the mediation, the parties exchanged extensive briefing which educated both sides on the risks of continuing litigation. The Settlement bears no hint of collusion.

The Settlement also has no "obvious substantive defects such as . . . overly broad releases of liability." *Newberg on Class Actions* § 13:15, at 326 (5th ed. 2014). The Settlement release of claims for equitable and injunctive relief is limited in nature and is tailored exactly to the type of relief obtained for the Class (*i.e.*, remedial measures). No class member will release

claims for monetary damages as part of the Settlement. Nor does the Settlement give the Named Plaintiffs preferential treatment.

### C.    The Settlement is Within the Range of Possible Approval

The Settlement is an excellent result for the Class, and well within the range of possible approval. As noted, this is a Rule 23(b)(2) settlement providing for injunctive relief only, under which the Class will only be releasing claims for equitable and injunctive relief. Class members are free to pursue any monetary remedies against Niantic arising from the same conduct alleged here. In exchange for the limited release, and as already extensively detailed above, Niantic has agreed to be bound by substantial constraints regarding its game operations and policies that are specifically intended to prevent the future placement of game items on private property, and thus prevent future trespass and nuisance by Pokémon Go players.

For example, the Settlement directly addresses Plaintiffs' complaints that Niantic ignored complaints about its placement of game items on their properties. Niantic has agreed to make reasonable efforts to resolve and respond to complaints within 15 days (for at least 95% of cases each year). Another significant benefit for Plaintiffs is that Niantic has agreed, upon receiving a complaint/removal request from an owner of a single-family residential property, to remove the POI within 5 days of determining that such POI is on or within 40 meters of the private property.

In order to prevent the future placement of POIs on private property, Niantic has agreed to improve its review procedures for proposed POIs by having a Niantic employee or contractor manually review a statistically significant portion of proposed POI locations, with the purpose of avoiding placement of the POI on private property.

In addition, Niantic has agreed to maintain a mechanism on its website for public parks to request that their normal hours of operation be applied to Pokémon Gyms and Pokéstops, to mitigate the risk of future nuisances that may be created by groups of players congregating in parks late in to the night. At least once a year for each year in the Settlement Period, Niantic will place a public posting on its website that includes a notification to parks about their ability to make this request.

{00309711;15 }

13

Finally, the Class is further protected by the audit mechanism in the Settlement, which provides Plaintiffs' counsel with at least one audit during the Settlement Period (and a second audit if Niantic is found to be materially non-compliant with the settlement terms). Other courts have granted final approval of settlements in which defendants have agreed to change business practices to comply with the law. *See, e.g., In re Colgate-Palmolive Softsoap Antibacterial Hand Soap Mktg. & Sales Practices Litig.*, No. 12-md-2320-PB, 2015 WL 7282543, at *2, *10-13 (D.N.H. Nov. 16, 2015) (granting final approval of settlement that required the defendant to cease using allegedly misleading marketing statements, without releasing class members' monetary claims, because "[t]he proposed settlement provides a benefit equal to, or greater than, what class members would likely achieve through continued litigation").

### D.     Risks of Further Litigation

The settlement is fair, reasonable, and adequate, particularly when viewed in light of the risks of continued litigation in this case. While Plaintiffs believe that their claims have substantial merit, this case presented novel issues of law regarding virtual trespass that have been untested in the courts, *i.e.*, whether Niantic could be liable for trespass because it placed virtual game items on private property without the property owners' consent. There was no assurance that Plaintiffs would prevail in proving their claims.

To prevail on a claim of trespass, Plaintiffs would need to establish that Defendant either trespassed itself or did "something by way of encouragement, advice, or suggestion" that led Pokémon Go players to trespass onto private property. *Helsel v. Morcom*, 555 N.W.2d 852, 856 (Mich. Ct. App. 1996). Defendant, however, has argued that Plaintiffs would not only need to show that Niantic did something to encourage trespass but also that Niantic knew that its actions would "to a substantial certainty result in" trespass. Restatement (Second) of Torts § 158, cmt. i-j (1965). Niantic pointed to its policies which contained admonitions to players to stay off private property, as evidence that it did not, in fact, encourage or advise players to commit trespass.

Plaintiffs also faced risks on class certification. Defendant claimed that Plaintiffs conceded at the oral argument on the motion to dismiss that the placement of a virtual game item on private property, standing alone, was not a trespass. The parties dispute whether such a

concession was ever made. However, if Plaintiffs' claims were limited in such a fashion, Defendants would have argued that proving commonality would be impossible, as class members would need to prove every instance of trespass/nuisance on their individual private properties, creating innumerable factual divergences among the class.

Plaintiffs believe they have strong arguments in support of class certification, particularly with respect to certification of an injunctive relief class under Rule 23(b)(2), which does not require Plaintiffs to show that common issues predominate over individual ones.  However, Plaintiffs did face risks even in trying to obtain class-wide injunctive relief. "Injunctive relief is appropriate when a party demonstrates that: (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction." *United States v. Parke*, No. 12-cv-01787-SU, 2014 U.S. Dist. LEXIS 27448, at *15 (D. Or. Jan. 8, 2014) (citing *N. Cheyenne Tribe v. Norton*, 503 F.3d 836, 843 (9th Cir. 2007)). Defendants have argued that Plaintiffs do not have a "real or immediate" threat of harm because injunctive relief requires a showing of imminent threats or harm, and the Amended Complaint does not cite any recent examples of trespass. *See De Gonzalez v. City of Richmond*, No. C-14-00386 DMR, 2014 WL 2194816, at *4 (N.D. Cal. May 23, 2014) (dismissing claim for injunctive relief where threat was neither real nor immediate). Defendant also has noted that although it received many complaints of trespass in the early months after the game was launched, the number of complaints has markedly decreased since then.  Plaintiffs believe they had a strong counterargument, that the continuing placement of game items on private properties would continue to attract players to them, and thus, the threat of trespass was still imminent.  However, there was no guarantee that they would prevail on this issue.

In sum, while Plaintiffs have meritorious claims and strong arguments to support them, success was not guaranteed. The substantial benefits provided in this Settlement versus the significant risks of continuing litigation is therefore also supportive of preliminary approval.

E.      **The Proposed Service Awards are Fair and Reasonable.**

At the time of final approval, Plaintiffs will request service awards of $1,000 apiece for the named plaintiffs to compensate them for their service to the class and in assisting to bring about the substantial benefits of the settlement. Such incentive awards are "intended to compensate class representatives for work undertaken on behalf of a class" and "are fairly typical in class action cases." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) (citation omitted). Here, the Named Plaintiffs acted for the benefit of the class, reviewed documents provided to them by Plaintiffs' Counsel, participated in discovery, including searching for relevant documents and proving relevant information for interrogatory responses, discussed the case with Plaintiffs' counsel, and reviewed settlement communications.   The $1,000 payments Plaintiffs request are in line with those found reasonable in other class actions in this district. *See Id.* at 947-48 (affirming nine incentive awards of $5,000 in $27 million settlement); *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 U.S. Dist. LEXIS 38667, at *108-09 (N.D. Cal. Apr. 1, 2011) (citing "ample case law finding $5,000 to be a reasonable amount for an incentive payment" and collecting cases); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457, 463 (9th Cir. 2000) (approving incentive payments of $5,000 in settlement of $1.725 million); *Hopson v. Hanesbrands Inc.*, No. CV-08-0844 EDL, 2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009) (granting $5,000 incentive award); *Jacobs v. Cal. State Auto. Ass'n Inter-Ins. Bureau,* No. C 07-00362 MHP, 2009 WL 3562871, at *5 (N.D. Cal. Oct. 27, 2009) (granting $7,500 award while noting that $5,000 is "presumptively reasonable"); *Chun-Hoon,* 716 F. Supp. 2d at 855 (granting incentive awards of $5,000 "in light of the work performed by each plaintiff and the risk each faced"). Moreover, the requested service awards do not undermine adequacy because there is no "*ex ante* incentive agreement between the class representatives and class counsel" and the settlement does not "condition[ ] the incentive awards on the class representatives' support for the settlement." *In re Online DVD-Rental Antitrust Litig.,* 779 F.3d at 943.

**IV.   THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT AND PLAINTIFFS' COUNSEL APPOINTED CLASS COUNSEL**

**A.   Certification of the Settlement Class Under Rule 23(b)(2)**

To grant preliminary approval of the settlement, the Court must also determine that it "will likely be able to … certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e). This requires satisfying the four requirements of Rule 23(a) (numerosity, commonality, typicality and adequacy of representation) as well as one of the three subdivisions of Rule 23(b). Here, the Settlement Class meets the requirements of Rule 23(a) as well as the requirements to certify an injunctive class under Rule 23(b)(2).

**1.   Numerosity**

Numerosity is satisfied where "joinder of all [class] members is impracticable." *Hanlon*, 150 F. 3d at 1019. Courts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members. *Collins v. Cargill Meat Sols. Corp.*, 274 F.R.D. 294, 300 (E.D. Cal. 2011). In this action, it is undisputed that Niantic placed virtual game items on or within 100 meters of private property throughout the United States. Although there is no precise number as to how many of these game items fell on or within 100 meters of private property, public mapping information easily demonstrates that numerosity is met here.   Numerosity is satisfied.

**2.   Typicality and Commonality under Rule 23(a)**

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Commonality "has been construed permissively [where] ... [t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019. Typicality refers to the nature of the class representatives' claims, not to the specific facts from which they arose or the particular relief sought. Representative claims "are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Id*. at 1020.

The Named Plaintiffs' claims are typical of, and common to the class. Plaintiffs contend that the Class claims all arise from a common course of conduct by Defendant towards each Class Member: its unauthorized placement of Pokémon Game Items on or near their properties,

{00309711;15 }

and its continued operation of a game that rewarded players for visiting and remaining in the vicinity of these items.

Niantic's primary defense to the claims is also common to the class. Niantic has argued that it did not encourage trespass or nuisance because its "Terms of Use" told Pokémon Go players not to trespass. Thus, as Niantic has itself framed the issue throughout this litigation, whether its conduct amounts to sufficient "encouragement" for trespass turns on whether the risk of trespass or nuisance created by its actions were outweighed by anything it did to try to prevent trespass or nuisance. Because all of this focuses on Niantic and what it did and did not do, the evidence about it is common to class members. Thus, Plaintiffs' claims arise out of the same wrongful conduct and are premised on the same legal theory as the Class claims.

### 3.    Adequacy of Representation

Rule 23(a)(4) permits class certification if the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This factor requires (1) that the proposed representative Plaintiffs do not have conflicts of interest with the proposed class, and (2) that Plaintiffs are represented by qualified and competent counsel. *Hanlon*, 150 F.3d at 1020.

Here, Plaintiffs have sought injunctive relief that is identical to the relief sought for the rest of the Class, in the form of a court order enjoining Niantic from placing Pokémon Go Game Items on private properties. Moreover, they have established their adequacy by securing experienced counsel to litigate their claims and secure the proposed settlement, which, if approved, will convey a substantial benefit on the Class.

The Named Plaintiffs' interests are aligned with the class; the Settlement does not afford them preferential treatment.

### 4.    Class Certification is Appropriate under Rule 23(b)(2)

Rule 23(b)(2) certification is appropriate when a defendant has "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief is appropriate," and requires no showing of superiority or predominance. A "finite proposed class period does not defeat certification of a class under Rule 23(b)(2)." *In re Static Random Access Memory (SRAM)*

{00309711;15 }

*Antitrust Litig.*, 264 F.R.D. 603, 611 (N.D. Cal. 2009); *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 669 (E.D. Mich. 2011) ("allegations which define a class period will not foreclose a claim for injunctive relief where the complaint alleges ongoing conduct").

Common issues need not predominate for plaintiffs to seek relief under Rule 23(b)(2); "[i]t is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole." *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998). Relief may be appropriate under Rule 23(b)(2) "[e]ven if some class members have not been injured by the challenged practice." *Id.*

This case is especially suited for class wide treatment under Rule 23(b)(2). Niantic has clearly acted in a way that is "generally applicable to the class" by indiscriminately placing game items on private properties throughout the United States without first obtaining permission. The primary complaint by the Plaintiffs, that trespass and nuisance were caused by Niantic's placement of game items on private property, can only be remedied by Niantic changing its practices to minimize interference with private property owners' rights.  Damages are merely incidental to the injunctive relief sought. Thus, even in the absence of monetary damages, a reasonable plaintiff would still bring this action to attempt to enjoin Niantic from infringing on their property rights.

### 5.    Appointment of Counsel under Rule 23(g)

When certifying a class, the Court must also consider the appointment of class counsel. The relevant factors in deciding whether to approve a firm as class counsel are: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. *See* Fed. R. Civ. P. 23(g)(1)(A). The court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Plaintiffs request that Pomerantz LLP be appointed as Class Counsel. The Pomerantz Firm has been litigating complex class actions for over 80 years, and has earned many accolades

from the courts for its excellent advocacy. *See In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG), 2010 WL 2653354, at *6 (E.D.N.Y. June 24, 2010) ("The court also notes that, throughout this litigation, it has been impressed by [Pomerantz LLP]'s acumen and diligence. The briefing has been thorough, clear, and convincing, and as far as the court can tell, [Pomerantz] has not taken short cuts or relaxed its efforts at any stage of the litigation."); *In re Elan Corp. Sec. Litig.*, No. 02 Civ. 865 (WKFM), 2002 WL 31720410, at *5 (S.D.N.Y. Dec. 3, 2002) (appointing Pomerantz as lead counsel, noting the firm is "accomplished in the field of securities litigation and eminently qualified for this assignment.").

Moreover, the Firm has established its adequacy in this particular case by taking on a novel and challenging case; defeating Defendant's motion to dismiss; pursuing substantial discovery; and obtaining a highly favorable outcome for the Class.

## V.   THE COURT SHOULD APPROVE THE NOTICE PROGRAM

Under Rule 23(e), before approving a proposed class-action settlement, a court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1); *see also* William B. Rubenstein*, Newberg on Class Actions* § 4:36 (5th ed. rev. June 2016) ("Rule 23(c) makes notice of a *class certification decision discretionary* [for Rule 23(b)(2) class actions], but Rule 23(e) requires that (b)(2) class members receive notice of any *proposed settlement*") (emphasis in original); *Berry v. Schulman*, 807 F.3d 600, 612 (4th Cir. 2015) ("Rule 23(e)'s settlement approval process provides additional protection, ensuring that Rule 23(b)(2) class members receive notice of a proposed settlement and an opportunity to object"); *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 197 (5th Cir. 2010) ("Notice of a mandatory class settlement, which will deprive class members of their claims, therefore requires that class members be given information reasonably necessary for them to make a decision whether to object to the settlement.").

However, while Rule 23(b)(2) settlement notice must be done "in a reasonable manner," it need not satisfy the notice requirements applicable to Rule 23(b)(3) class actions, which mandate the "best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Accordingly, courts have typically

1    required "less notice in Rule 23(b)(2) actions, as their outcomes do not truly bind class

2    members." *Lilly v. Jamba Juice Co.*, No. 13-CV-02998-JST, 2015 WL 1248027, at *8-9 (N.D.

3    Cal. Mar. 18, 2015); *DL v. Dist. of Columbia*, 302 F.R.D. 1, 17 (D.D.C. 2013) (courts "have

4    applied the requirement more flexibly in situations where individual notice to class members is

5    not required, such as suits for equitable relief") (citation and quotation marks omitted), *aff'd,* 860

6    F.3d 713 (D.C. Cir. 2017). Direct notice is not required.

7            In certain circumstances, courts have approved Rule 23(b)(2) settlements with no class

8    notice at all, such as where "notice to class members would not serve the purpose of ensuring

9    that the settlement is fair but would, in fact, jeopardize the settlement." *Green v. Am. Express*

10   *Co.*, 200 F.R.D. 211, 212-13 (S.D.N.Y. 2001). The "key question in determining whether notice

11   is required is 'whether the rights of absent class members were compromised in any way.'" *Lilly,*

12   2015 WL 1248027, at *8 (citation omitted); *Jermyn v. Best Buy Stores, L.P.*, No. 08 Civ. 214

13   CM, 2012 WL 2505644, at *12 (S.D.N.Y. June 27, 2012) ("Because this injunctive settlement

14   specifically preserves and does not release the class members' monetary claims, notice to the

15   class members is not required").

16           In this case, the Parties have agreed that Class Notice is warranted so that Class Members

17   are aware of the remedies available to them under the Settlement as well as of their opportunity

18   to object. Niantic has agreed to bear all reasonable costs of the Notice Program.

19           A copy of the proposed Long Form Notice is attached as Exhibit A-1 to the Settlement

20   Agreement. The proposed Long Form Notice fairly apprises class members of the action and

21   their rights. Specifically, it: 1) describes the claims in the Action; 2) defines the class;

22   3) describes the essential terms of the Settlement and the remedial measures that Niantic has

23   agreed to enact; 4) describes clearly the options open to the class members, the relevant hearing

24   dates for the approval motion, and the deadlines for class members to take action; 5) describes

25   the process by which class members can object to the settlement; 6) discloses the range of

26   attorneys' fees, costs and service awards that Plaintiffs will be seeking at the final approval

27   hearing; and 7) displays the address and phone number of class counsel, the location where class

28

{00309711;15 }

members can obtain the underlying Settlement Agreement, and explains how to make inquiries about the Settlement.

As part of the Notice Plan, the Long Form Notice, along with the Stipulation and all relevant Court orders and docket entries, will be posted on the Class Settlement Website. Short Form Notice, substantially in the form attached as Exhibit A-2 to the Settlement Agreement, will be published in several nationally prominent news publications including *USA Today* and in two prominent publications targeted towards public parks and/or public park systems. Finally, Niantic shall cause the Long Form Notice to be posted on the Pokémon GO support website within ten (10) days following the Court granting preliminary approval of the settlement.

Plaintiffs believe that this Notice Program is sufficient to reach a substantial portion of the Class. The periodicals and publications described above are targeted towards the Class demographics (*i.e.*, private property owners), and have an aggregate circulation of several million.

## VI.     FINAL APPROVAL HEARING

Plaintiffs propose that, following dissemination and publication of the Notices, Settlement Class Members should have 60 days in which to mail their written objections, allowing sufficient time thereafter for the parties to address the objections in their moving papers. Plaintiffs request that the Final Approval hearing be set for no earlier than 100 days after preliminary approval.

## VII.    CONCLUSION

For all the foregoing reasons, the Motion for Preliminary Approval of the Settlement should be granted, the proposed Class should be certified for settlement purposes, Named Plaintiffs Scott Dodich and Jayme Gotts-Dodich; The Villas of Positano Condominium Association, Inc.; Jill M. Barbarise; Jason Sarkis; Melissa Perez; Congshan "Sam" Hao; Bruce Garton; Sally Rogers; Deborah J. Pimentel; and Loren Morgan should be appointed as class representatives; Pomerantz LLP should be appointed Class Counsel.

The Court should also direct dissemination of the class notice pursuant to the Notice Program described herein; and set a hearing for the purpose of deciding whether to grant final

approval of the settlement and Plaintiffs' motion for attorneys' fees and expenses, and whether to grant service awards for the Class Representatives.

Dated: February 14, 2019

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Murielle J. Steven Walsh*
Jeremy A. Lieberman
Murielle J. Steven Walsh
Aatif Iqbal
600 Third Avenue
20th Floor
New York, NY 10016
Phone: 212-661-1100
Fax: 917-463-1044
Email: jalieberman@pomlaw.com
mjsteven @pomlaw..com
aiqbal@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Phone: 312-377-1181
Fax: 312-229-8811
Email: pdahlstrom@pomlaw.com

**POMERANTZ LLP**
Jennifer Pafiti (SB # 282790)
1100 Glendon Avenue
Los Angeles, CA 90024
Phone: 310-405-7190
Email: jpafiti@pomlaw.com

***Counsel for Plaintiffs***

{00309711;15 }