Jennifer Pafiti (SBN 282790)
**POMERANTZ LLP**
1100 Glendon Avenue
Los Angeles, CA 90024
Phone: 310-405-7190
Email: jpafiti@pomlaw.com

(additional counsel on signature page)

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

|  |  |
|---|---|
| **IN RE POKÉMON GO NUISANCE LITIGATION** | **Case No. 3:16-cv-04300-JD** <br><br> <u>**CLASS ACTION**</u> <br><br> **PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES AND SERVICE AWARDS** <br><br> Date:       August 22, 2019 <br> Time:       10:00 a.m. <br> Courtroom:   11, 19th Floor <br> Judge:      Hon. James Donato |

{00329103;11 }

# **Table of Contents**

Issues to Be Decided ................................................................................................. v

Introduction ................................................................................................................ 1

Procedural History Relevant to Attorneys' Fees and Expenses and Service Awards ................... 1

Argument .................................................................................................................... 3

I.  Plaintiffs' Counsel Should Be Awarded $4 Million in Attorneys' Fees and Reimbursement of Expenses ................................................................ 3

A.  Legal Standard ............................................................................... 3

B.  Plaintiffs' Counsel's Lodestar Was Reasonably Incurred on Behalf of the Settlement Class ................................................ 3

C.  A Lodestar Multiplier of 1.65 is Warranted and Appropriate ................... 4

D.  Relevant Ninth Circuit Factors Support the Requested Fee Award .......... 5

1.  The Favorable Result for the Settlement Class ............................. 5

2.  The Novelty and Difficulty of the Questions Presented, the Skill Required to Litigate the Case Effectively, and the Skill and Experience of Counsel ................................................ 6

3.  The Contingent Nature of the Fee, the Financial Burden Carried by Counsel, and the Risks of Litigation ............................ 8

4.  The Settlement Class's Reaction ................................................. 10

II.  The Proposed Service Awards are Fair and Reasonable ........................................ 10

Conclusion ................................................................................................................. 11

{00329103;11 }

# <u>Table of Authorities</u>

Page(s)

**Cases**

*Ballen v. City of Redmond*,
    466 F.3d 736 (9th Cir. 2006) ...........................................................................................4

*Chun-Hoon v. McKee Foods Corp.*,
    716 F. Supp. 2d 848 (N.D. Cal. 2010) ..........................................................................11

*City of Riverside v. Rivera*,
    477 U.S. 561 (1986) .........................................................................................................3

*Cullen v. Whitman Med. Corp.*,
    197 F.R.D. 136 (E.D. Pa. 2000) ....................................................................................10

*De Gonzalez v. City of Richmond*,
    No. C-14-00386 DMR, 2014 WL 2194816 (N.D. Cal. May 23, 2014) ............................7

*Destefano v. Zynga, Inc.*, No. 12-cv-04007-JSC,
    2016 U.S. Dist. LEXIS 17196 (N.D. Cal. Feb. 11, 2016) ...............................................8

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) .........................................................................................3

*Helsel v. Morcom*,
    555 N.W.2d 852 (Mich. Ct. App. 1996) ..........................................................................6

*Hopson v. Hanesbrands Inc.*,
    No. CV-08-0844 EDL, 2009 WL 928133 (N.D. Cal. Apr. 3, 2009) ..............................11

*In re Am. Apparel S'holder Litig.*, No. CV 10-06352 MMM,
    2014 U.S. Dist. LEXIS 184548 (C.D. Cal. July 28, 2014) .........................................8, 9

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ...........................................................................................3

*In re Ferrero Litig.*,
    583 F. App'x 665 (9th Cir. 2014) ....................................................................................3

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
    279 F.R.D. 151 (S.D.N.Y. 2011) ...................................................................................11

*In re Heritage Bond Litig.*,
    No. 02-ML-1475-DT (RCX), 2005 WL 1594389 (C.D. Cal. June 10, 2005) .........7, 9, 10

*In re Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007) ..........................................................................10

*In re Mego Fin. Corp. Sec. Litig.*,
 213 F.3d 454 (9th Cir. 2000) ................................................................................11

*In re Omnivision Techs., Inc.*,
 559 F. Supp. 2d 1036 (N.D. Cal. 2008) ......................................................8, 9, 10

*In re Online DVD-Rental Antitrust Litig.*,
 779 F.3d 934 (9th Cir. 2015) .............................................................................10, 11

*In re Warner Commc'ns Sec. Litig.*,
 618 F. Supp. 735 (S.D.N.Y. 1985).............................................................................8

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
 19 F.3d 1291 (9th Cir. 1994) ...........................................................................4, 8, 9

*Jacobs v. Cal. State Auto. Ass'n Inter-Ins. Bureau*,
 No. C 07-00362 MHP, 2009 WL 3562871 (N.D. Cal. Oct. 27, 2009) ...................11

*McKibben v. McMahon*,
 No. 14-2171 JGB, 2019 U.S. Dist. LEXIS 34110 (C.D. Cal. Feb. 28, 2019) ..........3

*Stanger v. China Elec. Motor, Inc.*,
 812 F.3d 734 (9th Cir. 2016) .....................................................................................8

*Staton v. Boeing Co.*,
 327 F.3d 938 (9th Cir. 2003) ................................................................................3, 4

*United States v. Parke*,
 No. 12-cv-01787-SU, 2014 U.S. Dist. LEXIS 27448 (D. Or. Jan. 8, 2014)............7

*Van Vranken v. Atl. Richfield Co.*,
 901 F. Supp. 294 (N.D. Cal. 1995) ..........................................................................5

*Vizcaino v. Microsoft Corp.*,
 290 F.3d 1043 (9th Cir. 2002) ...................................................................4, 5, 9, 10

*Wren v. RGIS Inventory Specialists*,
 No. C-06-05778 JCS, 2011 U.S. Dist. LEXIS 38667 (N.D. Cal. Apr. 1, 2011) ....11

*Yeagley v. Wells Fargo & Co.*,
 365 F. App'x 886 (9th Cir. 2010) ..............................................................................3

**Rules**

Fed. R. Civ. P. 23 ..............................................................................................................1, 7

**Other Authorities**

*Newberg on Class Actions* (5th ed. 2014)............................................................................5

Restatement (Second) of Torts (1965) ............................................................................7

# **Issues to Be Decided**

1) Whether Plaintiffs' request for an award of attorneys' fees and expenses in the amount of $4 million, payable to Plaintiffs' Counsel by Niantic without taking anything away from the Settlement Class, should be granted.

2) Whether Plaintiffs' request for a service award of $2,500 to each Named Plaintiff ($27,500 in total) for their time and effort representing the Settlement Class—likewise payable by Niantic without taking anything away from the Settlement Class—should be granted.

## Introduction

Plaintiffs Scott Dodich and Jayme Gotts-Dodich; The Villas of Positano Condominium Association, Inc., on behalf of its members (the "Villas"); Jill M. Barbarise; Jason Sarkis; Melissa Perez; Congshan "Sam" Hao; Bruce Garton; Sally Rogers; Deborah J. Pimentel; and Loren Morgan (collectively "Plaintiffs"), on behalf of themselves and the Settlement Class, respectfully move this Court, pursuant to Fed. R. Civ. P. 23(e), for an order: (1) granting an award of attorneys' fees and expenses equaling $4 million (including $109,196.47 for reimbursement of reasonable and necessary expenses that Plaintiffs' Counsel incurred in prosecuting this Action, and a fee award of $3,890,803.53); and (2) granting a service award of $2,500 to each Named Plaintiff ($27,500 in total) for their time and effort representing the Settlement Class.

This motion is based on this Memorandum of Law, the Settlement Agreement, Addendum 1 to the Settlement Agreement (ECF No. 134) (the "Addendum"), the pleadings, orders, transcripts and other papers on file in this action, and any further evidence and arguments that may be presented at a hearing on this matter.

## Procedural History Relevant to Attorneys' Fees and Expenses and Service Awards

The relevant factual allegations along with the procedural history and settlement negotiations are set forth in detail in the accompanying Final Approval Motion. The discussion below details only the procedural history specifically relevant to the issues of attorneys' fees and expenses and service awards.

On February 14, 2019, Plaintiffs moved for preliminary approval of the Settlement. (ECF No. 117.) At that time, the parties' agreement with respect to attorneys' fees, as set forth in Section 2.3 of the Settlement Agreement, was that Plaintiffs would file a motion for fees with the Court and that Defendant retained the right to object to any specific dollar amount requested by Plaintiffs but would pay any award granted by the Court (up to a maximum of $8 million). However, the parties did not agree on any particular dollar amount.

At a hearing on March 14, 2019, the Court noted that, because the Settlement was injunctive, any attorney fee award would have "no impact on any class money" and that if the parties were able to work out a fee agreement, "I can almost guarantee I'll sign it because . . . I don't have any reason to go into it." (Hr'g Tr. at 11:20–12:24.) Accordingly, the parties agreed to try to reach a fee agreement via mediation before Chief Judge Spero.

At a settlement conference before Chief Judge Spero on April 30, 2019, the parties reached an agreement regarding attorneys' fees, costs, and service awards. (ECF Nos. 121, 130.) Specifically, as memorialized in Addendum 1 to the Settlement Agreement (the "Addendum"), the parties agreed that Plaintiffs would petition the Court for (1) an award of attorneys' fees and expenses equaling $4 million, inclusive of all past and future attorneys' fees and costs of any kind related to this matter, and (2) a service award of $2,500 to each Plaintiff, totaling $27,500. (ECF No. 134.)

On May 2, 2019, the Court entered an order preliminarily approving the Settlement and directing that notice be disseminated to the Settlement Class Members (ECF No. 131) (the "Preliminary Approval Order"). Pursuant to the Preliminary Approval Order, the Long-Form Notice, Short-Form Notice, Complaint, Settlement Agreement, and Preliminary Approval Order were all posted on https://www.pokemongopropertysettlement.com/ (the "Class Settlement Website") on May 16, 2019. *See* Declaration of Jennifer M. Keough Regarding Settlement Administration ¶¶ 6–7. The Long-Form Notice informed Class Members that Plaintiffs' Counsel would apply for an award of attorneys' fees and expenses not to exceed $4 million and for service awards of up to $2,500 each for the Named Plaintiffs. In addition, both the Long-Form Notice and the Class Settlement Website inform Settlement Class members of the deadline to file objections and the date of the Final Approval Hearing, and provide contact information for Plaintiffs' Counsel.

As of June 12, 2019, Plaintiffs' Counsel has expended **4,621 hours** in prosecuting this Action, resulting in a lodestar of **$2,351,938.50**. Plaintiffs' Counsel expects to expend many more hours in connection with this Action in the future in the course of seeking final approval of the Settlement and then in monitoring Niantic's compliance with the Settlement.

# <u>Argument</u>

## I.    Plaintiffs' Counsel Should Be Awarded $4 Million in Attorneys' Fees and Reimbursement of Expenses

### A.    Legal Standard

In "injunctive relief class actions, courts often use a lodestar calculation because there is no way to gauge the net value of the settlement or any percentage thereof." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *see also Yeagley v. Wells Fargo & Co.*, 365 F. App'x 886, 887 (9th Cir. 2010) (holding that the district court should have used the lodestar method where injunctive relief was sought and no common fund was created); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) ("The 'lodestar method' is appropriate in class actions…where the relief sought—and obtained—is often primarily injunctive in nature and thus not easily monetized.").

"Under the lodestar method, a court need not determine the 'value' of particular injunctive relief because fees are calculated through an assessment of time expended on the litigation, counsel's reasonable hourly rate and any multiplier factors such as contingent representation or quality of work." *In re Ferrero Litig.*, 583 F. App'x 665, 668 (9th Cir. 2014). Fee awards based on the lodestar method are not correlated to the size of recovery but instead look to the attorneys' reasonable hours and rates, as well as the public benefit conferred by the litigation. *City of Riverside v. Rivera*, 477 U.S. 561, 575 (1986); *McKibben v. McMahon*, No. 14-2171 JGB (SPx), 2019 U.S. Dist. LEXIS 34110, at *21-22 (C.D. Cal. Feb. 28, 2019). Moreover, "the parties may negotiate and settle the amount of statutory fees along with the merits of the case" and "the amount of such attorneys' fees can be approved if they meet the reasonableness standard when measured against statutory fee principles." *Staton v. Boeing Co.*, 327 F.3d 938, 972 (9th Cir. 2003).

### B.    Plaintiffs' Counsel's Lodestar Was Reasonably Incurred on Behalf of the Settlement Class

Under the lodestar method, the first step is calculating the "raw" lodestar figure, by multiplying (i) the number of hours the prevailing party reasonably expended on the litigation

by (ii) a reasonable hourly rate for the region and for the experience of the lawyer. *Staton* 327 F.3d at 965.

Here, Plaintiffs' Counsel aggressively prosecuted this Action with no guarantee of receiving any remuneration. Throughout this litigation, Plaintiffs' Counsel has been aware of numerous risks, including the difficulty of proving key elements of the case at summary judgment, at trial, and/or on appeal. In the face of all of these challenges, Plaintiffs' Counsel expended **4,621 hours** in professional services—resulting in a total lodestar of **$2,351,938.50**—and incurred **$109,196.47** in out-of-pocket expenses in their efforts to litigate the Action and to secure and advance the Settlement. *See* Walsh Decl. ¶¶ 5, 7. Importantly, this lodestar does not include the additional time and effort that they will continue to devote to the case on behalf of the Settlement Class by, for example, monitoring Niantic's compliance with the Settlement and addressing any complaints from Settlement Class Members who have already gone through Niantic's customer service process but remain dissatisfied.

### C.    A Lodestar Multiplier of 1.65 is Warranted and Appropriate

After calculating the raw lodestar, a court then considers whether to enhance that lodestar by applying a multiplier in light of factors such as:

(1)    the results obtained for the class;

(2)    the risks and burdens for plaintiffs' counsel, including whether the fee is fixed or contingent;

(3)    how the requested award compares to awards in similar cases;

(4)    the novelty and difficulty of the questions presented and the skill required to litigate the case properly, and

(5)    the experience, reputation, and ability of the attorneys.

*See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002); *Ballen v. City of Redmond,* 466 F.3d 736, 746 (9th Cir. 2006). In particular, "courts have routinely enhanced the lodestar to reflect the risk of non-payment." *In re Wash. Pub. Power Supply Sys. Sec. Litig.,* 19 F.3d 1291, 1300-02 (9th Cir. 1994) (district court's failure to apply lodestar multiplier in a case "fraught with risk" where "recovery was far from certain" was an abuse of discretion).

{00329103;11 }

Here, the requested $4 million award amounts to a multiplier of 1.65 on Plaintiffs' Counsel's lodestar.[1] "Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation." *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995)). Accordingly, a multiplier of 1.65 is unquestionably reasonable when compared to frequently awarded multipliers in cases from this Circuit. For example, the Ninth Circuit approved a fee representing a lodestar multiplier of 3.65. *Vizcaino,* 290 F.3d at 1051-52 & n.6 (listing 23 settlements with an average multiplier of 3.28). Accordingly, the favorable result under the circumstances, combined with the substantial risks faced by Plaintiffs and Plaintiffs' Counsel, and the other factors cited herein, support the requested fee award.

**D.    Relevant Ninth Circuit Factors Support the Requested Fee Award**

The reasonableness and appropriateness of this multiplier is further confirmed by considering the relevant factors set forth by the Ninth Circuit.

**1.    The Favorable Result for the Settlement Class**

Courts have recognized that the result achieved is an important factor to be considered in making a fee award. *See Vizcaino*, 290 F.3d at 1048. Here, the Settlement is an excellent result for the Class and also has no "obvious substantive defects such as . . . overly broad releases of liability." *Newberg on Class Actions* § 13:15, at 326 (5th ed. 2014). The Settlement release of claims for equitable and injunctive relief is limited in nature and is tailored exactly to the type of relief obtained for the Class (*i.e*., remedial measures). No class member will release claims for monetary damages as part of the Settlement. Nor does the Settlement give the Named Plaintiffs preferential treatment. Class members are free to pursue any monetary remedies against Niantic arising from the same conduct alleged here. In exchange for the limited release, Niantic has agreed to be bound by substantial constraints regarding its game operations and policies that are specifically intended to prevent the future placement of game items on private property, and thus prevent future trespass and nuisance by Pokémon Go players.

---

[1] Because the requested $4 million award includes $109,196.47 for reimbursement of reasonable and necessary expenses, the requested fee award is $3,890,803.53.

For example, the Settlement directly addresses Plaintiffs' complaints that Niantic ignored complaints about its placement of game items on their properties. Niantic has agreed to make reasonable efforts to resolve and respond to complaints within 15 days (for at least 95% of cases each year). Another significant benefit for Plaintiffs is that Niantic has agreed, upon receiving a complaint/removal request from an owner of a single-family residential property, to remove the POI within 5 days of determining that such POI is on or within 40 meters of the private property. In order to prevent the future placement of POIs on private property, Niantic has agreed to improve its review procedures for proposed POIs by having a Niantic employee or contractor manually review a statistically significant portion of proposed POI locations, with the purpose of avoiding placement of the POI on private property.

In addition, Niantic has agreed to maintain a mechanism on its website for public parks to request that their normal hours of operation be applied to Pokémon Gyms and Pokéstops, to mitigate the risk of future nuisances that may be created by groups of players congregating in parks late into the night. At least once a year for each year in the Settlement Period, Niantic will place a public posting on its website that includes a notification to parks about their ability to make this request. Finally, the Class is further protected by the audit mechanism in the Settlement, which provides Plaintiffs' counsel with at least one audit during the Settlement Period (and a second audit if Niantic is found to be materially non-compliant with the settlement terms).

<b>2.    The Novelty and Difficulty of the Questions Presented, the Skill Required to Litigate the Case Effectively, and the Skill and Experience of Counsel</b>

This case presented novel issues of law regarding virtual trespass that have been untested in the courts, *i.e.*, whether Niantic could be liable for trespass because it placed virtual game items on private property without the property owners' consent. To prevail on a claim of trespass, Plaintiffs would need to establish that Defendant either trespassed itself or did "something by way of encouragement, advice, or suggestion" that led Pokémon Go players to trespass onto private property. *Helsel v. Morcom*, 555 N.W.2d 852, 856 (Mich. Ct. App. 1996). Defendant, however, has argued that Plaintiffs would not only need to show that Niantic did

something to encourage trespass but also that Niantic knew that its actions would "to a substantial certainty result in" trespass. Restatement (Second) of Torts § 158, cmt. i–j (1965). Niantic pointed to its policies which contained admonitions to players to stay off private property, as evidence that it did not, in fact, encourage or advise players to commit trespass.

This case also raised risky novel questions affecting class certification. Plaintiffs believe they have strong arguments in support of class certification, particularly with respect to certification of an injunctive relief class under Rule 23(b)(2), which does not require showing that common issues predominate over individual ones. However, Plaintiffs did face risks even in trying to obtain class-wide injunctive relief. "Injunctive relief is appropriate when a party demonstrates that: (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction." *United States v. Parke*, No. 12-cv-01787-SU, 2014 U.S. Dist. LEXIS 27448, at *15 (D. Or. Jan. 8, 2014) (citing *N. Cheyenne Tribe v. Norton*, 503 F.3d 836, 843 (9th Cir. 2007)). Defendants have argued that Plaintiffs do not have a "real or immediate" threat of harm because injunctive relief requires a showing of "imminent" threats or harm. *See De Gonzalez v. City of Richmond*, No. C-14-00386 DMR, 2014 WL 2194816, at *4 (N.D. Cal. May 23, 2014) (dismissing claim for injunctive relief where threat was neither real nor immediate). Defendant also has noted that although it received many complaints of trespass in the early months after the game was launched, the number of complaints has markedly decreased since then. Plaintiffs believe they had a strong counterargument, that the continuing placement of game items on private properties would continue to attract players to them, and thus, the threat of trespass was still imminent. However, there was no guarantee that they would prevail on this issue. Navigating these novel and difficult questions required considerable skill, which supports the requested fee award.

"The experience of counsel is also a factor in determining the appropriate fee award." *In re Heritage Bond Litig.*, No. 02-ML-1475-DT (RCX), 2005 WL 1594389, at *12 (C.D. Cal.

June 10, 2005). Plaintiffs' Counsel are experienced and skilled practitioners in class action litigation. *See* Walsh Decl. Ex. A (Pomerantz Firm Resume). The "prosecution and management of a complex [] class action requires unique legal skills and abilities" that are to be considered when evaluating fees. *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008). Throughout the conduct of this litigation, Plaintiffs' Counsel demonstrated considerable skill. Plaintiffs' Counsel overcame Defendant's motion to dismiss and then, throughout the litigation, demonstrated to Defendant the skill and commitment necessary to bring the case to trial. The skill demonstrated by Plaintiffs' Counsel supports the requested fee.

"The quality of opposing counsel is also important in evaluating the quality of plaintiffs' counsels' work." *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985), *aff'd,* 798 F.2d 35 (2d. Cir. 1986); *see also Destefano v. Zynga, Inc.*, No. 12-cv-04007-JSC, 2016 U.S. Dist. LEXIS 17196, at \*59 (N.D. Cal. Feb. 11, 2016); *In re Am. Apparel S'holder Litig.*, No. CV 10-06352 MMM (JCGx), 2014 U.S. Dist. LEXIS 184548, at \*72-73 (C.D. Cal. July 28, 2014). Here, Defendant was represented by prominent and highly-skilled attorneys from Cooley LLP with substantial class-action experience who vigorously defended this Action.

### 3. The Contingent Nature of the Fee, the Financial Burden Carried by Counsel, and the Risks of Litigation

A determination of a fair fee must include consideration of its contingent nature. It is "an established practice in the private legal market" to reward attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases. *WPPSS*, 19 F.3d at 1299 (citing Richard Posner, *Economic Analysis of Law*, § 21.9, at 534-35 (3d ed. 1986)). In fact, contingent fees that may far exceed the market value of the services, if rendered on a non-contingent basis, are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis, regardless of whether they win or lose. *Id.* "Risk multipliers incentivize attorneys to represent class clients, who might otherwise be denied access to counsel, on a contingency basis." *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 741 (9th Cir. 2016).

Courts have consistently recognized that the risk of receiving little or no recovery is a factor in considering an award of attorneys' fees. *Vizcaino*, 290 F.3d at 1050.

Here, as detailed above, this case presented novel issues of law regarding virtual trespass that have been untested in the courts, *i.e.*, whether Niantic could be liable for trespass because it placed virtual game items on private property without the property owners' consent. There was no assurance that Plaintiffs would prevail in proving their claims or in obtaining any relief, whether on an individual or a class-wide basis.

In sum, while Plaintiffs have meritorious claims and strong arguments to support them, the obstacles faced by Plaintiffs and Plaintiffs' Counsel in seeking relief from Defendant were significant. "It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced." *Heritage,* 2005 WL 1594403, at *7. Nevertheless, Plaintiffs' Counsel undertook this litigation with substantial risk that they might not obtain any relief. *See Omnivision*, 559 F. Supp. 2d at 1047; *WPPSS*, 19 F.3d at 1299-1301. Plaintiffs' Counsel made a substantial outlay of both time and money in this case pursuing the claims at issue, resources that could have been devoted to the prosecution of other matters, while facing the very real risk of recovering nothing. As endorsed by the Ninth Circuit, the risk of litigation is an important, if not the foremost, factor in determining a fee award. *See Vizcaino*, 290 F.3d at 1048-49 (that the case was "fraught with risk and recovery was far from certain" is "a relevant circumstance" that courts must take into account); *see also Am. Apparel*, 2014 WL 10212865, at *21 ("The risks assumed by Class Counsel, particularly the risk of non-payment or reimbursement of expenses, is a factor in determining counsel's proper fee award."). Moreover, the absence of any parallel government action made the contingent risk even higher.

Plaintiffs' Counsel has received no compensation since this Action was filed and has incurred significant litigation expenses for the benefit of the Settlement Class. Although reimbursement was not assured, Plaintiffs' Counsel advanced $109,196.47 in expenses to date for the benefit of the Settlement Class. *See* Walsh Decl. ¶ 7. Any fee award or expense reimbursement to Plaintiffs' Counsel has always been at risk and completely contingent both

{00329103;11 }

9

on the result achieved and on this Court's exercise of its discretion in making any award. Thus, this factor militates in favor of the Court granting Plaintiffs' Counsel's requested award of attorneys' fees and reimbursement of expenses. *See Heritage,* 2005 WL 1594403, at \*21 (recognizing the risk of non-payment or reimbursement of expenses as a factor weighing strongly in favor of counsel's requested fee award); *see also Vizcaino*, 290 F.3d at 1050; *Omnivision*, 559 F. Supp. 2d at 1046-47; *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1175-76 (S.D. Cal. 2007).

### 4.   The Settlement Class's Reaction

Courts have recognized that "[t]he presence or absence of objections from the class is also a factor in determining the proper fee award." *Heritage*, 2005 WL 1594389, at \*15-16; *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 148-49 (E.D. Pa. 2000) (filing of only one objection despite mailed notices to over 5,250 potential class members "weighs in favor of approving the fee petition").

Here, despite the publication of the Short-Form Notice on Niantic's website, in *USA Today*, the *New York Times*, and *People* magazine—as well as the considerable media coverage of the Settlement—to date, no objection to the Settlement or to the requested fee award has yet been filed. Declaration of Jennifer M. Keough Regarding Settlement Administration ¶¶ 8–9. If any objections are filed between now and the July 18, 2019 deadline, Plaintiffs will address them in their reply brief.

## II.   The Proposed Service Awards are Fair and Reasonable

Service awards are "intended to compensate class representatives for work undertaken on behalf of a class" and "are fairly typical in class action cases." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) (citation omitted). Here, the Named Plaintiffs acted for the benefit of the class, reviewed documents provided to them by Plaintiffs' Counsel, participated in discovery (including searching for relevant documents and proving relevant information for interrogatory responses), discussed the case with Plaintiffs' counsel, and reviewed settlement communications.

Accordingly, Plaintiffs request a service award of $2,500 to each Named Plaintiff ($27,500 in total), to compensate them for their service to the class and in assisting to bring about the substantial benefits of the Settlement. Niantic has agreed to pay any such awards granted by the Court (up to $27,500 in total), and any awards will not take anything away from the Settlement Class. The $2,500 awards Plaintiffs request are in line with those found reasonable in other class actions in this district. *See Online DVD-Rental,* 779 F.3d. at 947–48 (affirming nine service awards of $5,000 in $27 million settlement); *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 U.S. Dist. LEXIS 38667, at *108–09 (N.D. Cal. Apr. 1, 2011) (citing "ample case law finding $5,000 to be a reasonable amount for an incentive payment" and collecting cases); *In re Mego Fin. Corp. Sec. Litig*., 213 F.3d 454, 457, 463 (9th Cir. 2000) (approving awards of $5,000); *Hopson v. Hanesbrands Inc*., No. CV-08-0844 EDL, 2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009) (granting $5,000 award); *Jacobs v. Cal. State Auto. Ass'n Inter-Ins. Bureau,* No. C 07-00362 MHP, 2009 WL 3562871, at *5 (N.D. Cal. Oct. 27, 2009) (granting $7,500 award while noting that $5,000 is "presumptively reasonable"); *Chun-Hoon v. McKee Foods Corp.,* 716 F. Supp. 2d 848, 855 (N.D. Cal. 2010) (granting awards of $5,000 "in light of the work performed by each plaintiff and the risk each faced"); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 166 (S.D.N.Y. 2011) (awarding $10,000 as incentive and for lost time). Moreover, the requested service awards do not undermine adequacy because there is no "*ex ante* incentive agreement between the class representatives and class counsel" and the settlement does not "condition[ ] the incentive awards on the class representatives' support for the settlement." *Online DVD-Rental,* 779 F.3d at 943.

Accordingly, the requested service awards should be granted.

## Conclusion

Plaintiffs' Counsel achieved a favorable result for the Settlement Class in a novel area of the law fraught with uncertainty and risk. Plaintiffs' Counsel undertook substantial risk that no relief would ever be obtained, and generated a sizeable but necessary lodestar in prosecuting this Action to this point on behalf of the Settlement Class. Accordingly, Plaintiffs' Counsel

respectfully request that this Court grant an award of $4 million as attorneys' fees and as reimbursement for expenses that Plaintiffs' Counsel advanced for the benefit of the Settlement Class that were reasonably necessary to the prosecution of this Action, and were the type usually billed to clients outside of a contingency payment arrangement. Finally, Plaintiffs' Counsel request that the Named Plaintiffs be granted service awards of $2,500 each for their efforts expended in this Action, without which the Settlement would not have been achieved.

Dated: June 13, 2019

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Murielle J. Steven Walsh*
Jeremy A. Lieberman
Murielle J. Steven Walsh
Aatif Iqbal
600 Third Avenue, 20th Floor
New York, NY 10016
Phone: 212-661-1100
Fax: 917-463-1044
Email: jalieberman@pomlaw.com
mjsteven @pomlaw..com
aiqbal@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Phone: 312-377-1181
Email: pdahlstrom@pomlaw.com

**POMERANTZ LLP**
Jennifer Pafiti (SB # 282790)
1100 Glendon Avenue
Los Angeles, CA 90024
Phone: 310-405-7190
Email: jpafiti@pomlaw.com

***Counsel for Plaintiffs***

{00329103;11 }