**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **IN RE POKÉMON GO NUISANCE LITIGATION** | Case No. 3:16-cv-04300-JD<br><br>CLASS ACTION<br><br>~~[PROPOSED]~~<br>**ORDER APPROVING CLASS ACTION SETTLEMENT AND ENTRY OF FINAL JUDGMENT** |

This matter came on for hearing on August 22, 2019. The Court has considered the Second Amended Settlement Agreement dated April 25, 2019, ECF No. 129-1 ("Settlement"), any objections or comments received regarding the Settlement, the record in the Action, and the arguments and authorities of counsel. Good cause appearing,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1. The Court, for purposes of this Order Approving Class Action Settlement and Entry of Final Judgment ("Final Judgment"), adopts the terms and definitions set forth in the Settlement.

2. The Court has jurisdiction over this Action, the subject matter of the Action, and all parties to the Action, including Class Members, and venue is proper in this District.

3. The Court finds that the notice to the Class of the pendency of the Action and of this Settlement, Class Counsel's application for attorneys' fees and expenses, and the application for service awards for Class Representatives, as provided for in the Settlement and by Order of this Court, has been implemented and fully complied with the requirements of Federal Rule of Civil Procedure 23 and due process.

4. The Court finds that Niantic properly and timely notified the appropriate state and federal officials of the Settlement, pursuant to the Class Action Fairness Act, 28 U.S.C. §1715.

{00323273;2 }

5. The Court approves the Settlement as fair, reasonable, and adequate and in the best interests of the Class Members. The Court has specifically considered the factors relevant to class settlement approval set forth in Ninth Circuit precedents, including the strength of Plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout trial; the relief provided for in the Settlement; the extent of discovery completed and stage of the proceedings; the experience and views of Class Counsel and the mediator; and the reaction of Class Members to the proposed settlement. *See, e.g. Churchill Village, L.L.C. v. General Elec.*, 361 F.3d 566 (9th Cir. 2004). The Court has also specifically considered the factors relevant to class settlement approval set forth in Fed. R. Civ. P. 23(e)(2), including whether:

    (A) the class representatives and class counsel have adequately represented the class;

    (B) the proposal was negotiated at arm's length;

    (C) the relief provided for the class is adequate, taking into account:

        (i) the costs, risks, and delay of trial and appeal;

        (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

        (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

        (iv) any agreement required to be identified under Rule 23(e)(3); and

    (D) the proposal treats class members equitably relative to each other.

6. The Court has scrutinized the Settlement and negotiation history for any signs of potential collusion, and finds that the Settlement is not the product of collusion. *See, e.g., In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011). This finding is supported by, among other things: the fact that the Settlement was negotiated by experienced, well-qualified counsel and with the active involvement and assistance of a neutral, well-qualified mediator; the Settlement provides substantial benefits to Class Members and such benefits are not disproportionate to the attorneys' fees and expenses

sought by Class Counsel; the benefits provided to Class Members are appropriate under the circumstances of this case; and the parties began negotiating regarding attorneys' fees and expenses only after reaching an agreement regarding the key deal terms.

7. The injunctive relief set forth in Section 2.1 of the Settlement Agreement shall be in effect for at least three (3) years from the Final Settlement Date. Specifically, Section 2.1 of the Settlement Agreement provides that, with respect to Pokémon GO in the United States:

   (a) For complaints properly received through Niantic's website related to nuisance, trespass, or a request to remove a POI, Niantic will use CRE to resolve the complaints and communicate a resolution within no more than 15 (fifteen) days of wait time for the requestor, for 95% of cases each year.

   (b) In cases where the complaining party in Section 2.1(a) is the owner of a single-family residential property and the party reviewing the complaint determines that the complained of POI is on or within 40 meters of that property, Niantic will instruct that reviewer to remove the POI from the property.  In cases where the resolution specified in 2.1(a) or 2.1(b) requires removal of a POI, Niantic will use CRE to perform that removal within five business days of the communication from Niantic agreeing to such action.

   (c) Niantic will use CRE to maintain a database of complaints related to nuisance or trespass and requests to remove a POI, for a minimum of 1 (one) year from the date of the complaint.  Niantic will also continue to use CRE to avoid the placement of new POI on single-family residential property.

   (d) Niantic will maintain a form on its website whereby an owner of single-family residential property can request that any POI on or within 40 meters of their property be removed.  In cases where Niantic has previously removed a POI from the property of a single-family residential home, and in cases where Niantic does so in the future during the settlement period, Niantic agrees to use CRE to avoid re-placing that POI on that same single-family residential property.

(e) For Raids which Niantic's systems indicate will involve more than 10 participants, Niantic will use CRE to cause a warning message to appear on participants' screens before the raid begins reminding players to be courteous to others and respectful of their real-world surroundings. Precise final language will be determined by Niantic, in its sole discretion.

(f) Niantic will add specific instructions to the current review form that Niantic's user-reviewers use to evaluate new POI submissions that direct user-reviewers to increase scrutiny regarding any proposed POI that may be located on or within 40 meters of a private single-family residential property, and POI that appear to be located in neighborhood parks. At a minimum, such instructions will include directions for the user-reviewer to examine the proposed POI using a variety of sources, including but not limited to mapping services maintained by private companies such as Google Maps. After such review, Niantic will use CRE to avoid placing the POI on any property that appears to the reviewer to be a single-family residential property.

(g) Niantic agrees that it shall manually review a statistically significant percentage of new POI submissions via a Niantic employee or contractor for the principal purpose of trying to avoid POI that are more likely to lead to issues with nuisance or trespass.

(h) Niantic agrees to maintain a mechanism for parks whereby it provides parks the opportunity to request that a specific park's Hours of Operation be applied to POI that are located within that park.  Niantic also agrees to comply with requests related to existing POI located in parks from governmental parks authorities to apply Hours of Operation to POI located in parks within their jurisdiction.  In addition to any notice of the settlement that Plaintiffs determine is required per Section 2.4 below, at least once in each of the three years of the settlement period, Niantic will make a public post on its

website that includes a notification that Niantic will limit the hours of operation of POI within public parks upon request from the proper park administrator.

 (i) Niantic will agree to confirm compliance with its obligations under Section 2.1(a) above by way of an audit, at Niantic's expense, conducted by an independent firm that Niantic will select, at the time of Plaintiffs' choosing during the 3 (three) year period, with at least 30 days' notice to Niantic before the commencement of the audit.  Should the audit conclude that Niantic was materially non-compliant with the settlement terms in Section 2.1(a) during the audited period, a second audit will be conducted, at Niantic's expense, during the settlement period, with at least 30 days' notice to Niantic before commencement of the second audit.

 (j) Niantic will add a new warning to the rotating warnings that appear at the launch of the game (which currently include "do not trespass while playing Pokémon GO" and "do not play Pokémon GO while driving") that states: "Be courteous to members of real-world communities as you play Pokémon GO" or something similar, with final specific language subject to Niantic's sole discretion.

8. For a period of two (2) years following the Final Settlement Date, Plaintiffs' Counsel will be available to receive complaints from Class Members who have already gone through Niantic's customer service process regarding the injunctive relief specified above, in accordance with Section 2.3 of the Settlement Agreement. Specifically, Section 2.3 of the Settlement Agreement provides that:

 a. The Long-Form Notice will provide that Class Members who have already gone through Niantic's customer service process may contact Plaintiffs' Counsel with complaints related to the location of Pokéstops or Gyms in Pokémon GO, including at a dedicated email address that Plaintiffs' Counsel will create, such as pokemongosettlement@pomlaw.com.

    b. Within fifteen (15) business days of receiving each complaint, Plaintiffs' Counsel will undertake a review of each complaint, including soliciting additional information from the Class Member where appropriate.

    c. In cases where Plaintiffs' Counsel believes Niantic should take further action to address the Class Member's concerns, Plaintiffs' Counsel will assemble the relevant information bearing on the complaint, including information sufficient to allow Niantic to locate the prior investigation of the complaint in Niantic's systems, and Plaintiffs' Counsel's recommendation for remediation. Plaintiffs' Counsel shall transmit such information to Niantic, for all claims they have chosen to raise for further review, on the first Monday of each month (or the next business day thereafter, in the event of a holiday).

    d. Within fifteen (15) business days of receipt, Niantic will provide a written response to Plaintiffs' Counsel, including whether Niantic will offer further remediation and, if not, the basis for Niantic's position regarding the particular complaint.

    e. Niantic and Plaintiffs' Counsel will make a good faith and reasonable attempt to cooperatively resolve Class Member claims that Niantic has not adhered to the terms of the Settlement.

    f. Twice during this two-year period, Plaintiffs' Counsel shall file a status report with the Court, providing the Court with the number of instances where Plaintiffs' Counsel contacted for further review Niantic and a high-level summary of the nature of the complaints and resolutions.

9. The Parties and Settlement Class Members are bound by the terms and conditions of the Settlement. Upon the Final Settlement Date, the members of the Class and their present, former, and future heirs, executors, administrators, representatives, agents, attorneys, partners, predecessors-in-interest, successors, assigns, and legatees, fully, finally and forever release, relinquish, and discharge the Released Parties from all claims for equitable, injunctive or declaratory relief based on the facts that were or could have been

alleged in the SAC, including but not limited to injunctive claims arising out of or relating to any of the facts, transactions, events, occurrences, acts, disclosures, statements, misrepresentations, omissions, failures to act, or other conduct that was or could have been alleged, including, but not limited to, claims regarding Niantic's conduct, practices, disclosures, terms, and policies relating to the placement of POI, spawning of Pokémon, and design of the Pokémon GO game through the date on which the Court enters the Approval Order. The foregoing release includes all claims for equitable, injunctive or declaratory relief that Class Members do not know or suspect to exist, which, if known by them might affect their decision not to object to the release of the Released Parties for the claims specified in this Section or might affect their decision not to object to the Settlement Agreement.  Upon the Final Settlement Date, Class Members shall be deemed to have, and shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits of Section 1542 of the California Civil Code, and any law or legal principle of similar effect in any jurisdiction, whether federal or state. Section 1542 of the California Civil Code provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

10. Class Members individually and on behalf of each of their present, former, and future heirs, executors, administrators, representatives, agents, attorneys, partners, predecessors-in-interest, successors, assigns, and legatees, fully understand that the facts upon which this Agreement is executed may hereafter be other than or different from the facts now believed by Class Members, and/or Plaintiffs' Counsel or other counsel for Class Members to be true and expressly accept and assume the risk of such possible difference in facts and agree that this Agreement shall remain effective notwithstanding any such

difference in facts. Class Members acknowledge and agree that this waiver is an essential and material term of this release and the settlement that underlies it and that without such waiver the settlement would not have been accepted. The release set forth in this section does not include any claim for monetary relief.

11. The Action and all claims asserted in the Action are dismissed with prejudice as to the Class Representatives and all Class Members.

12. The Court reserves exclusive and continuing jurisdiction over the Action, the Class Representatives, the Class Members, and Niantic for the purposes of supervising the implementation, enforcement, and construction of the Settlement and this Judgment.

13. This Judgment shall not be construed or used as an admission, concession, or declaration by or against Niantic of any fault, wrongdoing, breach, or liability, and shall not be deemed to be a stipulation as to the propriety of class certification, or any admission of fact or law regarding any request for class certification, in any other action or proceeding, whether or not involving the same or similar claims. Nor shall this Judgment be construed or used as an admission, concession, or declaration by or against Plaintiffs or the other Settlement Class Members that their claims lack merit or that the relief requested is inappropriate, improper, or unavailable, or as a waiver by any Party of any defenses or claims he, she, or it may have in the Action or in any other proceeding.

**SO ORDERED** in the Northern District of California on August 30, 2019.

_____
HON. JAMES DONATO
UNITED STATES DISTRICT JUDGE